EXHIBIT G

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007)
*Physical Address:*     2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
*Mailing Address:*      P.O. Box 5404, Princeton, NJ 08543
Telephone:  (609) 392-2100
Facsimile:  (609) 392-7956
*Attorneys for Plaintiff, NextGear Capital, Inc.*

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | : SUPERIOR COURT OF NEW JERSEY |
| | : BERGEN COUNTY: LAW DIV. |
| Plaintiff, | : DOCKET NO.: BER-L-7268-16 |
| | : |
| v. | : Civil Action |
| | : |
| THE LUXURY HAUS, INC., and ANTONIO | : **NOTICE OF MOTION TO ENFORCE** |
| L. GUTIERREZ, and ABC CO., and EDITH | : **SETTLEMENT AS TO DEFENDANT,** |
| GUTIERREZ, jointly and severally, | **EDITH GUTIERREZ AND APPOINT** |
| | **RECEIVER** |
| Defendants. | : |
| | : |

**TO:**    Edith Gutierrez                         Ian J. Hirsch, Esq.
        487 Shaler Road                    Law Offices of Ian J. Hirsch &
        Ridgefield, NJ 07657             Assocs., LLP
        *Defendant*                       75 Essex Street, Suite 220
                                           Hackensack, NJ 07601
                                           *Attorneys for Defendants, The Luxury Haus,*
                                           *Inc. and Antonio L. Gutierrez*

        Freedom Bank                      Ross Katz, Esq.
        99 West Essex Street, 2nd Floor     Schiller, Pittenger & Galvin, P.C.
        Maywood, NJ 07607             1771 Front Street
                                           Scotch Plains, New Jersey 07076
                                           *Attorneys for Non-Party, Carmine DeMaio*

        Matthew Johnson, Esq.
        Sherwood & Johnson, LLC
        666 Wyckoff Avenue
        Wyckoff, NJ 07487
        *Attorneys for Defendant, Edith Gutierrez*

        **PLEASE TAKE NOTICE** that, on Friday, August 31, 2018 at 9:00 a.m., or as soon

thereafter as counsel may be heard, the plaintiff, NextGear Capital, Inc. ("NextGear"), by its

undersigned counsel, shall move before the Superior Court of New Jersey, Law Division, Bergen

County, Bergen County Justice Center, 10 Main Street, Hackensack, NJ 07601 for the entry of an

Order enforcing the settlement with defendant, Edith Gutierrez dated May 7, 2018 and approving

the appointment of a receiver to manage and sell the commercial property located at 335 Grand

Avenue, Leonia, New Jersey 07605;

     **PLEASE TAKE FURTHER NOTICE** that, in support of this motion, NextGear shall

rely upon the attached Certification of Nicholas M. Gaunce, Esq.,   along   with   all   supporting

exhibits and letter brief;

     **PLEASE TAKE FURTHER NOTICE** that there is no current discovery end date for this

matter.  There is also no arbitration or trial date currently assigned to this matter;

     **PLEASE TAKE FURTHER NOTICE** that this motion is being made pursuant to R. 1:6-

2 and oral argument is requested; and

     A proposed form of Order is submitted herewith.

               **ECKERT SEAMANS CHERIN &**
               **MELLOTT, LLC**
               *Attorneys for Plaintiff, NextGear Capital, Inc.*

               By:    _____
                         Nicholas M. Gaunce

Dated: August 13, 2018

## CERTIFICATE OF FILING AND SERVICE

I, Nicholas M. Gaunce, Esq., being of full age, hereby certify that, on the date set forth

below, the within Notice of Motion, Certification, with exhibits, and proposed form of Order were

submitted for filing via E-Courts to:

> Clerk, Law Division
> Bergen County Justice Center
> 10 Main Street
> Hackensack, NJ 07601

and a copy of the above-referenced papers were sent via FedEx to:

> Ian J. Hirsch, Esq.
> Law Offices of Ian J. Hirsch &
> Assocs., LLP
> 75 Essex Street, Suite 220
> Hackensack, NJ 07601
> *Attorneys for Defendants, The Luxury Haus,*
> *Inc. and Antonio L. Gutierrez*

> Freedom Bank
> 99 West Essex Street, 2nd Floor
> Maywood, NJ 07607

> Matthew Johnson, Esq.
> Sherwood & Johnson, LLC
> 666 Wyckoff Avenue
> Wyckoff, NJ 07487
> *Attorneys for Defendant, Edith Gutierrez*

> Ross Katz, Esq.
> Schiller, Pittenger & Galvin, P.C.
> 1771 Front Street
> Scotch Plains, New Jersey 07076
> *Attorneys for Non-Party, Carmine DeMaio*

and a copy of the above-referenced papers were sent via e-mail, certified mail, return receipt

requested, FedEx and regular mail to:

> Edith Gutierrez
> 487 Shaler Road
> Ridgefield, NJ 07657
> *Defendant*

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

_____
Nicholas M. Gaunce

Dated: August 13, 2018

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Anthony E. Bush, Esq. (N.J. Attorney ID No. #003761990)
Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007)
*Physical Address:*    2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
*Mailing Address:*      P.O. Box 5404, Princeton, NJ 08543
Telephone:  (609) 392-2100
Facsimile:  (609) 392-7956
***Attorneys for Plaintiff, NextGear Capital, Inc.***

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | : SUPERIOR COURT OF NEW JERSEY |
| | : BERGEN COUNTY: LAW DIV. |
| Plaintiff, | : DOCKET NO.:  BER-L-7268-16 |
| | : |
| v. | : |
| | : Civil Action |
| THE LUXURY HAUS, INC., and ANTONIO | : |
| L. GUTIERREZ, and ABC CO., and EDITH | : **ORDER GRANTING FINAL** |
| GUTIERREZ, jointly and severally, | : **JUDGMENT AND APPOINTING** |
| | : **RECEIVER** |
| Defendants. | : |
| | : |

**THIS MATTER**, having been opened to the Court by Eckert Seamans Cherin & Mellott, LLC, attorneys for the plaintiff, NextGear Capital, Inc. ("NextGear"), seeking an Order granting final judgment and appointing a receiver, and the Court having considered the moving papers, and for good cause appearing for the entry of this Order;

**IT IS HEREBY ORDERED** that, on this _____ day of _____, 2018, NextGear's Motion to Enforce Settlement is **GRANTED**;

**IT IS HEREBY FURTHER ORDERED** that final judgment is entered against defendant, Edith Gutierrez in the amount of $507,634.61;

**IT IS HEREBY FURTHER ORDERED** that NextGear's request for the appointment of a receiver is **GRANTED;**

**IT IS HEREBY FURTHER ORDERED** that the pertinent Receiver shall be appointed as a Receiver for the real property located at 335 Grand Avenue, Leonia, New Jersey 07605 and designated as Block 1204, Lot 1 on the Tax Map of the Borough of Leonia, (the "Commercial

Property"), and the Receiver shall have all powers provided under the applicable laws and rules to financially operate and manage the Commercial Property, including, but not limited to the following:

1.      Collect all rents, profits and revenues generated by the Commercial Property;

2.      The Receiver shall not be required to post a bond with the Superior Court of New Jersey;

3.      The Receiver shall enter into and take custody of the Commercial Property and commence all duties as Receiver;

4.      The Receiver shall take all steps as may be necessary to collect all rents, income, revenue and profits from the Commercial Property including those past due and unpaid with the full power to make, demand and/or file suit for payment of rents, income and profits and let, re-let and sublet the Commercial Property or any portion thereof at market rental and to make agreements for the Commercial Property at market rental on the condition, however, that no lease shall be executed with a tenant or proposed tenant in excess of one (1) year and on the further condition that such lease shall contain subordination language (acceptable to NextGear) subordinating the tenant or prospective tenant's interest to the Commercial Property to that of NextGear, and to otherwise do all things necessary or proper for the due care, management, and operation of the Commercial Property pursuant to the leases and agreements existing or entered into hereafter and to cause fair market value rents, income and profits to be derived and obtained from the Commercial Property; provided however that nothing herein, including the control of the Commercial Property by the Receiver, is intended to, nor shall it in any way, impair or affect any security interest or judgment lien that NextGear has or may assert in the rents, issues, profits and proceeds from the Commercial Property, nor shall it vest any additional rights in any or all of the Defendants with respect to such rents, issues, profits and proceeds;

5.      The Receiver may deposit in his or her own name, as Receiver, all monies received (whether by rents, income or profits derived from the operation of the Commercial Property, or otherwise) at the time of receipt of such monies, in such number of segregated accounts as the Receiver shall deem necessary, advisable, desirable and/or convenient, and after paying and applying such monies to the expenses of management, care and operation of the Commercial Property, and to disburse the balance of all monies which come into the hands of the Receiver as hereinafter described;

6.      The Defendants, any Known or Unknown Tenants and/or Occupants, and/or their officers, employees, agents, representatives and/or servants shall be enjoined and restrained from interfering with the Receiver's financial operation and management of the Commercial Property, including, but not limited to, the

collection of rents, issues, revenues, profits, income and proceeds and including the spending, converting or otherwise disposing of any income, issues or profits from the Commercial Property, except in accordance herewith;

7.      All persons now or hereafter in possession of the Commercial Property or any part thereof, and not holding such possession under valid and existing leases or tenancies do forthwith surrender such possession to the Receiver, subject to emergency laws, if any;

8.      The Defendants, or any Known and/or Unknown Tenants and/or Occupants and/or their officers, employees, agents, representatives and/or servants shall cooperate with the Receiver and provide the Receiver with copies of all real estate tax bills, insurance bills, water and sewer bills, all bills and invoices relating to the business operations and all other information and documentation necessary for the Receiver to operate the Commercial Property;

9.      Within fifteen (15) days of the date hereof, the Defendants, any Known and/or Unknown Tenants and/or Occupants shall turn over and deliver to the Receiver or cause to be delivered to the Receiver, with respect to the Commercial Property, the following:

   a.   All keys to all entrance doors, storage areas, common areas, offices and rental units;

   b.   All leases, contracts or documents relating to the maintenance and operation of equipment and purchase of business assets and inventory;

   c.   All current rent rolls and tenancy lists;

   d.   All current operating statements, income and expense statements, current financial statements, and all documentation relating to the subject property, business assets and business operations;

   e.   All insurance information of any kind including without limitation, property and hazard insurance and liability insurance;

   f.   All documents relating to utility accounts, including electricity, gas, heat, water and telephone services;

   g.   The name and account numbers of all utility companies servicing the subject property, business assets and business operations;

   h.   Copies of all contracts relating in any way to the subject property, business assets and business operations, including but not limited to all contracts, reports, test results and related documents concerning investigation or remediation of environmental issues or areas of concern, and contracts with vendors or other service personnel; and

     i.    Such other items as the Receiver may reasonably request;

10.    The Receiver is instructed to make the following disbursements, as and when incurred from the rents, income and profits received by the Receiver which are deemed to be necessary expenses of the Commercial Property, business assets and business operations: all general costs of operation, including all presently due real estate taxes, water and sewer rents, insurance on the Commercial Property, utilities, trash collection, essential and routine repairs and maintenance of the Commercial Property, costs and expenses relating to the business operations and reimbursement of the Receiver's actual and necessary out-of-pocket costs. Thereafter, the remaining balance collected by the Receiver shall be disbursed as follows:

    a.    An amount not to exceed fifteen percent (15%) of the gross rentals or profits collected and costs incurred by the Receiver shall be deposited by the Receiver in an interest bearing account, said amount to be held pending further order of this Court allowing commissions due to the Receiver; and

    b.    The remaining balance shall be paid to NextGear, to be applied against the indebtedness due to NextGear from the Defendants;

11.    The Receiver is hereby empowered to employ such professionals, managing agents, contractors and other persons to assess and remediate any environmental issue or condition with the Commercial Property, as may be necessary to best preserve and/or market the Commercial Property, business assets and business operations for sale, and to retain the services of an independent business and retail consultant to facilitate the operation and management of the Commercial Property;

12.    The Receiver shall be permitted to market and sell the Commercial Property with all rights appurtenant thereto provided that any proposed sale must be approved by the Court, on motion with notice to all parties; and

13.    The Receiver and/or any party in interest hereto, at any time, on proper notice, may apply to the Court for further instructions and for such further power as may be necessary to enable the Receiver to undertake and fully perform the duties as such Receiver.

**IT IS HEREBY FURTHER ORDERED** that a copy of this executed Order shall be served upon all parties of interest within seven days of its posting on e-Courts.

_____
, J.S.C.

**THIS MOTION WAS:**

[  ] Opposed

[  ] Unopposed

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007)
*Physical Address:*     2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
*Mailing Address:*     P.O. Box 5404, Princeton, NJ 08543
Telephone: (609) 392-2100
Facsimile: (609) 392-7956
*Attorneys for Plaintiff, NextGear Capital, Inc.*

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | SUPERIOR COURT OF NEW JERSEY |
| | BERGEN COUNTY: LAW DIV. |
| Plaintiff, | DOCKET NO.: BER-L-7268-16 |
| v. | Civil Action |
| THE LUXURY HAUS, INC., and ANTONIO L. GUTIERREZ, and ABC CO., and EDITH GUTIERREZ, jointly and severally, | **CERTIFICATION OF COUNSEL IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AND APPOINT RECEIVER** |
| Defendants. | |

I, Nicholas M. Gaunce, Esq., of full age, hereby certify as follows:

1.      I am an attorney-at-law of the State of New Jersey and an associate of the law firm of Eckert Seamans Cherin & Mellott, LLC, attorneys for the plaintiff, NextGear Capital, Inc. ("NextGear"). I make this certification based upon personal knowledge and in support of NextGear's motion to enforce settlement and appoint receiver.

2.      NextGear's claims against defendant, Edith Gutierrez ("Mrs. Gutierrez"), revolve around Mrs. Gutierrez's purchase of a commercial property used as an automobile dealership located at 335 Grand Avenue, Leonia, New Jersey 07605 (the "Commercial Property"). (Statement of Material Undisputed Facts at ¶¶ 28 – 46).[1] Mrs. Gutierrez purchased the Commercial Property in December of 2015 through a then newly-formed New Jersey limited liability company she created called 335 Grand Avenue, LLC. (Id. at ¶¶ 35, 40). Mrs. Gutierrez purchased the

---

[1]      This citation refers to the statement of material facts, with citations to the record, contained in NextGear's Brief in support of summary judgment that was filed on April 25, 2018.

Commercial Property on December 16, 2015 for $1,500,000.00. (Id.). Her purchase was funded by $507,634.61 in cash deposits paid by co-defendant, The Luxury Haus, Inc. ("LHI"), and the acquisition of a $1,050,000.00 commercial mortgage by 335 Grand Avenue from Freedom Bank, which mortgage was guaranteed by LHI. (Id.).

3.      On May 7, 2018, NextGear and Mrs. Gutierrez reached an agreement to resolve NextGear's claims. This agreement was placed on the record before The Honorable James L. DeLuca, J.S.C. For this settlement, Mrs. Gutierrez was present in court, along with her counsel, Matthew Johnson, Esq. A copy of the transcript reflecting this settlement is attached as Exhibit "A."

4.      When the parties were describing the terms of the settlement, the following colloquy occurred with Judge DeLuca:

> THE COURT:      Let's go on the record. We are back on the record in the matter of <u>NEXT GEAR CAPITAL VS. LUXURY HAUS, INC., ET. AL.</u> The Docket No. is BER-L-7268-16…Did the parties make progress to resolving this matter in the break between the last time I – we were on the record and now?
>
> MR. GAUNCE:      Yes, we have, Your Honor. We've actually been able to resolve the matter.
>
> THE COURT:      Okay. Can you -- can you put on the record, please the terms of the settlement?
>
> MR. GAUNCE:      Absolutely, Your Honor. As a settlement of the claims between NextGear and Mrs. Gutierrez, Next Gear has agreed to receipt of $282,000 by way of refinancing of a commercial property at 335 Grand Avenue in Leonia. Mrs. Gutierrez will have 90 days to present Next Gear a commitment letter showing commitment from a bank to refinance the commercial loan that's existing and then she will have 120 days to actually consummate that loan and close the transaction.
>
> THE COURT: So another 30 days after the 90?
>
> MR. GAUNCE: Correct. Yes, Your Honor.

2

THE COURT: Not 120 days after the 90 correct?

MR. JOHNSON: Correct.

MR. GAUNCE:        Yes, so a total of 120 days for the entire time period, Your Honor.

THE COURT:        Okay. Fair Enough.

MR. GAUNCE:        And as part of those changed time frames, Your Honor, the parties agreed that there would be **no cure period for either event so if there was, for example, if Day 91 came and there was no commitment letter there would be a default under the agreement**…

To secure this arrangement the parties have reached an agreement for the -- for – to execute and to hold a consent judgment of 507,634.61. And Your Honor, what will happen with that consent judgment in terms of mechanism so as not to screw up Mrs. Gutierrez in terms of seeking the refinancing is we'll execute it and we'll have it available in our office and then file it if there is a default….

MR. GAUNCE:        And then lastly, Your Honor, as far as the pending receivership motion before Your Honor obviously, that's going to be withdrawn without prejudice as part of the settlement, but both parties reserve their rights in terms of Next Gear renewing that application and Mrs. Gutierrez challenging it based on any defenses she may have available. [Exhibit A at 7:8 – 8:18, 8:21 – 9:3, 9:5 – 11.]

5.      When asked if there was anything to add to the terms of the settlement, Mrs.

Gutierrez's counsel responded:

MR. JOHNSON:        No, Judge. I believe that accurately reflects our settlement and the only comment I have is obviously if Ms. Gutierrez requires other financing other than refinancing the commercial property that's acceptable as well as long as the 282 is either paid before the 90 days or the commitment is shown at Day 90 and paid off by 120.

MR. GAUNCE:        Correct, yes. Either one. If she gives us the 282 on Day 90 we are not going to fight her Your Honor.

MR. JOHNSON:        That's all I want. [Exhibit A at 9:14 – 24.]

3

6.      For her part, Mrs. Gutierrez acknowledged the following:

THE COURT:      All right.  Ms. Gutierrez, I previously swore you.  You -- I believe I did.  Did I not?

MS. GUTIERREZ:   You did, Your Honor.

THE COURT:      I did.  I did.

EXAMINATION BY THE COURT:

Q      You've heard the terms of the settlement, correct?

A      Yes, correct.

Q      The settlement – the settlement terms are acceptable to you?

A      Yes, they are.

\*\*\*

Q      You understand all of the terms with regard to this matter?

A      Yes.

Q      Have you had an opportunity to speak to Mr. Johnson about this matter?

A      Yes, I have.

Q      Has he answered all of your questions?

A      Yes.

\*\*\*

Q.      You want this settlement to proceed, correct?

A      Yes, please.

\*\*\*

Q      …You understand that if you change your mind ten minutes from now when you're out in the hallway that this matter is marked settled.  You understand that?

A      Yes, I understand.

Q      Subject to the terms of the -- that have been placed on the record. You understand that.

A      Yes, I do.

\*\*\*

THE COURT:      ...This matter is settled. [Exhibit A at 10:8 – 19, 12:4 – 11, 12:19 – 21, 12:25 – 13:7, 15:12 – 13.]

7.      On May 8, 2018, NextGear forwarded a written settlement agreement to Mrs. Gutierrez. This formalized settlement agreement included the terms of the settlement reached on the record and some comments Mrs. Gutierrez had to the written settlement draft presented to her and her counsel in court the previous day. A copy of the letter transmitting this written settlement agreement to Mrs. Gutierrez is attached as Exhibit "B."

8.      As part of the written settlement agreement, NextGear forwarded a form of consent judgment in the amount of $507,634.61. A copy of this consent judgment is attached as Exhibit "C."

9.      Since forwarding these documents to Mrs. Gutierrez, NextGear has not received a signed settlement agreement back from Mrs. Gutierrez, a signed consent judgment back from Mrs. Gutierrez, or any further comments to the written settlement agreement that was forwarded to her by NextGear.

10.      In addition, Mrs. Gutierrez has not provided NextGear with a commitment letter, payment in the amount of $282,000.00, or any indication of whether she was able to secure refinancing for the Commercial Property or make the necessary $282,000.00 payment through other means.

11.      The ninetieth day following the parties' settlement was last Monday.

12.   Mrs. Gutierrez's failures mentioned above are defaults under her settlement agreement with NextGear.

13.   In light of the above, NextGear respectfully requests that the Court enter an order granting judgment against Mrs. Gutierrez in the amount of $507,634.61 and appoint a receiver to manage and sell the Commercial Property.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Nicholas M. Gaunce

Dated:  August 13, 2018



Eckert Seamans Cherin & Mellott, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, NJ 08648

TEL   609 392 2100
FAX   609 392 7956
www.eckertseamans.com

Mailing Address:
P.O. Box 5404
Princeton, NJ 08543

File No.: 308729-00004

Nicholas M. Gaunce, Esq.
609.989.5058
ngaunce@eckertseamans.com

August 13, 2018

**Via E-Courts**
Honorable Judge of the Superior Court
Bergen County Courthouse
10 Main Street, 4th Floor
Hackensack, NJ 07601

RE:   **NextGear Capital, Inc. v. The Luxury Haus Inc. et al.**
      **Docket No. BER-L-7268-16**

Dear Honorable Judge:

We represent the plaintiff, NextGear Capital, Inc. ("NextGear"), in the above matter.

Please accept this letter brief as NextGear's submission in support of its motion to enforce

settlement and appoint a receiver. NextGear's motion is returnable on August 31, 2018. For the

reasons stated below, NextGear's motion must be granted, in full.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

NextGear incorporates, by reference, the statement of facts and procedural history

contained in its brief in support of its summary judgment motion that was filed on April 25, 2018,

which brief is attached as Exhibit "D" to my certification submitted with NextGear's current

motion. By way of addition to that statement of facts, NextGear would highlight for the Court

that defendant, Edith Gutierrez ("Mrs. Gutierrez"), reached a settlement with NextGear on May

7, 2018 while NextGear's summary judgment motion was pending. (Certification of Nicholas

M. Gaunce, Esq. ("Gaunce Cert."), at ¶ 3); (Exhibit A to Gaunce Cert). NextGear's claims



against Mrs. Gutierrez revolve around Mrs. Gutierrez's purchase of a commercial property located at 335 Grand Avenue, Leonia, New Jersey 07605 (the "Commercial Property"). (Statement of Material Undisputed Facts at ¶¶ 28 – 46).[1]  Mrs. Gutierrez purchased the Commercial Property in December of 2015 through her then newly-formed, single-member New Jersey limited liability Company called 335 Grand Avenue, LLC for $1,500,000.00.  (Id. at ¶ 35). Her purchase was funded by $507,634.61 in cash deposits paid by co-defendant, The Luxury Haus, Inc. ("LHI"), and the procurement of a $1,050,000.00 commercial mortgage by 335 Grand Avenue from Freedom Bank (the "Freedom Bank Loan") that was guaranteed by LHI (NextGear's debtor under a floor-plan financing agreement).  (Id. at ¶¶ 35, 40).  This guaranty rendered LHI insolvent.  (Id. at ¶ 42).

Through its summary judgment motion, NextGear was seeking the entry of a monetary judgment against Mrs. Gutierrez in the amount of $1,557,634.61, along with other related forms of relief such as the appointment of a receiver.  (NextGear's Brief at p. 24 – 27).[2]  NextGear was pursuing its claims against Mrs. Gutierrez under New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. §§ 25:2-20 – 34 ("UFTA").  (Id.).  There is no dispute that the loan agreement between NextGear and LHI permitted NextGear to seek appointment of a court receiver, if necessary. (Statement of Undisputed Material Facts at ¶ 8).

---

[1]      This citation refers to the statement of material facts, with citations to the record, contained in NextGear's April 25, 2018 summary judgment brief.

[2]      This citation refers to the legal argument sections of NextGear's April 25, 2018 summary judgment brief.



On May 7, 2018, Mrs. Gutierrez and NextGear placed a settlement on the record whereby

Mrs. Gutierrez agreed to the following:

> 1.    By August 6, 2018 (the ninetieth day after reaching a settlement), Mrs. Gutierrez would either pay NextGear a lump-sum amount of $282,000.00 or present NextGear with a final commitment letter confirming that she was able to secure refinancing in relation to the Freedom Bank Loan;

> 2.    If Mrs. Gutierrez presented a final commitment letter to NextGear by August 6, 2018, Mrs. Gutierrez would then pay NextGear the sum of $282,000.00 by September 4, 2018;

> 3.    If Mrs. Gutierrez failed to pay NextGear $282,000.00 or present a final commitment letter by August 6, 2018, Mrs. Gutierrez would default; and

> 4.    Mrs. Gutierrez would **not** receive a cure period in the event of default. [Gaunce Cert. at ¶¶ 4 – 6]; [Exhibit A to Gaunce Cert. at  7:8 – 8:18, 8:21 – 9:3, 9:5 – 11,  9:14 – 24, 10:8 – 19, 12:4 – 11, 12:19 – 21, 12:25 – 13:7, 15:12 – 13.]

To secure this arrangement, Mrs. Gutierrez also agreed to execute a consent judgment in

the amount of $507,634.61, which judgment NextGear could enter if Mrs. Gutierrez defaulted.

(Ex. A to Gaunce Cert. at 8:21 – 9:3).  NextGear forwarded a written settlement agreement, with

a consent judgment, to Mrs. Gutierrez on May 8, 2018.  (Gaunce Cert. at ¶ 7); (Exhibit B to

Gaunce Cert., May 8, 2018 Letter).  NextGear has not received a signed settlement agreement or

consent judgment back from Mrs. Gutierrez, payment in the amount of $282,000.00, or a

commitment letter.  (Gaunce Cert. at ¶¶ 9 – 10).  Ninety days since Mrs. Gutierrez's settlement

with NextGear was Monday, August 6, 2018.  (Id. at ¶ 11).  NextGear now moves to enforce its

May 7, 2018 settlement with Mrs. Gutierrez and for the appointment of a receiver.



Honorable Judge of the Superior Court
August 13, 2018
Page 4

## LEGAL ARGUMENT

### POINT I

### MRS. GUTIERREZ HAS BREACHED THE PARTIES' SETTLEMENT AGREEMENT.

Under New Jersey law, an "agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court…should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124 - 125 (App. Div. 1983). The fact that an oral agreement to settle a lawsuit will later be memorialized into a formal writing does not make the oral settlement any less of a contract "where…the parties concluded an agreement by which they intended to be bound." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 374 (App. Div. 1975). Thus, "parties may orally…agree upon all the essential terms of a contract and effectively bind themselves thereon…even though they contemplate the execution later of a formal document to memorialize their undertaking." Pascarella, supra, 190 N.J. Super. at 126. Parties "spreading the terms of the agreement upon the record" is a familiar practice in New Jersey and a recognized way to enter into a binding, oral settlement. Id. at 124.

Here, there is no doubt Mrs. Gutierrez has breached the terms of her settlement with NextGear. According to the settlement placed on the record, Mrs. Gutierrez was to either pay NextGear $282,000.00 or present a commitment letter by August 6, 2018. Moreover, Mrs. Gutierrez was obligated to execute and return a consent judgment to NextGear in the amount of $507,634.61. Despite NextGear's actions, Mrs. Gutierrez has literally fulfilled none of her obligations, and, therefore, she has breached the terms of her May 7th settlement. NextGear is entitled to the entry of a judgment in the amount of $507,634.61 as already agreed.



Honorable Judge of the Superior Court
August 13, 2018
Page 5

## POINT II

### THE APPOINTMENT OF A RECEIVER IS JUSTIFIED.

In addition to the entry of a monetary judgment in its favor, NextGear is also entitled to

the appointment of a receiver as to the Commercial Property.  N.J.S.A. § 25:2-29 governs the

remedies available to creditors under the UFTA.  In pertinent part, this statutory section provides:

> a. In an action for relief against a transfer or obligation under this article, a
> creditor…may obtain:
>
> > (1) Avoidance of the transfer or obligation to the extent necessary
> > to satisfy the creditor's claim;
>
> \*\*\*
>
> > (3) Subject to applicable principles of equity and in accordance
> > with applicable rules of civil procedure,
> >
> > > (a) an injunction against further disposition by the debtor
> > > or the transferee, or both, of the asset transferred or of other
> > > property;
> > >
> > > (b) appointment of a receiver to take charge of the asset
> > > transferred or of other property of the transferee; or
> > >
> > > (c) any other relief the circumstances may require.
>
> b.  If a creditor has obtained a judgment on a claim against the debtor, the creditor,
> if the court so orders, may levy execution on the asset transferred or its proceeds.
> [N.J.S.A. § 25:2-29a, b.]

Under general principles of equity, a trial court will generally give a contractual provision

allowing for the appointment of a receiver "considerable weight in the court's evaluation of

whether a…[r]eceiver should be appointed."  Barclays Bank, P.L.C. v. Davidson Ave. Assoc.,

Ltd., 274 N.J. Super. 519, 523 – 524 (App. Div. 1994).  In addition, a trial court will typically



consider such things as the inadequacy of the security to satisfy the debt; the inability of the mortgagor to respond for any deficiency; misappropriation of funds; and failure to pay debt service. Id. In the end, a receiver should be appointed "when it appears necessary to protect the [creditor's interests]." Id.

In this case, NextGear's request for the appointment of a receiver has only been strengthened with the passage of time. In April of this year, NextGear established that Mrs. Gutierrez had been the beneficiary of a substantial fraudulent transfer occurring in December of 2015 as she had unlawfully procured ownership of the Commercial Property through a single member limited liability company she recently created. In return, Mrs. Gutierrez provided no consideration for this large, commercial transaction. Plus, it was undisputed that NextGear was entitled to appoint a court receiver pursuant to the terms of its loan agreement with LHI. Since these proofs have been presented, Mrs. Gutierrez has now defaulted upon a favorable settlement where she failed to pay NextGear about eighteen percent of its total claim, failed to provide any assurances that the necessary funds would be forthcoming, and even failed to execute a written settlement agreement memorializing what was placed on the record. Given that NextGear's position has only become more insecure since earlier this year, and it is obvious that Mrs. Gutierrez does not intend to address NextGear's claims as agreed, equity favors the appointment of a receiver.



Honorable Judge of the Superior Court
August 13, 2018
Page 7

## CONCLUSION

For the above reasons, NextGear respectfully requests that the Court enter an order granting its motion to enforce settlement, enter judgment against Mrs. Gutierrez in the amount of $507,634.61, and appoint a receiver as to the Commercial Property.

Respectfully yours,

NICHOLAS M. GAUNCE

# EXHIBIT A

```
1                          SUPERIOR COURT OF NEW JERSEY
                           LAW DIVISION, CIVIL PART
2                          BERGEN COUNTY
                           DOCKET NO. BER-L-7268-16
3                          APP. DIV. NO. _____

4  NEXT GEAR CAPITAL, INC., )
                            )
5          Plaintiff,       )
                            )              TRANSCRIPT
6          vs.              )                  OF
                            )              SETTLEMENT
7  THE LUXURY HAUS, INC.,   )
8  ET. AL.,                 )
                            )
9          Defendant.       )

10                         Place: Bergen County Justice Center
11                                 10 Main Street
                                   Hackensack, New Jersey 07601
12
13                         Date:  May 7, 2018

14 BEFORE:

15    HONORABLE JAMES L. DE LUCA, J.S.C.

16 TRANSCRIPT ORDERED BY:

17    NICHOLAS M. GAUNCE, ESQ. (Eckert Seamans Cherin &
18    Mellott, LLC)

19 APPEARANCES:

20    NICHOLAS GAUNCE, ESQ.
21    (Eckert Seamans Cherin & Mellott, LLC)
      Attorney for the Plaintiff
22
      MATTHEW JOHNSON, ESQ. (Sherwood & Johnson, LLC)
23    Attorney for the Defendant

24                         TRANSCRIBER, LINDA FARINA
25                         G & L TRANSCRIPTION OF NJ
                           40 Evans Place
                           Pompton Plains, NJ 07444
                           (973) 616-1051
                           www.gltranscriptsnj.com
                           transcripts@gltranscriptsnj.com
                           Audio Recorded
                           Recording Operator, S. Mansukhani
```

I N D E X                                2

PROCEEDINGS                                        PAGE

Settlement                                          3

Judge's decision                                   14

I N D E X   T O   W I T N E S S E S

| NAME | DIRECT | CROSS | REDIRECT | RECROSS |
|------|--------|-------|----------|---------|
| Edith Gutierrez | | | | |
| By The Court | 10 | | | |
| By Mr. Johnson | 13 | | | |

3

1          THE COURT:  All right.  We are on the record

2     in the matter of NEXT GEAR CAPITAL, INC. VS. LUXURY

3     HAUS, INC.  Appearances, plea-- Docket No. BER-L-7268-

4     16.  Appearances, please. Starting with the attorneys

5     for the plaintiff.

6          MR. GAUNCE:  Yes, Your Honor.  Nick Gaunce,

7     Eckert Seamans on behalf of Next Gear.

8          THE COURT:  Mr. Gaunce, welcome back.

9          MR. JOHNSON:  Matthew Johnson, Sherwood and

10    Johnson on behalf of Edith Gutierrez for the

11    settlement purpose only in this conference.

12         THE COURT:  Mr. Johnson, good morning.  Ms.

13    Gutierrez, good morning to you.

14         MS. GUTIERREZ:  Good morning.

15         THE COURT:  Please raise your right hand.

16    E D I T H   G U T I E R R E Z, DEFENDANT, SWORN

17         THE COURT:  Please state your full name,

18    spell your last name for the record.

19         THE WITNESS:  Edith Gutierrez, G-U-T-I-E-R-

20    R-E-Z.

21         THE COURT:  All right, Ms. Gutierrez.

22    Counsel, do I understand that since our last

23    conference the parties when we were last together Ms.

24    Gutierrez was going to go visit some bankers to

25    determine whether or not the terms of the respective

4

1  settlement would work for her.  Is that correct?

2        MR. JOHNSON:  That is correct.

3        THE COURT:  And has she done that?

4        MR. JOHNSON:  She has, Judge.

5        THE COURT:  And based upon that are we

6  prepared to move forward with the settlement this

7  morning?

8        MR. JOHNSON:  I'm in the process of

9  discussing with Ms. Gutierrez whether or not she'd

10  like to.  Our concern remains the 90-day timeframe.

11  The bankers seem to us that closer to 120 days in

12  order to close the funds would be necessary.  We'd be

13  able to have a commitment within the 90 days.

14  However, to actually close the loan we may require an

15  additional 30 days from that point is what we were

16  advised in our meetings.

17        THE COURT:  Mr. Gaunce, what would you like

18  to do?

19        MR. GAUNCE:  Well, in order to even see

20  whether I could agree to that, Your Honor, I would

21  need to make a phone call.

22        THE COURT:  Obviously I think you do.

23        MR. GAUNCE:  Yes.

24        THE COURT:  I thought we were all done.

25  That's why I had you up here and that's why I didn't

5

1   wait to put it on the record.  I just didn't have you

2   inside because I thought we were going to do it.

3          MR. GAUNCE:  Understood, Your Honor.

4          MR. JOHNSON:  And from our standpoint that's

5   our only sticking point, Judge.  Just that timeframe

6   to make sure she's able to comply with the terms of

7   the settlement.

8          THE COURT:  Let me ask a question.  Do you

9   expect to have a commit-- how long is it you expect to

10  have the -- how long do you expect the commitment to

11  take?

12         MR. JOHNSON:  I would say no later than 75

13  days.

14         THE COURT:  Okay.  So I'm going to throw the

15  following out, Mr. Gaunce, as a potential alternative

16  if you want to at least pitch it and that is that to

17  the extent that Ms. Gutierrez would have her

18  commitment within 90 days and that she would close

19  within 120 days.  I don't know whether you can do that

20  or not, but that works for you, Mr. Johnson?

21         MR. JOHNSON:  It does.

22         MS. GUTIERREZ:  Yes.

23         THE COURT:  Ask -- ask that question.  It's

24  the best -- see what we can do.

25         MR. GAUNCE:  And -- and are we wrapped up if

6

 1   that -- if the answer is yes?

 2          MR. JOHNSON:    Yeah.  I have (indiscernible)

 3   the language in here, but I don't (indiscernible) the

 4   language.

 5          THE COURT:    Let me -- let me say this to

 6   you, okay?

 7          MR. JOHNSON:    Yeah.

 8          THE COURT:    There are three terms to this

 9   settlement agreement, okay?

10          MR. JOHNSON:    Correct.

11          THE COURT:    $282,000 the time and what

12   happens if it doesn't occur and that is a consent

13   judgment for 507,634.61, which will be held or will be

14   filed, but they won't take any steps to execute on it,

15   correct?  Is that the way you understand it?

16          MR. GAUNCE:    That is correct, Your Honor.

17          THE COURT:    All right.  So whether it's 90

18   days or 120 days those are the only issues.  The rest

19   of it, as far as this Court is concerned, is window

20   dressing.  And you guys can knock yourself out with

21   this settlement agreement from now until the cows come

22   home.  Those are the three terms of the agreement,

23   okay?  This is -- if there are any issues with regard

24   to the agreement you're going to come back and see me

25   and I'm going to tell you what the terms are.

7

1           MR. JOHNSON:  Understood, Your Honor.

2           MR. GAUNCE:  All right.  Thank you, Your

3    Honor.

4           MS. GUTIERREZ:  Thank you, Judge.

5           MR. GAUNCE:  Thank you, Your Honor.

6           THE COURT:  All right.  Off the record.

7           (Off the record.  Back on the record.)

8           THE COURT:  Let's go on the record.  We are

9    back on the record in the matter of NEXT GEAR CAPITAL

10   VS. LUXURY HAUS, INC., ET. AL.  The Docket No. Is BER-

11   L-7268-16.  Mr. Gaunce, we won't put appearances

12   because we had them on previously.  Did the parties

13   make progress to resolving this matter in the break

14   between the last time I -- we were on the record and

15   now?

16          MR. GAUNCE:  Yes, we have, Your Honor.

17   We've actually been able to resolve the matter.

18          THE COURT:  Okay.  Can you -- can you put on

19   the record, please, the terms of the settlement?

20          MR. GAUNCE:  Absolutely, Your Honor.  As a

21   settlement of the claims between Next Gear and Mrs.

22   Gutierrez, Next Gear has agreed to receipt of $282,000

23   by way of refinancing of a commercial property at 335

24   Grand Avenue in Leonia.  Mrs. Gutierrez will have 90

25   days to present to Next Gear a commitment letter

8

1   showing commitment from a bank to refinance the

2   commercial loan that's existing and then she will have

3   120 days to actually consummate that loan and close

4   the transaction.

5           THE COURT:   So another 30 days after the 90?

6           MR. GAUNCE:   Correct.   Yes, Your Honor.

7           THE COURT:   Not 120 days after the 90,

8   correct?

9           MR. JOHNSON:   Correct.

10          MR. GAUNCE:   Yes, so a total of 120 days for

11   the entire time period, Your Honor.

12          THE COURT:   Okay.   Fair enough.

13          MR. GAUNCE:   And as part of those changed

14   time frames, Your Honor, the parties agreed that there

15   would be no cure period for either event so if there

16   was, for example, if Day 91 came and there was no

17   commitment letter there would be a default under the

18   agreement or, for example, Day 121 came and there was

19   no refinance loan, again, that would be an event of

20   default.

21          To secure this arrangement the parties have

22   reached an agreement for the -- for -- to execute and

23   to hold a consent judgment of 507,634.61.  And Your

24   Honor, what will happen with that consent judgment in

25   terms of mechanism so as not to screw up Mrs.

9

1    Gutierrez in terms of seeking the refinancing is we'll

2    execute it and we'll have it available in our office

3    and then file it if there is a default.

4         THE COURT:  Got it.

5         MR. GAUNCE:  And then lastly, Your Honor, as

6    far as the pending receivership motion before Your

7    Honor obviously, that's going to be withdrawn without

8    prejudice as part of the settlement, but both parties

9    reserve their rights in terms of Next Gear renewing

10   that application and Mrs. Gutierrez challenging it

11   based on any defenses she may have available.

12        THE COURT:  Mr. Johnson, you wish to add

13   anything else?

14        MR. JOHNSON:  No, Judge.  I believe that

15   accurately reflects our settlement and the only

16   comment I have is obviously if Ms. Gutierrez requires

17   other financing other than refinancing the commercial

18   property that's acceptable as well as long as the 282

19   is either paid before the 90 days or the commitment is

20   shown at Day 90 and paid off by 120.

21        MR. GAUNCE:  Correct, yes.  Either one.  If

22   she gives us the 282 on Day 90 we are not going to

23   fight her Your Honor.

24        MR. JOHNSON:  That's all I want.

25        THE COURT:  I didn't think -- I didn't think

10

1   you would.  I don't think you care whether she gets

2   the 292 -- 282 from the commitment, any commitment or

3   any other source, correct?

4           MR. GAUNCE:  Correct, Your Honor.

5           THE COURT:  Fair enough.

6           MR. GAUNCE:  We're not -- we're not

7   prejudicial as to any source.

8           THE COURT:  All right.  Ms. Gutierrez, I

9   previously swore you.  You -- I believe I did.  Did I

10  not?

11          MS. GUTIERREZ:  You did, Your Honor.

12          THE COURT:  I did.  I did.

13  EXAMINATION BY THE COURT:

14      Q   You've heard the terms of the settlement,

15  correct?

16  A   Yes, correct.

17      Q   The settlement -- the settlement terms are

18  acceptable to you?

19  A   Yes, they are.

20      Q   You understand that in connection with this

21  matter you are giving up your right to contest the

22  claims of Next Gear Capital, Inc. against you?

23  A   Yes.

24      Q   You understand that if you wish to proceed

25  with this matter that you could have done better with

11

1   Next Gear than the agreement to pay 282, you could

2   have done worse than the agreement to pay 282, or you

3   could have done the same.  You understand that?

4   A    Yes, I do.

5        Q    And you understand you had a right to a jury

6   trial in connection with this matter.

7   A    Yes.

8        Q    And you understand that you are waiving your

9   right to a jury trial.

10  A    Uh-huh.

11       Q    You understand -- is that a c-- yes?

12  A    Yes.

13       Q    You understand that your husband has also

14  settled your -- your current husband has -- has

15  settled with Next Gear as well, correct?

16  A    Yes.

17       Q    You understand that -- are you under any

18  medication --

19  A    No.

20       Q    -- that would impair your ability to

21  understand this transaction?

22  A    No, I'm not.

23       Q    Are you -- has anyone forced you to enter

24  into this transaction?

25  A    No, they have not.

12

1    Q    Are you entering into this transaction

2 voluntarily?

3 A    Yes, I am.

4    Q    You understand all of the terms with regard

5 to this matter?

6 A    Yes.

7    Q    Have you had an opportunity to speak to Mr.

8 Johnson about this matter?

9 A    Yes, I have.

10   Q    Has he answered all of your questions?

11 A    Yes.

12   Q    Are you satisfied with the services of Mr.

13 Johnson in connection with this matter?

14 A    Absolutely.

15   Q    Is there any -- are there any questions you

16 have for either myself or Mr. Johnson now that you've

17 heard the terms placed on the record?

18 A    No, there isn't.

19   Q    You want this settlement to proceed,

20 correct?

21 A    Yes, please.

22   Q    You understand that this will terminate this

23 litigation, correct?

24 A    Yes.

25   Q    Yes.   You understand that if you change your

13

 1   mind ten minutes from now when you're out in the

 2   hallway that this matter is marked settled.  You

 3   understand that?

 4   A    Yes, I understand.

 5        Q    Subject to the terms of the -- that have

 6   been placed on the record.  You understand that.

 7   A    Yes, I do.

 8             THE COURT:  Counsel, have the -- you're

 9   still working on the nits and gnats of the final

10   settlement agreement.  Is that correct?

11             MR. JOHNSON:  It is, Judge.

12             MR. GAUNCE:  It is, Your Honor.

13             THE COURT:  Counsel, you understand that the

14   Court is marking this matter settled and to the extent

15   you have any issues with regard to the, what I call

16   nits and gnats of this settlement that you're going to

17   come back here and resolve that matter in front of me.

18   You understand that.

19             MR. GAUNCE:  Yes, Your Honor.  We do.

20             MR. JOHNSON:  Yes, Judge, and I just have

21   one question for Ms. Gutierrez.

22   DIRECT EXAMINATION BY MR. JOHNSON:

23        Q    Ms. Gutierrez, I was not able to advise you

24   as to the reasonableness of this settlement.  You

25   understand that.

BER-L-007268-16   08/13/2018 11:21:38 AM  Pg 15 of 51 Trans ID: LCV20181398550
Case 3:18-cv-01617-MEM   Document 30-7   Filed 01/04/19   Page 37 of 73

14

```
 1  A     Yes.

 2       Q    And you determined on your own volition to

 3  enter into the settlement because of your personal

 4  understanding of the terms.  Is that correct?

 5  A     Yes.

 6            MR. JOHNSON:  Okay.  No other questions,

 7  Judge.

 8            THE COURT:  You understand that -- counsel,

 9  that if for some reason, as I said, you can't pull the

10  trigger on a final settlement agreement you're going

11  to come back and see me.  That is not going to undo

12  the terms of this settlement.  You understand that Mr.

13  Gaunce?

14            MR. GAUNCE:  I do, Your Honor.

15            THE COURT:  You understand that, Mr.

16  Johnson?

17            MR. JOHNSON:  I do, Judge.

18            THE COURT:  You understand that, Ms.

19  Gutierrez.

20            MS. GUTIERREZ:  Yes, I do.

21            THE COURT:  I want to thank the parties for

22  their continuing efforts in connection with the

23  matter.  I know that I have not always been the

24  easiest person to deal with in connection with this

25  matter, but I want to thank you all for resolving this
```

15

1   matter.  Ms. Gutierrez, I thank you for your efforts.
2   Better -- I always tell litigants, better you control
3   your own destiny than you leave your destiny in the
4   hands of seven or eight good people from Bergen or
5   worse, on particular Judge in Bergen County.  So I
6   thank you for that.
7           Counsel, I thank you for your
8   professionalism in connection with this matter.  I
9   know it was something that neither party, quite
10  candidly wanted to do, but that means the settlement
11  is probably a fair and reasonable one.  So I thank you
12  all for your activities.  We are off the record.  This
13  matter is settled.
14          Have a good day.
15          MR. JOHNSON:  Thank you, Judge.
16          MS. GUTIERREZ:  Thank you, Judge.
17          MR. GAUNCE:  Thank you for your help, Judge.
18          MS. GUTIERREZ:  Thank you.

19

20                  (Proceedings concluded)

21

22

23

24

25

BER-L-007268-16  08/13/2018 11:21:38 AM  Pg 17 of 51 Trans ID: LCV20181398550
Case 3:18-cv-01617-MEM  Document 30-7  Filed 01/04/19  Page 39 of 73

16

1                          CERTIFICATION
2
   I, Linda Farina, the assigned transcriber, do hereby
3
   certify the foregoing transcript of the proceedings of
4
   the Bergen County Superior Court on May 7, 2018,
5
   digitally recorded, Time Index from 10:19:25 to
6
   10:23:00 and from 12:13:36 to 12:21:15, is prepared in
7
   full compliance with the current transcript format for
8
   judicial proceedings and is a true and accurate
9
   transcript of the proceedings as recorded to the best
10
   of my knowledge and ability.
11
12
   *Linda Farina*
13
   Linda Farina          AD/T #491          June 4, 2018
14
   G & L Transcription of NJ
   Pompton Plains, NJ 07444
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT B



**ECKERT SEAMANS**
ATTORNEYS AT LAW

Eckert Seamans Cherin & Mellott, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, NJ 08648

TEL    609 392 2100
FAX    609 392 7956
www.eckertseamans.com

Mailing Address:
P.O. Box 5404
Princeton, NJ 08543

File No.: 308729-00004

Nicholas M. Gaunce, Esq.
609.989.5058
ngaunce@eckertseamans.com

May 8, 2018

**Via E-mail and FedEx**
Matthew Johnson, Esq.
Sherwood & Johnson, LLC
666 Wyckoff Avenue
Wyckoff, New Jersey 07481

RE:   **NextGear Capital, Inc. v. The Luxury Haus Inc. et al.**
      **Docket No. BER-L-7268-16**

Dear Mr. Johnson:

On behalf of the plaintiff, NextGear Capital, Inc. ("NextGear"), please find enclosed a final version of the parties' settlement agreement and release which incorporates the settlement on the record from yesterday and your comments to the draft agreement provided to you and your client yesterday in court. Please review this agreement with Mrs. Gutierrez and have her sign and notarize page seven of the agreement and then sign page two of Exhibit B.

Upon execution by Mrs. Gutierrez, we would ask that a copy be returned to us by way of e-mail and then the original by way of mail in the return envelope that has been provided in the FedEx delivery of this letter and enclosure. Thank you.

Very truly yours,

NICHOLAS M. GAUNCE

Enc.

# EXHIBIT C

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Anthony E. Bush, Esq. (N.J. Attorney ID No. #003761990)
Nicholas M. Gaunce, Esq. (N.J. Attorney ID No. #012032007)
*Physical Address:*   2000 Lenox Drive, Suite 203, Lawrenceville, NJ 08648
*Mailing Address:*      P.O. Box 5404, Princeton, NJ 08543
Telephone:  (609) 392-2100
Facsimile:  (609) 392-7956
*Attorneys for Plaintiff, NextGear Capital, Inc.*

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | : SUPERIOR COURT OF NEW JERSEY |
| | : BERGEN COUNTY: LAW DIVISION |
| Plaintiff, | : DOCKET NO.: BER-L-7268-16 |
| | : |
| v. | : |
| | : _Civil Action_ |
| THE LUXURY HAUS, INC., and ANTONIO | : |
| L. GUTIERREZ, and ABC CO., and EDITH | : |
| GUTIERREZ, jointly and severally, | : **CONSENT JUDGMENT AS TO EDITH** |
| | : **GUTIERREZ** |
| Defendants. | : |
| | : |

**THIS MATTER** having been opened to the Court by Eckert, Seamans, Cherin & Mellott,

LLC, attorneys for plaintiff, NextGear Capital, Inc. ("NextGear"), and defendant, Edith L. Gutierrez

("Edith"), appearing *pro se*, and having been represented by Matthew Johnson, Esq. of Sherwood and

Johnson for **purposes of settlement only**, and Edith and NextGear having agreed to the entry of

judgment; and Edith having consented to the form and entry of the within Consent Judgment; and for

good cause appearing;

**IT IS HEREBY ORDERED** that, on this _____ day of _____ , 2018, Judgment is

hereby entered against defendant, Edith Gutierrez, and in favor of plaintiff, NextGear Capital, Inc. in

the amount of $507,634.61;

*(Signatures on Next Page)*

1

_____
                                        , J.S.C.

CONSENT AS TO FORM AND ENTRY:

**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**
*Attorneys for Plaintiff, NextGear Capital, Inc.*

By:_____
            Nicholas M. Gaunce, Esq.

Dated:  May ___ , 2018

**EDITH GUTIERREZ**
*Pro Se Defendant*

By:_____
            Edith Gutierrez

Dated: May ___ , 2018

2

# EXHIBIT D

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | : SUPERIOR COURT OF NEW JERSEY |
| | : BERGEN COUNTY: LAW DIVISION |
| Plaintiff, | : DOCKET NO.: BER-L-7268-16 |
| | : |
| v. | : |
| | : Civil Action |
| THE LUXURY HAUS INC., and | : |
| ANTONIO L. GUTIERREZ, and ABC CO., | : |
| and EDITH GUTIERREZ, jointly and | : |
| severally, | : |
| | : |
| Defendants. | : |

---

## BRIEF OF NEXTGEAR CAPITAL, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND APPOINTMENT OF A RECEIVER

---

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Anthony E. Bush, Esq. (ID No. #003761990)
Nicholas M. Gaunce, Esq. (ID No. #01203-2007)
*Physical Address:*     2000 Lenox Drive, Suite 203,
                        Lawrenceville, NJ 08648
*Mailing Address:*      P.O. Box 5404, Princeton, NJ 08543
Telephone: (609) 392-2100
Facsimile: (609) 392-7956
*Attorneys for Plaintiff, NextGear Capital, Inc.*

Anthony E. Bush, Esq.,
Of Counsel and On the Brief

Nicholas M. Gaunce, Esq.,
On the Brief

## PRELIMINARY STATEMENT

Through this application, the plaintiff, NextGear Capital, Inc. ("NextGear"), seeks the entry of a monetary judgment against all the defendants, Luxury Haus, Inc. (individually, "Luxury Haus"), Antonio Gutierrez (individually, "Antonio"), and Edith Gutierrez (individually, "Edith"), in relation to the mishandling of millions of dollars in assets by the various defendants and their relatives, along with the appointment of a receiver. Back in March of 2014, NextGear extended a $12,000,000.00 line-of-credit to Luxury Haus to allow Luxury Haus to purchase vehicles for its automobile dealership. In exchange, Luxury Haus granted NextGear a security interest in all the vehicles it purchased with NextGear's financing. NextGear's loan was also secured by a personal guaranty from Antonio, the principal of Luxury Haus.

Since June of 2015, Luxury Haus has submitted fraudulently-inflated bills of sales, multiple times, seeking excessive payments, misappropriated over $507,000.00 in Luxury Haus' funds after Luxury Haus defaulted on its loan with NextGear to purchase the property where Luxury Haus' dealership was operating just to place it in a company owned by Antonio's wife, Edith, for no consideration, sold 81 vehicles financed by NextGear out of trust, failed to account for 138 other vehicles financed by NextGear, and then misappropriated another $2,000,000.00 in funds owed to NextGear, resulting in the filing of multiple felony charges against Antonio.

Under New Jersey law, a creditor seeking a monetary judgment against a debtor and a guarantor must establish the basic elements of a contract claim, which include the existence of a contract, performance by the lender, breach by the debtor and guarantor, and resultant damages. In pursuing a recovery against the debtor and guarantor, a lender who discovers that assets of its debtor have been transferred or that its debtor incurred unnecessary obligations can then seek the entry of judgment against its debtor, guarantor, or third parties in relation to those transfers of assets belonging to its debtor or debt obligations incurred by its debtor. To make a determination

on this latter type of claim, a court will examine several "badges of fraud," such as whether the transfer was to an insider, whether the debtor has concealed assets, anything of value that the debtor receives, and the timing of such transfers or debt obligations. If multiple badges of fraud exist in one transaction, a court will take them as conclusive proof of the intent to defraud.

In this case, NextGear can prove all of their claims, as a matter of law, against all defendants. NextGear's breach of contract claims against Luxury Haus and Antonio present a simple commercial collection matter. Luxury Haus defaulted, in a number of ways, on its commercial loan obligations to NextGear. Luxury Haus nor Antonio has resolved NextGear's damages related to that failure. Summary judgment is warranted on these claims.

NextGear is also entitled to summary judgment on its fraudulent transfer claims. Antonio and Edith orchestrated a large commercial transaction in which Luxury Haus provided over $507,000.00 in funds and a $1,050,000.00 corporate guaranty for the purpose of placing ownership of the commercial dealership where Luxury Haus operated in the name of a limited liability company owned by Edith, which was intended to be sold to Antonio's brother, Paul Gutierrez, the corporate secretary of Luxury Haus, for one dollar. This plan presumably fell apart midstream when Edith filed for divorce after procuring ownership of this property. Antonio also hide $2,000,000.00 from NextGear by giving it to his brother, Paul.

Because of these facts, NextGear is more than justified in seeking a judgment against all defendants, along with the appointment of a receiver.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

1.     In its Second Amended Complaint, NextGear has asserted the following causes of

action against the following defendants:

     i.      Replevin against Luxury Haus – Count One;
     ii.     Breach of Contract against Luxury Haus and Antonio – Count Two;
     iii.    Fraudulent Transfer Claims against Luxury Haus and Antonio  - Count Three;
     iv.    Fraudulent Transfer Claims against Edith Gutierrez – Count Four; and
     v.     Appointment of a Custodial Receiver – Count Five. [Exhibit B to the Certification of Anthony E. Bush, Esq. ("Bush Cert."), Second Amended Complaint at ¶¶ 36 – 57.]

2.     NextGear moves for summary judgment on Counts Two through Five of its Second

Amended Complaint, having already filed three orders to show cause before the Court addressing

Count One.

**(I)    NextGear's Lending Relationship with Luxury Haus and Initial Court Filings.**

3.     On March 20, 2014, NextGear extended a credit line to Luxury Haus in the

maximum amount of $12,000,000.00 for the express purpose of providing floor-plan financing for

Luxury Haus' purchase of vehicles for inventory to be resold to retail customers.  As part of this

extension of credit, Luxury Haus signed a Demand Promissory Note and Loan and Security

Agreement dated March 20, 2014.   (Exhibit A to the Certification of Krystal McKenzie

("McKenzie Cert"), March 20, 2014, Note and Loan Agreement).

4.     To secure its obligations, Luxury Haus granted NextGear a security interest in all

of Luxury Haus' assets and properties, including without limitation, Luxury Haus' equipment,

accounts, documents, cash reserves, receivables, general intangibles, equipment, inventory, books

and records and all proceeds thereof, as described in the Loan Agreement. (Exhibit A to McKenzie

Cert. at ¶ 2(a)); (McKenzie Cert. at ¶ 5).

5.     NextGear perfected its security interest in the Collateral by filing UCC-1's with the

Secretary of State for the State of New Jersey on March 30, 2012 and January 15, 2015.  (Exhibit

B to McKenzie Cert., UCC-1 financing statements).

6.     In paragraph four (entitled Borrower's Representations, Warranties, and

Covenants) of NextGear's promissory note, NextGear made the following promises:

> (f) To hold all amounts received from the sale of any Unit of Lender
> Financed Inventory in the form as received in trust for the sole
> benefit of and for Lender, and to remit such funds satisfying all
> amounts due Lender and owing by Borrower for such Unit of Lender
> Financed Inventory, in each case within twenty-four (24) hours of
> Borrower's receipt of such funds (or receipt of such funds by any
> Affiliate of Borrower);
>
> (g) To hold all amounts received that relate to any Receivable that
> is subject to a Receivable Advance in the form as received in trust
> for the sole benefit of and for Lender, and to remit such funds
> satisfying all amounts due Lender and owing by Borrower for and
> in connection with such Receivable, in each case within twenty-four
> (24) hours of Borrower's receipt of such funds (or receipt of such
> funds by any Affiliate of Borrower);
>
> (h) That, for each Receivable which is the subject of a Receivable
> Advance…(vi) all statements, facts, numbers, and other information
> in such Receivable and all related documents are true and accurate
> to the best of Borrower's knowledge, [and] *are free from fraud*; and

* * *

> (u) *That Borrower shall use Advances solely for Business purposes
> and not for personal, family, or household purposes.*  This means,
> among other things, that Borrower may not use Advances to
> purchase a vehicle for Borrower's personal, family, or household
> use, and no Lender Financed Inventory may be used for Borrower's
> personal, family, or household use.  This Note and all Advances
> requested or made hereunder shall be requested and made only for
> commercial purposes[.][Exhibit A to McKenzie Cert. at ¶ 4(f) – (h),
> (u)(emphasis added).]

7.     In paragraph six (entitled Events of Default) of Luxury Haus' Promissory Note,

Luxury Haus agreed that it would be in default if: "(a) [Luxury Haus] or [Antonio] fails to perform

any of its obligations, undertakings or covenants under this Note or under any other Loan Document, including any obligation to repay any Liability when due and Borrower's obligation to pay upon demand any outstanding Liability under this Note," and "(e) Borrower or any Guarantor, or any of their respective Parent Companies, has defaulted in the payment or performance of any debt or obligation under any other agreement, whether to [NextGear] or to a third party." (Exhibit A to McKenzie Cert. at ¶ 6(a), (e)).

8.    Upon an event of default, NextGear was authorized, among other things, to: "(a) [d]emand immediate payment of all Liabilities under this Note and the other Loan Documents and all other indebtedness and amounts owed...," and "(b) [i]nitiate proceedings to appoint a receiver in any court of competent jurisdiction[.]" (Id. at ¶ 7(a), (b)).

9.    As part of its note, Luxury Haus further promised that "[Luxury Haus] shall pay to Lender all reasonable legal fees, expenses and collection costs incurred by Lender, Lender's Affiliates, and/or Lender's representative as a result of an Event of Default, Borrower's failure to perform any obligation or satisfy any Liability under this Note or any other Loan Document[.]" (Id. at ¶ 18).

10.   Furthermore, to induce NextGear to lend credit to Luxury Haus, Antonio signed a personal guaranty. Pursuant to this personal guaranty, Antonio unconditionally agreed to act as a surety for all indebtedness of Luxury Haus to NextGear through the following language:

> [Antonio] hereby voluntarily, unconditionally, and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Liabilities; (ii) the full and prompt performance of all the terms, covenants, and agreements related to the Liabilities. [Antonio] further agrees to pay all expenses, including attorneys' fees and court costs (including, in each case, those relating to bankruptcy and appeals), paid or incurred by Lender or its Affiliates in endeavoring to collect on any Liabilities. [Exhibit C to McKenzie Cert., Individual Guaranty at ¶ 2(a).]

11.    An event of default under Antonio's individual guaranty included if "(f) any suit or proceeding is filed or…commenced against [Antonio]…which, if adversely determined, could substantially impair the ability of [Luxury Haus] to perform any of [his] respective obligations with respect to his Guaranty or any of the Liabilities[.]" (Id. at ¶ 4(f)).

12.    Beginning on or about June 11, 2015, NextGear began to see red flags in relation to Luxury Haus' loan. The following were the types of red flags noted by NextGear:

    i.    On buyer-paid requests,[1] there was an overlap of large batches of buyer-paid flooring requests and larger payment due dates to NextGear, including $223,134.84 worth of flooring requests on June 11, 2015 and $195,449.63 worth of payments that were electronically transferred to NextGear on June 12, 2015. This issue arose again on the following dates: June 22/23, 2015, July 30/31, 2015, January 25, 2016, March 10/11, 2016, March 17, 2016, March 31/April 1, 2016, and June 22/23, 2016;

    ii.    On June 22, 2015, there were multiple refloor requests[2] for vehicles that had been in inventory for over 365 days and Luxury Haus submitted fraudulent bills of sale with an increased purchase price, which, if not caught by NextGear, would have resulted in Luxury Haus receiving a larger payment than required. On this date, 6 out of 11 requests for financing were denied; and

    iii.    On March 10, 2016, there were multiple refloor requests within fifteen days of when a vehicle had been sold. On this date, 11 requests for financing out of 14 were denied.    [(Exhibit D to McKenzie Cert., Luxury Haus Spreadsheet, Buyer-Paid Requests); (McKenzie Cert. at ¶ 13).]

13.    A spreadsheet outlining these various issues is attached as Exhibit "D" to the McKenzie Cert. The dates were issues occurred are identified by a yellow highlighter and notes in the margin for that date. (Exhibit D to McKenzie Cert., Spreadsheet for Buyer-Paid Requests).

---

[1]    "Buyer-paid requests" are submissions for final payment by a dealer made to a floor-plan financing lender. In making such a request, the dealer is making a representation that a retail customer has completed and paid for a vehicle sale off the dealer's lot.

[2]    "Refloor requests" are submissions by a dealer made to a floor-plan financing lender to relist a sold vehicle on the floor-plan financier's line of credit because it has been returned by a retail customer.

14.     Eventually, Luxury Haus' line of credit with NextGear was locked on October 3, 2016 because Luxury Haus failed to provide a payoff or title for vehicles covered by NextGear's floor-plan financing. (McKenzie Cert. at ¶ 15).

15.     On October 5, 2016, NextGear received notice that Luxury Haus sold 81 vehicles financed by NextGear "out of trust." (Exhibit B to Bush Cert., Second Amended Complaint at ¶ 15).

16.     In addition to the above-mentioned 81 vehicles, Luxury Haus has been unable to account for 138 other vehicles financed by NextGear. (Id. at ¶ 17).

17.     On October 7, 2016, NextGear received notice of dishonor on a payment made by Luxury Haus in the amount of $1,867,230.89 for insufficient funds. (Id. at ¶ 18).

18.     On October 12, 2016, NextGear filed a civil complaint against Luxury Haus and Antonio seeking to recover $17,232,130.13 that was owed in relation to NextGear's floor-plan financing agreement. (McKenzie Cert. at ¶ 16); (Exhibit E to McKenzie Cert., Complaint). This filing constituted an Event of Default and certainly a demand for payment under Luxury Haus' Note. (McKenzie Cert. at ¶ 16).

19.     On October 17, 2016, NextGear received a report indicating that Luxury Haus had defaulted on a floor-plan financing agreement with another lender, SunTrust, and owed SunTrust $14,150,570.73. (McKenzie Cert. at ¶ 17). This report constituted an Event of Default. (Id.).

20.     On January 12, 2017, The Bergen County Prosecutor's Office filed a criminal complaint against Antonio. In this criminal complaint, the State alleged that Antonio "on or about, during and between, September 1, 2016 and October 31, 2016…did commit theft by purposely obtaining or retaining property or money with a value of $75,000.00 or more, belonging to NextGear Capital[.]" (Exhibit F to McKenzie Cert., Criminal Complaint at p. 1); (McKenzie Cert. at ¶ 18).

21.     In this same complaint, the State also alleged that Antonio further "did engage in transactions involving property, namely monies (funds) and/or United States currency in excess of $500,000.00, known or which a reasonable person would believe to be derived from criminal activity, namely the theft by failure to make lawful disposition of monies to NextGear Capital and defrauding secured creditors[.]" (Exhibit F to McKenzie Cert., Criminal Complaint at p. 1).

22.     As its last charge, the State asserted that "Antonio…did destroy, remove, conceal, encumber, transfer of otherwise deal with property subject to a security interest, namely NextGear Capital, with purpose to hinder enforcement of that interest'[.]" (Id.).

23.     The affidavit of probable cause connected with the State's Complaint also provided:

> On or about, during and between, September 1, 2016 and October 31, 2016, Antonio Gutierrez of Luxury Haus did commit money laundering, theft, and defrauded secured creditors by borrowing money from NextGear Capital, a dealer floor plan lender, to purchase vehicles which he sold and then did not remit the proceeds as contracted. Mr. Gutierrez sold the vehicles and took the proceeds in excess of $1,000,000.00 and deposited them into various bank accounts to hide the money. Mr. Gutierrez transferred $1,000,000.00 (which he intended to utilize as his own) to Carmine Demaio, the owner of Lexus of Englewood, to further hide the money that was stolen from NextGear Capital. [Exhibit F to McKenzie Cert., Criminal Complaint at p. 5.]

24.     Respectively, the relevant charges are first, second, and fourth degree crimes. (Id.). The filing of these criminal charges constituted an Event of Default. (McKenzie Cert. at ¶ 22).

**(II)    Discovery and Emergent Court Filings.**

25.     On April 10, 2017, NextGear deposed Antonio's brother, Paul Gutierrez. (Exhibit A to the Certification of Anthony E. Bush, Esq. ("Bush Cert."), Deposition Transcript of Paul Gutierrez). Paul Gutierrez was the corporate secretary for Luxury Haus.

26.     During his deposition, Paul Gutierrez testified as follows:

> Q.     So your brother has asked you to hold onto this money. When was that?

A.      Right around the same time everything happened, his wife –
his wife was trying to get – was trying to, you know, get ahold of
the money.  So it was just – intention of his wife not getting, you
know, not getting the money.  And eventually, I don't know what
the million dollars…

\*\*\*

Q.      So you got the two million dollars, you split it between these
two accounts [PNC and TD Bank accounts].

A.      Yeah.

Q.      The two million dollars that came to you was in what form;
was it in multiple checks or one –

A.      Checks.  Checks.  Multiple Checks.

Q.      Multiple checks.

A.      Uh-hmm.

\*\*\*

Q.      Okay.  Do you still have a list of the customers you sent
refund checks to?

A.      No.

Q.      Okay.

A.      No, everything – I would get a – I would get a text message
or a call from Liz.  She would tell me customer name, I would have
to get a certified check.  Mainly it was all certified checks.  We also
had payroll people still working at the time.  We did payroll out of
those accounts as well.

Q.      So, but you were acting as Liz's direction?

A.      Yes, Liz.  Liz and Tony.  Uh-hmm.

\*\*\*

Q.      Can we take a picture of this [text message on Paul
Gutierrez's phone] and send it [to] me?

A.      Yeah. Yeah.

Mr. Hirsch:    Sure.

A.    See, look here. I need three cashier checks. Tom is 7,500. Perkins, 9,000. 4,000. Edith, 5,000

\*\*\*

Q.    Did you recognize any of the names that you were writing checks to?

A.    The only one on the text is Edith and that's $5,000. Tony was giving her what, $5,000 a week alimony?

\*\*\*

A.    So it was $5,000 a week so you'll see it on the text message. That's the only one that I recognize. The other ones were just –

Q.    That's your sister-in-law Edith?

A.    Correct. Yeah.

Q.    Was there only one check to her or was there more than one check to her?

A.    Just one. There's 5,000. Just one.

Q.    Okay.

A.    No, there was multiple checks. On that particular text message, just one, $5,000. [Exhibit A to Bush Cert., Paul Gutierrez Dep. Transcript at 71:2 – 11, 80:2 – 81:2, 82:2 – 8, 85:24 – 86:3, 8 - 18.]

27.    On August 21, 2017, NextGear filed a Second Amended Complaint naming Edith Gutierrez as a direct defendant. (Exhibit B to Bush Cert., Second Amended Complaint).

28.    In its Second Amended Complaint, NextGear asserted fraudulent transfer theories of recovery against Edith. (Exhibit B to Bush Cert., Second Amended Complaint at ¶¶ 50 – 53).

29.    At the same time, NextGear procured an Order to Show Cause why funds derived from the sale of real estate in Bermuda owned by Edith and Antonio should not be dispersed to NextGear. (Exhibit C to Bush Cert., August 17, 2017 Order to Show Cause at ¶ 1).

30.     On September 19, 2017, in an effort to prevent the entry of an order containing

restraints, Edith represented the following to the Court:

- She had "no responsibilities regarding Luxury Haus' finances or its books and records;"

- She left the employ of Luxury Haus in November of 2015;

- Edith and Antonio's property at the Reefs Club in Bermuda was not related to NextGear because Antonio took out a line of credit on the Ridgefield Home [487 Shaler Boulevard] and funds from that credit line were used to purchase the Bermuda Property;

- Edith procured a Temporary Restraining Order against Antonio in December of 2015; and

- Edith also stated that: [a]fter Antonio and I separated in December 2015, I was left with no money. All of our bank accounts were in Antonio's name and he removed me from each one. As a result, I was prohibited from accessing any of the funds in our accounts. [Exhibit D to Bush Cert., September 19, 2017 Certification of Edith Gutierrez at ¶¶ 7, 9, 22 – 23, 28.]

31.     Edith also provided the Court with information showing that divorce proceedings

began between her and Antonio on December 23, 2015. (Exhibit A to October 16, 2017 Sur-Reply

Certification of Edith Gutierrez, Filed Restraining Order).[3]

32.     After the Court denied NextGear's request for restraints, NextGear served multiple

document subpoenas. In particular, NextGear served: (i) a subpoena upon Freedom Bank, the

lender who held a mortgage on the commercial property where Luxury Haus conducted business,

335 Grand Avenue, Leonia, New Jersey 07605 (the "Commercial Property"); (ii) two document

subpoenas directed to transactional counsel for Luxury Haus and Antonio Gutierrez, Michael A.

Chong, Esq., seeking records related to the purchase of the Commercial Property and the purchase

---

[3]     This citation references the October 16, 2017 filing made on behalf of Edith in further response to the Order to Show Filed by NextGear in August of 2017. This filing is identified on the Court's docket as Trans ID: LCV2017334284.

of the couple's home located at 487 Shaler Boulevard, Ridgefield, New Jersey 07657; and (iii) the

title company, American Title, that did the title work for the Commercial Property. (Exhibit E to

Bush Cert., October 25, 2017 Document Subpoena to Freedom); (Exhibit F to Bush Cert., October

25, 2017 and October 30, 2017 Document Subpoenas to Michael Chong, Esq.); (Exhibit G to Bush

Cert., October 30, 2017 Document Subpoena to American Title).

33.     In the subpoena response from American Title, NextGear learned, for the first time,

that Edith, despite previously stating that she had no involvement with the finances of Luxury

Haus, was the holder of a Luxury Haus corporate credit card held with American Express, which

card was used as a form of identification for the purchase of the Commercial Property. (Exhibit

H to Bush Cert., American Express Business Platinum Card and Driver's License).

34.     On November 3, 2017, NextGear issued a document subpoena directed to American

Express. (Exhibit I to Bush Cert., November 3, 2017 Document Subpoena to American Express).

35.     With American Title's production, NextGear also learned, for the first time, that

the Commercial Property was purchased on December 16, 2015 by a limited liability company

formed in July of 2015 named 335 Grand Avenue, LLC ("335 Grand"), for the gross purchase

price of $1,500,000.00. (Exhibit J to Bush Cert., Signed Purchase Agreement). Edith appeared to

be the owner of 335 Grand and took out a substantial loan to purchase the Commercial Property.

(Exhibit K to Bush Cert., Schedule A to Title Policy).

36.     Next, on November 17, 2017, NextGear received a response to the subpoena

served upon Freedom Bank in relation to the Commercial Property. In this subpoena response,

the following documents appeared:

> •   A December 16, 2015 Promissory Note in the amount of
> $1,050,000.00 made by 335 Grand payable to Freedom Bank. This
> note was signed by Edith Gutierrez as Managing
> Member/Authorized Agent (the "335 Grand Note"). The monthly
> payment due to Freedom Bank under the 335 Grand Note is

$6,183.21. (Exhibit L to Bush Cert., December 16, 2015 Promissory Note);

• A December 16, 2015 Joint Continuing Guaranty Agreement securing the full amount of the 335 Grand Note signed by Antonio on behalf of Luxury Haus, and individually guaranteed by Edith Gutierrez and Antonio. (Exhibit M to Bush Cert., December 16, 2015 Joint Continuing Guaranty Agreement);

• A December 16, 2015 Mortgage & Security Agreement relating to 335 Grand in the amount of $1,050,000. This Mortgage was signed by Edith as Managing Member/Authorized Agent for 335 Grand. (Exhibit N to Bush Cert., December 16, 2015 Mortgage & Security Agreement);

• A certified rent roll signed by Edith and a lease showing that Luxury Haus was the tenant on the Commercial Property. Edith signed the certified rent roll as Authorized Agent/Managing Agent of 335 Grand. The rent roll shows that Luxury Haus was paying $8,550 per month in rent. (Exhibit O to Bush Cert., Certification Regarding Rent Roll, with attachment); (Exhibit P to Bush Cert., Luxury Haus Lease); and

• A commitment letter and amended commitment letter signed by Antonio as a member of 335 Grand Avenue. (Exhibit Q to Bush Cert., September 14, 2015 Commitment Letter); (Exhibit R to Bush Cert., December 16, 2015 Amendment to Commitment Letter).

37.     On November 8, 2017, NextGear served a request for admissions upon Edith asking her to admit her connection to the purchase of the Commercial Property and that she is the managing member of 335 Grand, along with verifying her signature appearing on multiple documents connected to the purchase of the Commercial Property. (Exhibit S, November 8, 2017 Request for Admissions). Edith never responded to NextGear's Request for Admissions.

38.     On November 28, 2017, NextGear received a response to the document subpoena it served upon American Express. In that subpoena response, NextGear learned that Edith, as a holder of a corporate credit card account for Luxury Haus, charged $125,463.04 to a Luxury Haus credit account from October of 2014 through January of 2017. $36,736.13 of the above $125,463.04 was charged after Edith was no longer in Luxury Haus' employ. Plus, $39,636.40 of

the above $125,463.04 related to quarterly maintenance payments made on Antonio and Edith's Bermuda property. All payments made for these credit card charges were made from a Luxury Haus bank account. These charges and payments are reflected as part of the summary provided by American Express. (Exhibit T to Bush Cert., American Express Summary).

39.    On December 27, 2017, NextGear issued two more subpoenas directed to Freedom Bank. (Exhibit U, December 27, 2017 Freedom Bank Subpoenas). By these subpoenas, NextGear sought documents related to the mortgage of Freedom Bank on the Ridgefield Home and bank records for all accounts involving Antonio, Edith, Luxury Haus, and 335 Grand Avenue.

40.    On January 19, 2018, NextGear received a response to these subpoenas and learned the following information:

> **The Commercial Property:** A September 24, 2015 wire transfer signed by Antonio was directed to Chong in the amount of $225,000.00 originating from a Luxury Haus bank account to act as a security deposit on the purchase of the Commercial Property. (Exhibit W to Bush Cert., September 24, 2015 Wire Documents);

> **The Commercial Property:** A December 16, 2015 wire transfer signed by Antonio was directed to American Title in the amount of $282,634.61 originating from a Luxury Haus bank account to act as the balance of a cash deposit to purchase the Commercial Property. (Exhibit X to Bush Cert., December 16, 2015 Wire Documents);

> **The Commercial Property:** A bank account was opened in favor of 335 Grand at Freedom Bank to deposit a refund check in the amount of $18,500.00 from American Title. Both Edith and Antonio were listed as signatories to this account. (Exhibit Y to Bush Cert., Freedom Bank Account Signature Card); (Exhibit Z to Bush Cert., 335 Grand Avenue Account Statement);

> **The Commercial Property:** A lease dated November 8, 2016 was executed between 335 Grand and CTE 1, LLC in relation to the Commercial Property signed by Edith on behalf of 335 Grand and Carmine Demao on behalf of CTE 1, LLC. This lease shows that rent for the commercial property starts at $17,500 per month for CTE 1, LLC and increases every year. (Exhibit AA to Bush Cert., November 8, 2016 Commercial Lease);

**The Ridgefield Home:** A September 24, 2014 wire transfer in the amount of $171,027.58 was signed by Antonio and directed to the Bermuda Reefs Club to secure the purchase of a vacation residence. (Exhibit BB to Bush Cert., September 24, 2014 Wire Documents);

**The Ridgefield Home:** A September 15, 2014 line of credit mortgage was taken out by Luxury Haus in the maximum amount of $400,000.00 payable to Freedom Bank and personal guaranties for this line-of-credit were signed by Antonio and Edith. (Exhibit CC to Bush Cert., September 15, 2014 Mortgage); (Exhibit DD to Bush Cert., September 15, 2014 Guaranties); and

**The Ridgefield Home:** A September 23, 2014 Master Note Advance Authorization in the amount of $171,000.00 to be deposited into a bank account maintained by Luxury Haus at Freedom Bank signed by Edith, which amount was, in fact, deposited at an account maintained by Luxury at Freedom Bank to purchase the couple's vacation residence in Bermuda. (Exhibit EE to Bush Cert., September 23, 2014 Master Note Advance Authorization); (Exhibit FF to Bush Cert., September 2014 Bank Statement of Luxury Haus).

41.     An internal document prepared by Freedom Bank shows that Luxury Haus' net worth prior to obtaining the mortgage on the Commercial Property was approximately $896,000.000. (Exhibit GG to Bush Cert., Loan Request Summary).

42.     A dealer financial statement submitted by Luxury Haus to Freedom Bank covering 2015 indicates that Luxury Haus had a positive net worth of $933,517 before acting as a corporate guarantor in favor of 335 Grand on a $1,050,000.00 loan. (Exhibit HH to Bush Cert., Dealer Financial Statement).

43.     On January 30, 2018, Chong provided a response to the document subpoenas served by NextGear. Within the documents provided by Chong, NextGear discovered that the $225,000.00 in funds transferred by wire to Chong on September 24, 2015 from a Luxury Haus account were used and transferred again to act as a deposit on the purchase of the Commercial Property by 335 Grand on October 16, 2015. (Exhibit II, October 16, 2015 Wire Documents).

44.     There was an unsigned business purchase agreement prepared as between Edith and Paul Gutierrez, Antonio's brother and corporate secretary for Luxury Haus. (Exhibit JJ to Bush Cert., Business Purchase Agreement). By the terms of this purchase agreement, Edith intended to sell her one-hundred percent interest in 335 Grand to Paul Gutierrez for the sum of $1.00. (Id. at p. 1). This unsigned agreement was dated December 17, 2015. (Id.). While the loan with Freedom Bank on the Commercial Property was closing, the Commercial Property was appraised to have an "as is" market value of $1,500,000.00. (Exhibit KK to Bush Cert., October 1, 2015 Appraisal Report). The above-mentioned business purchase agreement was never signed. (Exhibit TT to Bush Cert., March 30, 2018 E-mail)(stating "[t]hat agreement [the business purchase agreement] was not executed[.]").

45.     Chong also produced two documents related to 335 Grand, including 335 Grand's Reaffirmation of Membership and Percentage Interests form and Resolution and Authorization form both related to the purchase of the Commercial Property. (Exhibit LL to Bush Cert., Reaffirmation of Membership and Percentage Interests Form); (Exhibit MM to Bush Cert., Resolution and Authorization Form). Antonio signed the Reaffirmation and Percentage Interests Form as "Managing Member/Authorized Agent" for 335 Grand. (Exhibit LL to Bush Cert. at p. 1). Antonio signed the Resolution and Authorization Form under the heading of "Officers" for 335 Grand. (Exhibit MM to Bush Cert. at p. 1).

46.     On April 3, 2018, Chong provided a supplemental document production in response to the subpoenas served by NextGear. (Exhibit QQ to Bush Cert., April 3, 2018 E-mail). Within this supplemental document production, Chong provided bank records evidencing that a $62,000.00 cash deposit made by wire on July 24, 2014 and a cash payment in the amount of $559,192.89 made by wire on July 25, 2014 were used to purchase The Ridgefield Home. (Exhibit RR to Bush Cert., TD Bank Statement and Check). When compared with Luxury Haus' banking

records acquired from Chase, including a bank statement and two payment transaction forms, the collection of these records show that both the $62,000.00 cash deposit and the $559,192.89 payments were withdrawn from a bank account maintained by Luxury Haus.  (Exhibit SS to Bush Cert., Chase Bank Statement and Payment Transaction Forms).  Thus, on April 3, 2018, NextGear discovered that, like the Commercial Property, funds taken from Luxury Haus were exclusively used to purchase the Ridgefield Home for the benefit of Antonio and now Edith.

**(III)**   **NextGear's Damages.**

47.    NextGear is currently owed $6,698,276.45.  (Certification of Krystal McKenzie at ¶ ); (Exhibit G to Certification of Krystal McKenzie, Updated Payoff Statement).

48.    Since NextGear's complaint was filed on October 12, 2016, Luxury Haus, Antonio, and Edith have made no payments to reduce the total amount owed to NextGear.  (Certification of Krystal McKenzie at ¶ 25).

49.    NextGear has performed all of its obligations under the loan agreement with Luxury Haus because it has funded all lawful transactions.  (Id. at ¶ 26).

50.    To date, NextGear has incurred $44,649.27 in attorneys' fees and costs.  (Exhibit NN to Bush Cert., Attorneys' Fees and Costs Ledger and Invoices).  The fees incurred by NextGear are reasonable and necessary in light of the services rendered and are more than proportion to the efforts undertaken to enforce a client's rights under the terms of a loan where the client is owed $17,232,130.13.  (Exhibit NN to Bush Cert., Ledger and Invoices); (Bush Cert. at ¶ 50).

### STANDARD OF REVIEW

As our Supreme Court has recognized, Rule 4:46-2(c) compels that a court "shall" grant summary judgment:

> If the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged [such] that [NextGear] is entitled to a judgment or order as a matter of law. [See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1980).]

The Brill Court clearly articulated the burden a party opposing summary judgment must meet in order to resist the motion, as follows: "a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, supra, 142 N.J. at 529 (quoting R. 4:46-2 (emphasis in original). Critically, the non-moving party "cannot defeat a motion for summary judgment merely by pointing to *any* fact in dispute." Ibid. (emphasis in original).  A fact claimed to be in dispute must be "substantial," which the Supreme Court has defined as "not imaginary, unreal, or apparent only[.]" Ibid.

Applying Brill and Rule 4:46-2 here, this Court must engage in an analytical process to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [NextGear] must prevail as a matter of law." See Brill, supra, 142 N.J. at 533.  Because NextGear has indisputably established its claims against all the defendants, NextGear is entitled to summary judgment.

## LEGAL ARGUMENT

### POINT I

**NEXTGEAR IS ENTITLED TO SUMMARY JUDGMENT AGAINST LUXURY HAUS AND ANTONIO GUTIERREZ BECAUSE LUXURY HAUS BREACHED THE TERMS OF THE PARTIES' LOAN AGREEMENT AND A SUBSTANTIAL BALANCE IS STILL OWED.**

To prevail on a breach of contract claim in New Jersey, a party must demonstrate that "the parties entered into a valid contract, that the defendant failed perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007). "When the terms of [a written] contract are clear, it is the function of the court to enforce it as written and not to make a better contract for either of the parties [because t]he parties are entitled to make their own contracts." Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 42 (1960). In the commercial context, courts enforce the terms of the parties' contract in strict adherence to the express terms of that contract. Dontzin v. Myer, 301 N.J. Super. 501, 507 (App. Div. 1997).

As to its monetary damages claims against Luxury Haus and Antonio sounding in breach of contract, NextGear's case presents an uncomplicated commercial collection matter. No one disputes that Luxury Haus procured the terms of a floor-plan financing agreement from NextGear in March of 2014, Antonio executed an unlimited and continuing personal guaranty related to that loan, and then Luxury Haus has defaulted, in multiple ways, on its loan. Plus, NextGear has submitted competent proofs of what it is currently owed under Luxury Haus' floor-plan financing arrangement. Stated simply, there is no genuine issue of material fact as to NextGear's contract claims against Luxury Haus and Antonio.

## POINT II

**NEXTGEAR IS ENTITLED TO SUMMARY JUDGMENT ON ITS FRAUDULENT TRANSFER CLAIMS AGAINST ANTONIO AND LUXURY HAUS BECAUSE IT HAS PRESENTED COMPETENT EVIDENCE SHOWING THAT ANTONIO TOOK $2,000,000.00 IN FUNDS FROM NEXTGEAR.**

To protect the rights of creditors, New Jersey has adopted the Uniform Fraudulent Act, ("UFTA"), N.J.S.A. § 25:2-20 to 34.  Within the UFTA, N.J.S.A § 25:2-25 applies to all creditors and states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, **whether the creditor's claim arose before or after the transfer was made or the obligation was incurred**, if the debtor made the transfer or incurred the obligation:
>
>> a. With actual intent to hinder, delay, or defraud any creditor of the debtor.  [N.J.S.A. § 25:2-25(a)(emphasis added).]

In evaluating whether a particular transfer was undertaken with "actual intent to hinder, delay, or defraud any creditor of the debtor," courts will generally review "badges of fraud," including whether:

a.    The transfer or obligation was to an insider;

b.    The debtor retained possession or control of the property transferred;

c.    The transfer or obligation was disclosed or concealed;

d.    Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

e.    The transfer was of substantially all of the debtor's assets;

f.    The debtor absconded;

g.    The debtor removed or concealed assets;

h.    The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

i.      The debtor was insolvent or became insolvent shortly after the transfer was
        made or the obligation was incurred;

j.      The transfer occurred shortly before or shortly after a substantial debt was
        incurred; and

k.      The debtor transferred the essential assets of the business to a lienor who
        transferred the assets to an insider of the debtor. [N.J.S.A. §25:2-26.]

When considering these factors, "[t]he proper inquiry is whether the badges of fraud are present,

not whether some factors are absent." Gilchinsky v. National Westminster Bank N.J., 159 N.J.

463, 489 – 490 (1999). Also, "the presence of a single factor, i.e., badge of fraud, may cast

suspicion on the transferor's intent, the confluence of several in one transaction generally provides

**conclusive evidence** of an actual intent to defraud." Id. (citing Max Sugerman Funeral Home,

Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-1255 (1st Cir. 1991)(emphasis added).

        In this case, NextGear must be granted summary judgment on its fraudulent transfer claims

against Antonio Gutierrez and Luxury Haus. The evidence adduced during discovery shows that

Antonio, as an owner of Luxury Haus, took $2,000,000.00 of Luxury Haus' funds procured

through the sale of vehicles "out of trust" from NextGear's floor-plan financing agreement and

then Antonio gave that money to his brother, Paul Gutierrez, to hold for him. No one disputes that

these funds should have been remitted to Luxury Haus and that Antonio directed the release of

those funds from Paul through instructions received by Paul. Plus, during the time the transfer and

the arrangement between Antonio and Paul was ongoing, Antonio and Luxury Haus continually

defaulted on their loan obligations to NextGear. Because of these undisputed facts, NextGear is

entitled to a judgment, as a matter of law, on its fraudulent transfer claims against Antonio and

Luxury Haus.

## POINT III

**NEXTGEAR IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS IN RELATION TO ITS CLAIMS AGAINST ANTONIO AND LUXURY HAUS.**

Contractual fee-shifting provisions are readily enforceable in New Jersey. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)(citing Dep't of Envtl. Prot. V. Ventron, 94 N.J. 473, 504 (1983); Alcoa Edgewater No. 1 Federal Credit Union v. Carroll, 44 N.J. 442 (1965). New Jersey courts have specifically upheld enforcement of such fee-shifting provisions in cases involving breach of agreements, such as leases, sale of goods, construction contracts, and promissory notes. Hatch v. T & L Associates, 319 N.J. Super. 644, 648 (App. Div. 1999)(promissory note); McGuire v. City of Jersey City, 125 N.J. 310, 327 (1991)(lease); Glenfed Fin. Corp. v. Penick Corp., 276 N.J. Super. 163, 182-83 (App. Div. 1994)(loan agreement); Specialized Med. Sys., Inc. v. Lemmerling, 252 N.J. Super. 180, 185-186 (App. Div. 1991)(sale of goods). The Appellate Division has also expressly upheld the specific enforceability of contractual fee-shifting agreements "in the lender/borrower context." Regency Sav. Bank, F.S.B. v. Morristown Mews, LP, 363 N.J. Super. 363, 366 (App. Div. 2003).

In the case at bar, NextGear can easily show that it is permitted to recover its attorneys' fees and costs. The Promissory Note signed by Luxury Haus and the personal guaranty signed by Antonio both contained express provisions stating that NextGear would be entitled to its attorneys' fees and costs if it was obligated to enforce its rights under the pertinent loan documents. Plus, NextGear has submitted a ledger and detailed billing invoices to support its claim for attorneys' fees and costs in the amount of $44,649.27, along with a certification from its lead counsel, Anthony E. Bush, Esq. Given this, this Court should award attorneys' fees and costs to NextGear in the amount of $44,649.27.

## POINT IV

### NEXTGEAR MUST RECEIVE JUDGMENT AS A MATTER OF LAW AS TO ITS FRAUDULENT TRANSFER CLAIMS AGAINST EDITH BECAUSE SHE WAS INDISPUTABLY THE BENEFICIARY OF A MULTIPLE MILLION DOLLAR TRANSACTION.

As mentioned in Point II above, a creditor is entitled to judgment, as a matter of law, on a fraudulent transfer claim when there is "the confluence of several [badges of fraud]" that "generally provides **conclusive evidence** of an actual intent to defraud." Gilchinsky, supra, 159 N.J. 463, 489 – 490.   Under this standard, multiple courts within New Jersey have granted summary judgment to creditors seeking to void transfers of real estate made between spouses. Firmani v. Firmani, 332 N.J. Super. 118, 122 (App. Div. 2000)(granting summary judgment to a creditor when a husband transferred real estate into a partnership partially owned by his spouse); In re: Haberl, 2012 Bankr. LEXIS 4079 at *1, *9 (Bankr. D.N.J. Sept. 4, 2012)(granting partial summary judgment on liability to the United States Trustee on a fraudulent transfer claim when a husband transferred his interest in real estate to his wife in order to "protect the home.").[4]

In Firmani, the Appellate Division considered whether the transfer of a husband's interest in real estate to a family partnership he controlled, and in which his ex-wife and his children had an interest, for a nominal sum of $1.00 constituted a fraudulent transfer made with the actual intent to defraud creditors. Firmani, supra, 332 N.J. Super. at 119.   The husband had $83,000.00 in equity in the home prior to the subject transaction.   Id.   In deciding that the creditor was entitled to summary judgment, the Appellate Division held:

> We are satisfied that the undisputed facts show that Firmani's conveyance of the Haddonfield property to the Family Partnership manifested at least five...badges of fraud...Defendant was the sole general partner and primary limited partner on the Family Partnership prior to the conveyance, and therefore the conveyance was made to an insider.   By continuing to use the Haddonfield property as a residence

---

[4]      A full copy of the In re: Haberl decision is attached to the Bush Cert. as Exhibit "OO."   We are not aware of any contrary unpublished opinions.

- 23 -

and place of business, and as the sole general partner with a total ninety-five percent
interest in the Family Partnership, defendant clearly retained possession or control
of the property after the conveyance. Firmani…knew or should have known that
absent voluntary payment, an enforcement action probably would be brought. By
putting plaintiff in a position where she could only recover the money owed through
the Limited Partnership charging process, defendant removed…assets. Finally,
because Firmani's obligation to pay the remaining $25,000 he owed plaintiff
became due on December 12, 1994, the conveyance to the Family Partnership
occurred shortly after a substantial debt was incurred. [Firmani, supra, 332 N.J.
Super. at 122 – 123.]

In conclusion, the Appellate Division in Firmani stated that: "Firmani's conveyance of the

Haddonfield property clearly manifested at least five badges of fraud. The dubious and weak

justifications for the transaction offered by Firmani were insufficient to rebut the inference of

actual fraudulent intent[.]" Firmani, supra, 332 N.J. Super. at 124.

In this case, the badges of fraud that existed in Firmani are certainly present here. Antonio

was an officer or authorized agent of 335 Grand back on October 7, 2015, as shown on the

corporate documents executed by 335 Grand, which is more than two months before the closing

occurred on the Commercial Property. Moreover, Antonio was listed as an authorized agent on

335 Grand's bank account. If that were not enough, the business purchase agreement produced by

Chong shows that the true intent behind this transaction was to transfer all interests in 335 Grand

to Antonio's brother, Paul Gutierrez, Luxury Haus' corporate secretary while Antonio's wife,

Edith, owned 335 Grand in the interim time period. Paul is the same brother who helped Antonio

hide $2,000,000.00 that led to Antonio's criminal prosecution. The purchase of the Commercial

Property was clearly to an "insider" and remained under Antonio's "control."

Furthermore, by creating a separate limited liability company owned by Edith, Antonio

and Luxury Haus have concealed assets from NextGear. To purchase the Commercial Property,

Antonio took $507,634.61 in cash that was available to Luxury Haus' creditors and, instead, buried

it as equity for a different entity in the Commercial Property. Antonio and Edith did this at least

- 24 -

three months after Luxury Haus started to defraud NextGear through the submission of fraudulent bills of sale, which pattern repeated itself after the purchase of the Commercial Property. Plus, less than ten months after the purchase of the Commercial Property, Luxury Haus incurred $8,479,414.53 in debt to NextGear related to 81 vehicles being sold out of trust and 138 vehicles that could not be located.

Plus, Luxury Haus was literally given nothing for the purchase of the Commercial Property. It received no interest in the Commercial Property, it contributed $507,634.61 in cash deposits, and then guaranteed a $1,050,000.00 debt, all at point when Edith admits she was no longer employed by Luxury Haus. Unfortunately for Edith, a misuse of Luxury Haus' assets was nothing new given that she incurred $125,463.04 in credit card debt in Luxury Haus' name and took out a $171,000.00 advance on Luxury Haus' line-of-credit on the Ridgefield Home to purchase a vacation property, and now resides in the Ridgefield Home purchased through a cash transaction using $621,192.89 in Luxury Haus funds.

For the above reasons, the transfer of the Commercial Property was fraudulent and NextGear requests the entry of judgment against Edith Gutierrez in the amount of $1,557,634.61, reflecting the cash used from Luxury Haus to purchase the Commercial Property and the face amount of Luxury Haus' financial obligation to Freedom Bank. For these same reasons, a monetary judgment in relation to this transfer can also be entered against Luxury Haus and Antonio.

<u>POINT V</u>

**THE COURT SHOULD APPOINT A RECEIVER TO SELL THE COMMERCIAL PROPERTY SO THAT THE EQUITY IN THE COMMERCIAL PROPERTY CAN BE <u>REALIZED AND DISTRIBUTED TO NEXTGEAR.</u>**

<u>N.J.S.A.</u> § 25:2-29 governs the remedies available to creditors under the UFTA.   In pertinent part, this statutory section provides:

> a. In an action for relief against a transfer or obligation under this article, a creditor…may obtain:

> > (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

> > \*\*\*

> > (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

> > > (a) an injunction against further disposition by the debtor or the transferee, or both, of the asset transferred or of other property;

> > > (b) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

> > > (c) any other relief the circumstances may require.

> b. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds. [<u>N.J.S.A.</u> § 25:2-29a, b.]

Under general principles of equity, a trial court will generally give a contractual provision allowing for the appointment of a receiver "considerable weight in the court's evaluation of whether a…[r]eceiver should be appointed."  <u>Barclays Bank, P.L.C. v. Davidson Ave. Assoc., Ltd.,</u> 274 <u>N.J. Super.</u> 519, 523 – 524 (App. Div. 1994). In addition, a court will typically consider such things as the inadequacy of the security to satisfy the mortgage debt; the inability of the mortgagor to respond for any deficiency; misappropriation of funds; and failure to pay debt

service. Id. In the end, a receiver should be appointed "when it appears necessary to protect the [creditor's interests]." Id.

In this case, NextGear believes it is entitled to the appointment of a receiver. The Commercial Property was purchased with misappropriated Luxury Haus' funds at a point in time when red flags had already been raised under Luxury Haus' floor-plan financing agreement. Plus, because $507,634.61 in cash was removed from Luxury Haus' accounts, along with another $2,000,000.00 given to Antonio's brother, Luxury Haus' ability to respond to NextGear's eventual judgment has been greatly diminished. Thus, NextGear went from being in a position where it had an active business as a debtor to a situation where 219 vehicles representing $8,479,414.53 in financing were either sold of out of trust or missing and the dealership where its debtor used to operate is now owned by the personal guarantor's wife. Along with these factors, the loan agreement between NextGear and Luxury Haus explicitly provides that a receiver can be appointed. Therefore, NextGear has the benefit of at least four factors favoring the appointment of a receiver and the strong deference due to a contractual provision allowing the appointing of a receiver.

## CONCLUSION

For the foregoing reasons, the plaintiff, NextGear Capital, Inc., requests the entry of summary judgment in its favor and the appointment of a receiver.

Respectfully submitted,

ECKERT, SEAMANS, CHERIN & MELLOTT, LLC

By: _____

Dated: April 25, 2018

Anthony E. Bush
Nicholas M. Gaunce