EXHIBIT G



Eckert Seamans Cherin & Mellott, LLC
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, NJ 08648

Mailing Address:
P.O. Box 5404
Princeton, NJ 08543

TEL   609 392 2100
FAX   609 392 7956
www.eckertseamans.com

File No.: 308729-00004

Nicholas M. Gaunce, Esq.
609.989.5058
ngaunce@eckertseamans.com

June 12, 2019

***Via E-mail & Regular Mail***
Walter T. Grabowski, Esq.
Grabowski Law Offices, LLC
61 North Washington Street
Wilkes-Barre, PA  18701

Borce Martinoski, Esq.
Borce Martinoski, LLC
Attorney at Law
75 Essex Street, Suite 220
Hackensack, NJ  07601

RE:   **NextGear Capital, Inc. v. Antonio Gutierrez & Paul Gutierrez**
      **Case No.:  3:18-cv-01617**

Dear Messrs. Grabowski & Martinoski:

Enclosed, please find the following discovery requests that are being served on behalf of the plaintiff, NextGear Capital, Inc.:

1.   Request for Admissions Directed to Defendant, Antonio Gutierrez, with Interrogatory; and

2.   Request for Admissions Directed to Defendant, Paul Gutierrez, with Interrogatory.

We would kindly request that your clients respond to the enclosed within the time frame contemplated by the Federal Rules of Civil Procedure.  Thank you.

Very truly yours,

Nicholas M. Gaunce

Encs.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | CIVIL ACTION |
| Plaintiff, | CASE NO.: 3:18-cv-01617 |
| v. | (Judge Mannion) |
| ANTONIO L. GUTIERREZ; PAUL GUTIERREZ, | **REQUEST FOR ADMISSIONS DIRECTED TO DEFENDANT, ANTONIO GUTIERREZ, WITH INTERROGATORY** |
| Defendants. | |

**TO:**  Walter T. Grabowski, Esq.          Borce Martinoski, Esq.
Holland, Brady & Grabowski, P.C.          Borce Martinoski, LLC
61 North Washington Street          75 Essex Street, Suite 220
Wilkes-Barre, PA 18701          Hackensack, NJ 07601
*Attorneys for Defendants, Antonio*          *(Admitted Pro Hac Vice)*
*Gutierrez and Paul Gutierrez*

COUNSEL:

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 36 and Local Rule 36.1 of the United States District Court for the Middle District of Pennsylvania, Plaintiff, NextGear Capital, Inc. ("NextGear"), hereby requests that Defendant, Antonio Gutierrez ("Antonio"), furnish responses to the following request for admissions. This request shall be deemed continuing so as to require supplemental responses when new information becomes available.

                                        **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
                                        *Attorneys for Plaintiff, NextGear Capital, Inc.*

                    By:  _____
                                        NICHOLAS M. GAUNCE

Dated: June 12, 2019

## A. <u>DEFINITIONS</u>

1.   The terms "Action" or "Complaint" refer to the above-captioned action.

2.   The terms "you," "your," "defendant," or "Antonio" shall refer to Defendant, Antonio L. Gutierrez named in this Action.

3.   The term "Paul" shall refer to co-defendant, Paul Gutierrez named in the above matter.

4.   The term "LHI" shall refer to the entity identified as The Luxury Haus, Inc. that is owned by Antonio.

5.   The term "NextGear" shall refer to the plaintiff in the above action

6.   The term "Loan Agreement" shall mean the note attached as Exhibit "A" to NextGear's Complaint filed in the above action.

7.   The term "Individual Guaranty" shall mean the document attached as Exhibit "B" to NextGear's Complaint filed in the above action.

8.   The term "Property" shall refer to the real estate identified as Lot No. 33, Section II of the Penn Estates located in Monroe County.

9.   The term "April 8, 2016 Deed" shall refer to the document attached as Exhibit "M" to NextGear's Complaint filed in the above action.

10.   The term "September 28, 2016 Deed" shall refer to the document attached as Exhibit "N" to NextGear's Complaint filed in the above action.

11.     "Individual" or "Person" means any natural person, sole proprietorship, corporation, company, association, joint venture, firm, partnership or other business or legal entity in whatever form.

12.     "Any" shall mean "each and every" as well as "any one."

13.     The term "document" means any document not previously produced that is written, printed, typed, or visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, any and all letters, business cards, advertisements, rate cards, correspondence, contracts, agreements, bills, orders, receipts, records, books, computer tapes and printouts, computer disks (including without limitation all computer storage media such as hard drives, floppy disks, zip disks, tapes and CD-ROMs), intracorporation communications, memoranda, notes, notebooks, maps, sketches, cablegrams, telegrams, reports, press releases, advertising and promotional literature, prints, drawings, plans, photographs, printed forms, manuals, brochures, lists, publications, catalogues, directories, videotapes, other tape recordings, including audio tapes, films, microfilm, and all other writings, including drafts, typings, printings, minutes or copies or reproductions thereof in the possession, custody or control of defendant or any other past or recent officer, director, agent, employee consultant, or attorney for defendant or any person acting on behalf of defendant.

## B. INSTRUCTIONS

1.      To the extent any Request is objected to, set forth all reasons therefore.  If you object in any part to any Request, respond to the remainder completely.  If a claim of "privilege" or "work product" is made for not responding to any Request in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of same.  Further, with respect to any "privileged" documents, state whether any such document is the original or a copy; the name, business affiliation and job title as of the time the document was created of the author and of the addressee; the name, business affiliation and job title as of the time the document was created of every person to whom a copy of the document was directed and every person known to have received a copy of the document, regardless of whether said person's name appears on a list of copyees; the name, business affiliation and job title, both as of the time the document was created and as of the time the claim of privilege is raised, of the person in whose possession, custody and/or control the documents are found; whether privilege is claimed as to all or only a portion of the document; and each privilege asserted as protecting the document from discovery.

2.      These Requests shall be continuing, so as to require additional responses if further information is obtained between the time responses are served and the time of trial.  Such additional responses shall be served from time to time, but not later than ten (10) days after such additional information is received.

4

## REQUEST FOR ADMISSIONS

1.   Admit that Paul is your brother.

_____ Admit                    _____ Deny


2.   Admit that Paul was an officer of LHI in 2015.

_____ Admit                    _____ Deny


3.   Admit that Paul was LHI's secretary in 2015.

_____ Admit                    _____ Deny


4.   Admit that Paul was an officer of LHI in 2016.

_____ Admit                    _____ Deny


5.   Admit that Paul was LHI's secretary in 2016.

_____ Admit                    _____ Deny


6.   Admit that an authentic copy of the Loan Agreement is attached as Exhibit "A" to NextGear's Complaint filed in the above action.

_____ Admit                    _____ Deny


7.   Admit that paragraph 4(h)(iv) of the Loan Agreement provides that "all statements, facts, numbers, and other information in such Receivable and all related documents are true and accurate to the best of Borrower's knowledge, are free from fraud, and have not been altered or modified subsequent to their execution, except for such alterations or modifications or have been acknowledged and initialed by Borrower and the other parties thereto."

_____ Admit                    _____ Deny


8.   Admit that paragraph 6 of the Loan Agreement addresses events of default.

_____ Admit                    _____ Deny

9.    Admit that paragraph 6(a) of the Loan Agreement reads that "Borrower or Guarantor fails to perform any of its obligations, undertakings or covenants under this Note or under any other Loan Document, including any obligation to repay any Liability when due and Borrower's obligation to pay upon demand any outstanding Liability under this Note."

_____ Admit                    _____ Deny

10.   Admit that LHI submitted fraudulent bills of sale with an increased purchase price to NextGear in June of 2015.

_____ Admit                    _____ Deny

11.   Admit that LHI submitted fraudulent bills of sale with an increased purchase price to NextGear in March of 2016.

_____ Admit                    _____ Deny

12.   Admit that an authentic copy of Antonio's Individual Guaranty related to the Loan Agreement is attached as Exhibit "B" to NextGear's Complaint filed in the above action.

_____ Admit                    _____ Deny

13.   Admit that Antonio purchased the Property by way of the April 8, 2016 Deed.

_____ Admit                    _____ Deny

14.   Admit that the April 8, 2016 Deed states that the consideration Antonio paid for the Property was $76,000.00.

_____ Admit                    _____ Deny

15.   Admit that no additional consideration, beyond what appears in the April 8, 2016 Deed, was paid by Antonio to purchase the Property.

_____ Admit                    _____ Deny

16.  Admit that the check attached as Exhibit "A" to this Request for Admissions was used to purchase the Property.

_____ Admit         _____ Deny

17.  Admit that the check attached as Exhibit "A" to this Request for Admissions was drawn on a business account maintained by LHI at Freedom Bank.

_____ Admit         _____ Deny

18.  Admit that Antonio transferred the Property to Paul by way of the September 28, 2016 Deed.

_____ Admit         _____ Deny

19.  Admit that the stated consideration in the September 28, 2016 Deed is $1.00.

_____ Admit         _____ Deny

20.  Admit that Paul paid no consideration, except as stated in the September 28, 2016 Deed, for the Property.

_____ Admit         _____ Deny

21.  Admit that your wife, Edith Gutierrez, filed a divorce action in Bergen County, New Jersey in December of 2015.

_____ Admit         _____ Deny

22.  Admit that LHI's credit line with NextGear was locked on October 3, 2016.

_____ Admit         _____ Deny

23.  Admit that a payment in the amount of $1,867,230.89 made to NextGear by LHI was returned for insufficient funds on October 7, 2016.

_____ Admit         _____ Deny

24.   Admit that NextGear filed a civil complaint in the New Jersey Superior Court, Bergen County against LHI and Antonio on October 12, 2016.

_____   Admit          _____   Deny

25.   Admit that NextGear sought payment in the amount of $17,232,130.12, plus interest, fees and other expenses in its complaint filed in the New Jersey Superior Court, Bergen County against LHI and Antonio on October 12, 2016.

_____   Admit          _____   Deny

## **INTERROGATORY**

1.      To the extent that your response to any of the above requests was anything but an unqualified admission, set forth your factual basis for failing to admit the item requested, identify and describe all facts and circumstances which you believe support your refusal to admit the subject of any request, and attach copies of all documents or communications that you believe support your failure to admit to the subject request.

9

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of
the United States of America that the foregoing responses to request for admissions are true and
correct and that any production that I have made in response to the interrogatory above is
complete based upon what documents are reasonably available and accessible to me and within
my possession.

_____

By:

Dated:

## DECLARATION OF SERVICE

I, Nicholas M. Gaunce, Esq., hereby declare that, on June 12, 2019, I caused the above request for admissions, with interrogatory, to be served upon all counsel of record via e-mail and regular mail, as follows:

Walter T. Grabowski, Esq.
Holland, Brady & Grabowski, P.C.
61 North Washington Street
Wilkes-Barre, PA 18701
E-mail: WTGLAW@aol.com
*Attorneys for Defendants, Antonio L. Gutierrez and Paul Gutierrez*

- and –

Borce Martinoski, Esq.
Borce Martinoski, LLC
75 Essex Street
Suite 220
Hackensack, NJ 07601
E-mail: martinoskilaw@gmail.com
*Attorneys for Defendants, Antonio L. Gutierrez and Paul Gutierrez*
*(Admitted Pro Hac Vice)*

Pursuant to 28 *U.S.C.* § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
Nicholas M. Gaunce, Esq.

Dated:  June 12, 2019

11

# EXHIBIT A

Treasurer's Check

**FREEDOM BANK**
95 West Essex St., 2nd Floor, Maywood, NJ, 07602
www.freedombanknj.com

1532

88-1449 / 0212

April 8, 2016

Pay to the
Order of: Golden Dome Abstract

$81,404.93

Eighty-One Thousand Four Hundred Four and 93/100*******************

Authorized Signature

Memo

Authorized Signature

⑈00l532⑈ ⑆02l2l4493⑆   370000000l5⑈

04082016 LANDMARK COMMUNITY,PA-051.019278-

For Deposit Only
Golden Dome Abstract LLC
Escrow 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., | :   CIVIL ACTION |
|       Plaintiff, | :   CASE NO.: 3:18-cv-01617 |
| v. | :   (Judge Mannion) |
| ANTONIO L. GUTIERREZ; PAUL GUTIERREZ, | :   **REQUEST FOR ADMISSIONS**<br>:   **DIRECTED TO DEFENDANT, PAUL**<br>:   **GUTIERREZ, WITH** |
|       Defendants. | :   **INTERROGATORY** |

**TO:**    Walter T. Grabowski, Esq.            Borce Martinoski, Esq.
        Holland, Brady & Grabowski, P.C.     Borce Martinoski, LLC
        61 North Washington Street          75 Essex Street, Suite 220
        Wilkes-Barre, PA 18701             Hackensack, NJ 07601
        *Attorneys for Defendants, Antonio*   *(Admitted Pro Hac Vice)*
        *Gutierrez and Paul Gutierrez*

**COUNSEL:**

      **PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 36 and

Local Rule 36.1 of the United States District Court for the Middle District of Pennsylvania,

Plaintiff, NextGear Capital, Inc. ("NextGear"), hereby requests that Defendant, Paul Gutierrez

("Paul"), furnish responses to the following request for admissions. This request shall be

deemed continuing so as to require supplemental responses when new information becomes

available.

                                      **ECKERT SEAMANS CHERIN &**
                                      **MELLOTT, LLC**
                                      *Attorneys for Plaintiff, NextGear Capital,*
                                      *Inc.*

                    By:      _____
Dated: June 12, 2019                      NICHOLAS M. GAUNCE

## A. DEFINITIONS

1.　The terms "Action" or "Complaint" refer to the above-captioned action.

2.　The terms "you," "your," "defendant," or "Paul" shall refer to Defendant, Paul Gutierrez in this Action.

3.　The term "Antonio" shall refer to co-defendant, Antonio L. Gutierrez in the above matter.

4.　The term "LHI" shall refer to the entity identified as The Luxury Haus, Inc. that is owned by Antonio.

5.　The term "NextGear" shall refer to the plaintiff in the above action

6.　The term "Loan Agreement" shall mean the note attached as Exhibit "A" to NextGear's Complaint filed in the above action.

7.　The term "Individual Guaranty" shall mean the document attached as Exhibit "B" to NextGear's Complaint filed in the above action.

8.　The term "Property" shall refer to the real estate identified as Lot No. 33, Section II of the Penn Estates located in Monroe County.

9.　The term "April 8, 2016 Deed" shall refer to the document attached as Exhibit "M" to NextGear's Complaint filed in the above action.

10.　The term "September 28, 2016 Deed" shall refer to the document attached as Exhibit "N" to NextGear's Complaint filed in the above action.

11.　The term "Previous Action" shall refer to the lawsuit captioned as NextGear Capital, Inc. v. The Luxury Haus, Inc., BER-L-7268-16.

2

12.     "Individual" or "Person" means any natural person, sole proprietorship, corporation, company, association, joint venture, firm, partnership or other business or legal entity in whatever form.

13.     "Any" shall mean "each and every" as well as "any one."

14.     The term "document" means any document not previously produced that is written, printed, typed, or visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, any and all letters, business cards, advertisements, rate cards, correspondence, contracts, agreements, bills, orders, receipts, records, books, computer tapes and printouts, computer disks (including without limitation all computer storage media such as hard drives, floppy disks, zip disks, tapes and CD-ROMs), intracorporation communications, memoranda, notes, notebooks, maps, sketches, cablegrams, telegrams, reports, press releases, advertising and promotional literature, prints, drawings, plans, photographs, printed forms, manuals, brochures, lists, publications, catalogues, directories, videotapes, other tape recordings, including audio tapes, films, microfilm, and all other writings, including drafts, typings, printings, minutes or copies or reproductions thereof in the possession, custody or control of defendant or any other past or recent officer, director, agent, employee consultant, or attorney for defendant or any person acting on behalf of defendant.

## B.  INSTRUCTIONS

1.       To the extent any Request is objected to, set forth all reasons therefore.  If you object in any part to any Request, respond to the remainder completely.  If a claim of "privilege" or "work product" is made for not responding to any Request in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the Court to adjudicate the validity of same.  Further, with respect to any "privileged" documents, state whether any such document is the original or a copy; the name, business affiliation and job title as of the time the document was created of the author and of the addressee; the name, business affiliation and job title as of the time the document was created of every person to whom a copy of the document was directed and every person known to have received a copy of the document, regardless of whether said person's name appears on a list of copyees; the name, business affiliation and job title, both as of the time the document was created and as of the time the claim of privilege is raised, of the person in whose possession, custody and/or control the documents are found; whether privilege is claimed as to all or only a portion of the document; and each privilege asserted as protecting the document from discovery.

2.       These Requests shall be continuing, so as to require additional responses if further information is obtained between the time responses are served and the time of trial.  Such additional responses shall be served from time to time, but not later than ten (10) days after such additional information is received.

## REQUEST FOR ADMISSIONS

1.     Admit that you are Antonio's brother.

      _____ Admit        _____ Deny

2.     Admit that you were an officer of LHI in 2015.

      _____ Admit        _____ Deny

3.     Admit that you were LHI's secretary in 2015.

      _____ Admit        _____ Deny

4.     Admit that you were an officer of LHI in 2016.

      _____ Admit        _____ Deny

5.     Admit that you were LHI's secretary in 2016.

      _____ Admit        _____ Deny

6.     Admit that Antonio transferred the Property to you by way of the September 28, 2016 Deed.

      _____ Admit        _____ Deny

7.     Admit that the stated consideration in the September 28, 2016 Deed is $1.00.

      _____ Admit        _____ Deny

8.     Admit that you paid no consideration, except as stated in the September 28, 2016 Deed, for the Property.

      _____ Admit        _____ Deny

9.     Admit that you are the current record owner of the Property.

      _____ Admit        _____ Deny

10.   Admit that Antonio's wife, Edith Gutierrez, filed a divorce action in Bergen County, New Jersey in December of 2015.

_____ Admit                    _____ Deny

11.   Admit that in the Previous Action you were deposed on April 10, 2017.

_____ Admit                    _____ Deny

12.   Admit that an authentic copy of pages 70, 71, 72, 73, 78, 79, 80, and 81 of the transcript from your April 10, 2017 deposition in the Previous Action is attached to this request as Exhibit "A."

_____ Admit                    _____ Deny

13.   Admit that you were asked at your April 10, 2017 deposition about whether Antonio gave you a gift in excess of $10,000.00.

_____ Admit                    _____ Deny

14.   Admit that, at your April 10, 2017 deposition, you never testified about Antonio's transfer of the Property to you by way of the September 28, 2016 Deed.

_____ Admit                    _____ Deny

## **INTERROGATORY**

1.    To the extent that your response to any of the above requests was anything but an unqualified admission, set forth your factual basis for failing to admit the item requested, identify and describe all facts and circumstances which you believe support your refusal to admit the subject of any request, and attach copies of all documents or communications that you believe support your failure to admit to the subject request.

## <u>DECLARATION</u>

Pursuant to 28 <u>U.S.C.</u> § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing responses to request for admissions are true and correct and that any production that I have made in response to the interrogatory above is complete based upon what documents are reasonably available and accessible to me and within my possession.

_____

By:

Dated:

8

## DECLARATION OF SERVICE

I, Nicholas M. Gaunce, Esq., hereby declare that, on June 12, 2019, I caused the above request for admissions to be served upon all counsel of record via e-mail and regular mail, as follows:

Walter T. Grabowski, Esq.
Holland, Brady & Grabowski, P.C.
61 North Washington Street
Wilkes-Barre, PA 18701
E-mail: WTGLAW@aol.com
*Attorneys for Defendants, Antonio L. Gutierrez and Paul Gutierrez*

- and –

Borce Martinoski, Esq.
Borce Martinoski, LLC
75 Essex Street
Suite 220
Hackensack, NJ 07601
E-mail: martinoskilaw@gmail.com
*Attorneys for Defendants, Antonio L. Gutierrez and Paul Gutierrez*
*(Admitted Pro Hac Vice)*

Pursuant to 28 *U.S.C.* § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
Nicholas M. Gaunce

Dated:  June 12, 2019

9

EXHIBIT A

$30873?4$

# COPY

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION — BERGEN COUNTY
DOCKET NO.   BER-L-7268-16

NEXTGEAR CAPITAL, INC.,          :
                                 :
        Plaintiff,               :
                                 :
    -vs-                         :
                                 :
THE LUXURY HAUS INC., and        :
ANTONIO L. GUTIERREZ,            :
jointly and severally,           :
                                 :
        Defendants.              :

        Oral deposition of **PAUL GUTIERREZ** was taken

at the law offices of Ian J. Hirsch & Associates, 75

Essex Street, Suite 220, Hackensack, New Jersey,

before ANNA MARIA FASCIANO, License No.

30X100200300, a Certified Court Reporter of the

State of New Jersey and Notary Public of the State

of Pennsylvania, on Monday, April 10, 2017,

commencing at 10:25 a.m.

DANER & KIRSH COURT REPORTING SERVICES, INC.
374 Shady Brook Drive
Langhorne, Pennsylvania 19047
215-968-2749     or     609-393-3001
drsteno@verizon.net

70

1  Q.   So previously I had asked you, Mr.
2  Gutierrez, had your brother given you a loan or a
3  gift, your brother or his business given you a loan
4  or a gift in excess of $10,000 and you had said no.
5      A.   Because it wasn't a loan or a gift.
6      Q.   Right. This money wasn't intended for
7  you to be --
8      A.   Correct.
9      Q.   -- the ultimate holder --
10     A.   Yes.
11     Q.   -- of this money, correct?
12     A.   Absolutely, yes.
13     Q.   So I had also asked you about your
14 understanding of what happened with Mr. DeMaio,
15 correct?
16     A.   Correct.
17     Q.   And you said you knew about the million
18 dollars but you don't know what it was for, right?
19     A.   Right. Yeah.
20     Q.   That million dollars, this is the same
21 million dollars that your attorney has now
22 referenced, correct?
23     A.   Correct.
24     Q.   There isn't a second million dollars,
25 right?

71

1      A.   No, that's it.
2      Q.   Okay. So your brother had asked you to
3  hold onto this money. When was that?
4      A.   Right around the same time everything
5  happened, his wife -- his wife was trying to get --
6  was trying to, you know, get ahold of the money. So
7  it was just -- intention of his wife not getting,
8  you know, not getting the money. And eventually, I
9  don't know what the million dollars was for, but my
10 guess was to -- if needed to take care of customers,
11 anything with NextGear or anything like that.
12             MR. HIRSCH: I'll object. You're not
13 supposed to guess. Either you know or you don't
14 know.
15             THE WITNESS: Right.
16             MR. HIRSCH: If you're not sure, then I
17 don't know.
18             THE WITNESS: Okay.
19
20 BY MR. BUSH:
21     Q.   Okay. When your brother gave you the
22 money to hold onto, what was your understanding as
23 to how long you were going to hold onto it?
24     A.   There was no understanding.
25     Q.   Okay. What did you think you were

72

1  doing with the money?
2      A.   Nothing. I -- it went to DeMaio. I
3  literally had it, I mean, a short period of time.
4      Q.   Okay.
5      A.   It went straight to DeMaio.
6      Q.   So when your brother gave you the
7  money, you knew it was going to DeMaio?
8      A.   Yeah, it went to DeMaio, yeah. I
9  didn't know -- I didn't know it was going to DeMaio.
10 He didn't want his wife getting -- getting ahold of
11 it.
12     Q.   Okay.
13     A.   So it went -- but it went to DeMaio
14 literally a week later, a week or two weeks later,
15 if that.
16     Q.   When did you find out it was going to
17 DeMaio?
18     A.   The same day that he told me. Not when
19 he gave me the million dollars but the same day he
20 said I need the million dollars going to DeMaio.
21     Q.   Okay.
22     A.   That same day the million dollars went
23 to DeMaio.
24     Q.   Between the time you were handed the
25 money and the time it went to DeMaio, what did you

73

1  think was going to happen to the money?
2      A.   Don't know. Don't know. Don't know --
3  I mean, to my knowledge, it was customers, NextGear
4  and it was so his wife wouldn't get to it, that's
5  it. Those are my three understandings. Obligations
6  that he had. He -- Tony knows that his obligations
7  was customers, NextGear. Who came first, he didn't
8  know. But customers and NextGear was -- Tony knew
9  it was going to be an obligation.
10     Q.   Okay.
11     A.   And the last thing he wanted was his
12 wife to try to get ahold of that and now he couldn't
13 meet his obligations.
14     Q.   Okay. When he gave you this money,
15 were you already working at the Volkswagen store?
16     A.   No.
17     Q.   Okay. So you started working at the
18 Volkswagen store after you -- after the million
19 dollars was turned over to DeMaio?
20     A.   After.
21     Q.   Did DeMaio hire you directly or was it
22 somebody else?
23     A.   DeMaio hired me directly.
24     Q.   Okay.
25     A.   But one thing had nothing to do with

78

1  that money. So, you know, he -- listen, he didn't
2  know who -- who to do right by first, customers or
3  NextGear or NextGear or customers, you know. So he
4  was - to my understanding, he was trying to do the
5  right thing and making payoffs to customers because
6  payoffs were made. You know, customers trade in
7  their vehicles, which -- and I believe NextGear sees
8  those cars anyway.
9
10 BY MR. BUSH:
11     Q.   Okay. So these payoffs or refunds that
12 were given to customers --
13     A.   Refunds that were given to customers.
14 Payoffs that were made to lending institutions, they
15 trade in a vehicle, they had to make payoffs. You
16 know, money got funded, they had to make payoffs. I
17 mean, deals were funded, so...
18     Q.   What account were these from?
19     A.   PNC Bank. Or PNC account which the
20 prosecutor's office has the accounts.
21     Q.   And that PNC account was in the name of
22 The Luxury Haus?
23     A.   It was in the name of Luxury Haus, yes.
24 Luxury Haus of Leonia. And XAM Global. X-A-M
25 Global, which is my -- it was my company. The

79

1  initials of each of my kids. And my son is Xavi, so
2  I say XAM.
3      Q.   What did XAM Global do?
4      A.   Nothing. I was on 1099 with Luxury
5  Haus as of last June, May or June of 2016. Because
6  of what we were experiencing, I took a huge pay cut.
7  Because of a pay cut for -- for purposes I went on
8  1099 --
9      Q.   Okay.
10     A.   -- so I could show more of a net.
11     Q.   Okay. Is XAM Global still existing
12 today?
13     A.   No. After the prosecutor's office, I
14 got a letter in the mail and they shut down the
15 account.
16     Q.   Okay. Now, the PNC account was Luxury
17 Haus of Leonia?
18     A.   No, that's a TD account. I'm sorry, TD
19 account. It was Luxury Haus of Leonia.
20     Q.   That was TD --
21     A.   Which the prosecutor as well has.
22     Q.   Okay. So the checks you wrote to
23 refund to customers were on the TD account?
24     A.   Both. Both. Both. Money was used
25 from both accounts to refund. XAM Global was PNC,

80

1  TD was the other one.
2      Q.   Okay. So you got the two million
3  dollars, you split it between these two accounts.
4      A.   Yeah.
5      Q.   The two million dollars that came to
6  you was in what form; was it in multiple checks or
7  one --
8      A.   Checks. Checks. Multiple checks.
9      Q.   Multiple checks.
10     A.   Uh-hmm.
11     Q.   Okay. And do you remember what bank
12 they were drawn on?
13     A.   No, I don't.
14     Q.   Okay. Do you still have a list of the
15 customers who you sent refund checks to?
16     A.   No.
17     Q.   Okay.
18     A.   No, everything -- I would get a -- I
19 would get a text message or a call from Liz. She
20 would tell me customer name, I would have to get a
21 certified check. Mainly it was all certified
22 checks. We also had payroll people still working at
23 the time. We did payroll out of those accounts as
24 well.
25     Q.   So, but you were acting at Liz's

81

1  direction?
2      A.   Yeah, Liz. Liz and Tony. Uh-hmm.
3      Q.   Do you still have the same phone that
4  you had at that time?
5      A.   No. No. No.
6      Q.   You're not sure?
7      A.   I'm not sure. I'm not sure because I
8  did get a phone, this one, because I switched from
9  AT&T to Verizon. But I think I might have, yes.
10     Q.   So you think you have a new phone?
11     A.   No, no, I think I might have the...
12     Q.   You think you have texts from Liz
13 telling you which customers to submit refunds to?
14     A.   That's what I'm checking now.
15          MR. HIRSCH: What's that?
16     A.   See one that...
17          So that's payroll. I can only go back
18 to that. So I have this, for example. You're not
19 taking my phone, right, as an exhibit? Sorry.
20          Tony said to call the -- Tony said to
21 call Dave Martin. Please, very important. That's
22 the warranty company. Need two $9,000 cashier
23 checks. So that's what I -- you know, that's what
24 they would have me --
25     Q.   Those are the kinds of things --