**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC., | : | CIVIL ACTION |
| Plaintiff, | : | CASE NO.: 3:18-cv-1617 |
| v. | : | |
| ANTONIO L. GUTIERREZ; PAUL GUTIERREZ, | : | |
| Defendants. | : | |

**BRIEF OF PLAINTIFF, NEXTGEAR CAPITAL, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND APPOINTMENT OF A RECEIVER.**

**I.      PRELIMINARY STATEMENT**

We submit this brief in support of the motion filed by the plaintiff, NextGear Capital, Inc. ("NextGear"), against Defendants, Antonio L. Gutierrez ("Antonio") and Paul Gutierrez ("Paul") (collectively "defendants"), seeking the entry of summary judgment and the appointment of a receiver, among other remedies.  Through its motion, NextGear seeks to void a fraudulent transaction in which Antonio first acquired a four-bedroom, two-and-a-half bathroom residence located in the Penn Estates at 5334 Delia Terrace, East Stroudsburg, PA 18301 (the "Property") in April of 2016 and then, 174 days later, transferred the Property to his brother, Paul, for the sum of $1.00 just as NextGear commenced its substantial collection action against Antonio in New Jersey.  NextGear's collection action resulted in the entry of a $4,500,000.00 judgment against Antonio and his car dealership, The Luxury Haus, Inc. ("LHI").  Given this sequence, Antonio plainly transferred the Property to Paul, his brother, for the purpose of frustrating NextGear's collection efforts.  This transaction must now be undone.

## II.     PROCEDURAL HISTORY

On August 16, 2018, NextGear commenced this action by filing a several-count complaint against Defendants. (*Complaint*, ECF No. 1).[1] In its complaint, NextGear alleged that Antonio and Paul, as part of a larger scheme to defraud NextGear, transferred the Property from Antonio to Paul on the eve of when NextGear commenced its collection action against Antonio in New Jersey. (*Compl.* at ¶¶ 7 – 36). Paul worked at LHI as a corporate secretary and general manager. (*Compl.* at ¶ 3). On October 1, 2018, NextGear recorded a *Praecipe* for *Lis Pendens* as to the Property in the Monroe County Land Recorder's Office. (*Exhibit A to the Declaration of Nicholas M. Gaunce, Esq.* ("Gaunce Dec."), Praecipe).

After NextGear achieved service of its complaint, both Antonio and Paul filed motions to dismiss NextGear's complaint contending that a variety of procedural reasons justified the dismissal of this action. (*November 21, 2018 Motion to Dismiss of Paul Gutierrez*, ECF No. 9); (*December 7, 2018 Motion to Set Aside Default*, ECF No. 20). On April 29, 2019, this Court entered two orders granting the motions filed by Defendants in part, but, at the same time, denying them as to the September 28, 2016 transfer of the Property from Antonio to Paul. (*April 29, 2019 Order as to Paul Gutierrez's Motion to Dismiss*, ECF No. 32); (*April 29, 2019 Order as to Antonio Gutierrez's Motion to Dismiss*, ECF No. 34). On May 10, 2019, Antonio and Paul filed an answer to the remaining counts of NextGear's complaint addressing the transfer of the Property from Antonio to Paul. (*May 10, 2019 Answers*, ECF Nos. 35, 36).

After Antonio and Paul admitted all of the operative facts outlined in NextGear's complaint by failing to respond to separate requests for admissions served upon them by NextGear, NextGear files the present summary judgment motion.

---

[1]     This citation here and throughout this brief references the first document, and that document's attachments, appearing on this Court's docket for this matter.

### III. STATEMENT OF FACTS

NextGear is a lender that is in the business of, among other things, providing financing to automobile dealers for the purchase of inventory for resale to retail customers of that automobile dealer (a so-called "floor-plan financier"). (*Complaint*, ECF No. 1 at ¶ 1). Antonio is the president of a corporation called The Luxury Haus, Inc. ("LHI"), which was an automobile dealership located in Bergen County, New Jersey. (*Id.* at ¶ 2). Paul is Antonio's brother and was the corporate secretary and general manager of LHI when it was operating. (*Compl.* at ¶ 3); (*Exhibit B to Gaunce Dec.*, LHI Letter).

#### A. NextGear's Loan to LHI and LHI's "Red Flags."

NextGear's relationship with LHI and Antonio began over five years ago. On March 20, 2014, NextGear extended a line of credit to LHI in the maximum amount of $12,000,000. (*Compl.* at ¶ 7). On behalf of LHI, Antonio signed a Demand Promissory Note relating to LHI's credit line with NextGear. (*Ex. A to Compl.*, March 20, 2014 Demand Promissory Note). LHI's promissory note provided for the appointment of a receiver in the event of a default. (*Id.* at ¶ 7(b)). On March 20, 2014, Antonio also signed a personal guaranty. (*Ex. B to Compl.*, Guaranty). The terms of this guaranty secured LHI's debt and also consented to the remedies available to NextGear under LHI's note. (*Id.* at ¶¶ 2(a), 4).

Beginning in June of 2015, NextGear started to see suspicious activity surface in relation to LHI's loan, including:

  i. On buyer-paid requests,[2] there was an overlap of large batches of buyer-paid flooring requests and larger payment due dates to NextGear, including $223,134.84 worth of flooring requests on June 11, 2015 and $195,449.63 worth of payments that were electronically transferred to NextGear on June

---

[2] "Buyer-paid requests" are submissions for final payment by a dealer made to a floor-plan financing lender. In making such a request, the dealer is making a representation that a retail customer has paid for a vehicle sale off the dealer's lot.

    12, 2015. This issue arose again on the following dates: June 22/23, 2015, July 30/31, 2015, January 25, 2016, March 10/11, 2016, March 17, 2016, March 31/April 1, 2016, and June 22/23, 2016;

  ii. On June 22, 2015, there were multiple refloor requests[3] for vehicles that had been in inventory for over 365 days and LHI submitted fraudulent bills of sale with an increased purchase price, which, if not caught by NextGear, would have resulted in LHI receiving a larger payment than required. On this date, 6 out of 11 requests for financing were denied; and

  iii. On March 10, 2016, there were multiple refloor requests within fifteen days of when a vehicle had been sold. On this date, 11 requests for financing out of 14 were denied. [*Exhibit C to Compl.,* Spreadsheet.]

Eventually, LHI's line of credit with NextGear was locked on October 3, 2016. (*Compl.* at ¶ 11). On October 5, 2016, NextGear received notice that LHI sold eighty-one vehicles financed by NextGear "out of trust."[4] (*Id.* at ¶ 12). NextGear's SOT Report[5] demonstrates that Antonio and LHI began selling vehicles financed by NextGear "out of trust" as early as February 2016. (*Exhibit I to Compl.*, SOT Report). Then, on October 7, 2016, a payment made by LHI in the amount of $1,867,230.89 was returned for insufficient funds. (*Compl.* at ¶ 14).

  **B.** **NextGear's Judgment and Post-Judgment Discovery.**

In respect of these various defaults, on October 12, 2016, NextGear filed a complaint in the Law Division of the New Jersey Superior Court, Bergen Vicinage against LHI and Antonio seeking to recover amounts that were owed to NextGear under its floor-plan financing agreement with LHI. (*Exhibit D to Complaint*, New Jersey Civil Action Complaint). In April of 2018,

---

[3]  "Refloor requests" are submissions by a dealer made to a floor-plan financing lender to relist a sold vehicle on the floor-plan financier's line of credit because it has been returned by a retail customer.

[4]  "Out of trust" means to sell a vehicle financed by LHI's credit line held at NextGear without remitting the necessary sale proceeds to NextGear.

[5]  "SOT" stands for sold out of trust. An SOT report is prepared by NextGear once it is aware a dealer is selling vehicles "out of trust" and NextGear is trying to account for all the vehicles it financed.

4

NextGear obtained a consent judgment against Antonio and LHI in the amount of $4,500,000.00 (the "Judgment"). (*Exhibit O to Compl.*, Judgment). Thereafter, NextGear began post-judgment discovery.

During post-judgment discovery, NextGear learned that Antonio purchased the Property, on April 8, 2016, for the stated sale price of $76,000.00. (*Exhibit M to Compl.,* April 8, 2016 Deed). Antonio paid this stated price exclusively from funds maintained in LHI's bank account. (*Exhibit C to Gaunce Dec.,* Golden Dome Check). Then, only 174 days later, on September 28, 2016, Antonio gave the Property to his brother, Paul, for the stated sum of $1.00. (*Exhibit N to Compl.,* September 28, 2016 Deed). The file for the attorney who prepared the deed in relation to the September 28, 2016 transfer of the Property from Antonio to Paul contains notes which demonstrate Antonio's intent behind the transfer to Paul. (*Exhibit D to Gaunce Dec.*, Powlette and Field, LLC file). At first, Antonio intended, as early as Mid-June of 2016, to complete a "[d]eed transfer to his mom" as to the Property. (*Id.* at LPowl2 Note). Then, the note from Defendants' attorney states the date of "9/14/16" next to an indication that Antonio is to "transfer [the Property] to brother [Paul] instead." (*Id.*). Five days after Antonio gave the Property to Paul, LHI's credit line with NextGear was locked. (*Compl.* at ¶¶ 11 – 13).

As of September 28, 2016 (**the date of the transfer to Paul**), the appraised value of the Property was $150,000.00. (*Exhibit E to Gaunce Dec.,* James Wilkins Retrospective Appraisal). The current market value of the Property is $193,000.00. (*Exhibit F to Gaunce Dec.*, James Wilkins 2019 Appraisal). On June 21, 2018, as part of the collection action in New Jersey, Antonio served information subpoena responses indicating that he and LHI had no assets. (*Exhibit Q to Compl.*, Information Subpoena Responses).

C.     **Discovery in this Action.**

On June 12, 2019, NextGear served a separate request for admissions upon Antonio and Paul. (*Exhibit G to Gaunce Dec.,* June 12, 2019 Request for Admissions). In its requests for admissions, NextGear demanded that Antonio and Paul admit all the pivotal allegations of its complaint, including the familial and business relationship between Antonio and Paul, Antonio's use of corporate funds to purchase the Property, Paul's failure to pay consideration for the Property, and the events of default outlined above. (*Id.*). Other than a single letter dated July 15, 2019 in which responses to NextGear's requests for admissions were promised "within two (2) weeks," NextGear has received no communications from Antonio and Paul about its requests for admissions. (*Exhibit H to Gaunce Dec.*, July 15, 2019 Letter). James Galligan, a local realtor, has agreed to act as a receiver for the Property. (*Exhibit I to Gaunce Dec.*, Galligan Letter).

## STATEMENT OF THE QUESTION INVOLVED

1.     Is NextGear entitled to summary judgment and the appointment of a receiver in relation to Antonio's September 28, 2016 transfer of the Property to Paul for the sum of $1.00?

**Suggested Answer:   YES.**

IV.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(a). Under this standard, the moving party, here NextGear, bears the initial burden of proving that no triable dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 *U.S.* 317, 323 (1986). A fact is considered "material" if that fact "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242,

248 (1986). Notably, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record…or showing that the materials cited do not establish the absence or presence of a genuine dispute." *Crestwood Membranes, Inc. v. Constant Servs.*, Case No.: 3:15-cv-537, 2017 *U.S. Dist LEXIS* 41638 at *1, *7 (M.D. Pa. Mar. 22, 2017).[6]

Here, NextGear can show that there is no genuine dispute of material fact and that it is entitled to judgment, as a matter of law, because the September 28, 2016 transfer of the Property that is the subject of this action clearly violated Pennsylvania's Uniform Voidable Transactions Act ("PUVTA"), 12 *Pa.C.S.* §§ 5101 – 5110.

## V. LEGAL ARGUMENT

### A. Summary Judgment is Appropriate Under the PUVTA.

In Pennsylvania, actions for voidable transactions are governed by the PUVTA. Section 5104 of the PUVTA provides:

> **(a) General rule. –** A transfer…is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made…if the debtor made the transfer…:
>
> > (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> > > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. [12 *Pa.C.S.* § 5104(a).]

---

[6] Consistent with Local Rule 7.8(a), a copy of the *Crestwood* decision and all other unreported decisions cited by NextGear are attached to this brief.

The PUVTA also instructs courts to give consideration to the following factors in determining whether "actual intent to hinder, delay or defraud any creditor" existed at the time a transaction occurred:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.  [12 Pa. C.S. § 5104(b).]

The Third Circuit has specifically stated that "[w]hile a single factor alone may be sufficient to establish fraudulent intent, 'the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.'" *United States v. Patras*, 544 *Fed. Appx.* 137, 144 (3rd Cir. 2013).  In undertaking this actual intent analysis, the Third Circuit has also stated that "[a] court must focus on whether any of the badges are present, 'not whether some factors are absent.'" *Id.*

Here, Antonio and Paul have already admitted that the transfer of the Property on September 28, 2016 from Antonio to Paul violated the PUVTA.  In failing to respond to NextGear's requests for admissions, Defendants have admitted that Paul was an "insider" as he is Antonio's brother and was the secretary and general manager for Antonio's dealership, LHI.  (*Ex. G to Gaunce Dec.*, June 12, 2019 Request for Admissions); *see Fed.R.Civ.P.* 36(a)(3)(stating that

"[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter"). Moreover, Defendants have admitted that Antonio was sued in relation to a multi-million dollar debt two weeks to the day after the Property was transferred to Paul. The transfer of the Property from Antonio to Paul, according to Antonio's information subpoena responses, appears to involve the only potentially available asset upon which NextGear can execute against Antonio. Antonio further attempted to conceal the Property because he transferred it out of his name right before NextGear filed suit. Finally, Paul paid one dollar to acquire a parcel of real estate valued at $150,000.00 on the date of that transfer. (*Ex. E to Gaunce Dec.,* Retroactive Appraisal). NextGear can point to several badges of fraud here.

If that were not enough, through the file maintained by counsel who prepared the September 28, 2016 deed to transfer the Property from Antonio to Paul, NextGear has received strong evidence of Antonio's true intent here. Based upon the file materials that were produced by the firm who prepared the relevant deed, Antonio contemplated, as early as mid-June of 2016, transferring the Property "to his mom." (*Exhibit D to Gaunce Dec.*, LPowl2 Note). Then, on or around "9/14/16," he decided to "transfer [the Property] to [his] brother [Paul] instead." (*Id.*). Given these notations, Antonio's intent was to take the Property out of his name and give it to one family member or another as LHI's operations began to collapse. Antonio's intent was purely fraudulent.

Moreover, should the Court not agree that NextGear can show actual intent to defraud, as a matter of law, NextGear can still demonstrate, as a matter of law, that the transfer of the Property from Antonio to Paul violated the PUVTA. As outlined above, a transfer will be voidable under the PUVTA if the transfer was made "without receiving a reasonably equivalent value" and "the

9

debtor: (i) was engaged or was about to engage in a…transaction for which the remaining assets of the debtor were unreasonably small." 12 *Pa.C.S.* § 5104(a)(2)(i). Here, Antonio, indisputably, did not receive "reasonably equivalent value" for his transfer of the Property to Paul because he, at most, received $1.00 for this transaction. Plus, based upon Antonio's own information subpoena responses, he did not have any other potential assets from which to satisfy the Judgment. In short, NextGear can void the transfer of the Property from Antonio to Paul under multiple theories.

### B. NextGear is entitled to the Appointment of a Receiver.

Besides the granting of summary judgment in its favor, NextGear is also entitled to the appointment of a receiver. Under the PUVTA, section 5107 addresses the remedies available to a creditor. 12 *Pa.C.S.* § 5107. This section provides:

> **(a) Available remedies. -** In an action for relief against a transfer…a creditor…may obtain:
>
> > **(1)** Avoidance of the transfer…to the extent necessary to satisfy the creditor's claim.
> >
> > \*\*\*
> >
> > **(3)** Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> >
> > > **(i)** an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> > >
> > > **(ii)** appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> > >
> > > **(iii)** any other relief the circumstances may require. [12 *Pa.C.S.* § 5107(a)(1), (3).]

The decision to appoint a receiver rests within the sound discretion of the trial court. *Mintzer v. Arthur L. Wright & Co.*, 263 *F.2d* 823, 824 (3rd Cir. 1959). Nevertheless, if there is a contract which exists that evidences a debtor's consent to the appointment of a receiver, this Court

has already indicated that the "'terms of [such an] agreement are binding[.]'" *MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.*, Case No. 4:16-cv-2090, 2017 *U.S. Dist. LEXIS* 16457 at *1, *11 (M.D. Pa. Feb. 6, 2017).  As this Court has further indicated, "[t]he importance of [such] contractual provisions cannot be underestimated because they set apart [such]…[a] case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *Id.* at *11, *12.  Thus, "the equity powers of [this] [C]ourt…[do not]…include…the power to nullify or impair a legal contract…entered into between competent parties." *Id.* at *12.

In this case, there is a contractual provision in LHI's promissory note where consent is given to appoint a receiver over LHI's business assets.  The pertinent provision specifically provides that NextGear may "[i]nitiate proceedings to appoint a receiver in any court of competent jurisdiction" and that "[LHI]…consents to such appointment."  (*Ex. A to Compl.*, LHI's Promissory Note at ¶ 7(b)).  In his guaranty, Antonio agreed that the remedies available to NextGear under LHI's note would be available if there was a default under his guaranty. (*Ex. B to Compl.*, Antonio's Guaranty at ¶ 4)(stating that "in addition to pursuing any remedies which may be available…with respect to the Liabilities [defined as debt owed to NextGear by LHI], [NextGear]...may take whatever action at law or equity [NextGear] may deem necessary[.]").  Thus, both LHI and Antonio have already consented to the appointment of a receiver.  Moreover, having admitted to the facts outlined in NextGear's requests for admissions, Defendants have conceded that Antonio utilized only LHI's business funds to acquire the Property.  Therefore, NextGear should be entitled to the appointment of a receiver, as a matter of right, as it is only seeking a receivership over assets which were purchased with funds provided by LHI.

Even if the Court declined to follow the language in the pertinent loan documents, the appointment of a receiver would still be justified. In deciding whether to appoint a receiver based solely upon equitable principles (used in the absence of a contractual provision), this Court should consider:

> (1) the probability of the plaintiff's success in the action;
> (2) the possibility of irreparable injury to the plaintiff's interests in the property;
> (3) the inadequacy of the security to satisfy the debt;
> (4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;
> (5) the financial position of the debtor;
> (6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
> (7) the inadequacy of available legal remedies;
> (8) the lack of a less drastic equitable remedy; and
> (9) the likelihood that appointing a receiver will do more harm than good. [*See Comercia Bank v. State Petroleum Distribs.*, Case No. 3:08-cv-678, 2008 *U.S. Dist. LEXIS* 124038 at *1, *13 [M.D. Pa. June 2, 2008.]

"There is no precise formula for determining whether a receiver should be appointed" under general equitable principles. *Liberman v. Corporation Experience Unica, S.A.*, 226 *F. Supp. 3d* 451, 473 (E.D. Pa. 2016).

Here, a multitude of the above factors warrant the appointment of a receiver. First, NextGear have already succeeded in this case. Defendants, by failing to respond to NextGear's requests for admissions, have conceded that the transfer of the Property from Antonio to Paul violated the PUVTA. (*Ex. F to Gaunce Dec.*, June 12, 2019 Request for Admissions); *see Fed.R.Civ.P.* 36(a)(3). The Property is inadequate security. At the commencement of this case, the Property had an appraised value of $168,000.00. (*Exhibit P to Compl.*, Appraisal). By contrast, the Judgment is for $4,500,000.00. In addition, as outlined above, there has been clear fraudulent conduct here. As to the fifth factor, Antonio has indicated that he has no other assets from which the Judgment can be satisfied. NextGear has also already obtained a legal remedy here (**the**

**Judgment**), which has not been satisfied. A less severe equitable remedy will also be inadequate to protect NextGear. Without the appointment of a receiver, NextGear will remain in the position of simply having a *lis pendens* filed in the county recorder's office without having any teeth to a potential remedy. Finally, the appointment of a receiver will do a lot of good in this case as it will allow NextGear to obtain at least a partial satisfaction of the Judgment. Therefore, under traditional equitable factors, the appointment of a receiver is justified.

### C. This Court Should Issue an Injunction.

In addition to the appointment of a receiver, NextGear is also entitled to an injunction barring a further transfer, encumbrance, or other disposition of the Property. As outlined above, the PUVTA provides that a creditor "may obtain…subject to applicable principles of equity…an injunction against further disposition by the debtor or a transferee, or both of the asset transferred[.]" 12 *Pa.C.S.* § 5107(a)(3)(i). The Third Circuit has specifically held that a plaintiff seeking the issuance of a permanent injunction bears the burden of demonstrating:

> (1) the moving party has shown actual success on the merits;
> (2) the moving party will be irreparably injured by the denial of injunctive relief;
> (3) the granting of the permanent injunction will [not] result in even greater harm to the defendant; and
> (4) the injunction would be in the public interest. [*Shields v. Zuccarini*, 254 *F.3d* 476, 482 (3rd Cir. 2001).]

In the context of where a commercial contract has been breached, such as the loan agreements here, a trial court, in evaluating irreparable harm, will consider "the difficulty of procuring a suitable substitute performance by means of money awarded as damages" and "the likelihood that an award of damages could not be collected." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 *F.2d* 797, 801 (3rd Cir. 1989).

In this case, NextGear can show that it is entitled to the issuance of an injunction. As stated above, NextGear has already succeeded on the merits because Antonio and Paul have admitted the

13

operative facts related to NextGear's claims.  NextGear will suffer irreparable harm if an injunction is not issued because the Property appears to be the only asset by which NextGear can potentially satisfy the Judgment, at least in part.  (*Exhibit Q to Compl.*, Information Subpoena Responses).  If the Property were transferred again or voluntarily encumbered by Antonio or Paul, then NextGear might miss out on the opportunity for any recovery here.  Antonio and Paul will not be harmed by the issuance of an injunction.  Both Antonio and Paul live and reside in New Jersey.  (*Compl.* at ¶¶ 2, 3).  Thus, an injunction as to the Property will simply deprive Antonio and Paul of the use of a vacation property that was fraudulently transferred.  (*Exhibit N to Compl.,* September 28, 2016 Deed).  Lastly, an injunction would be in the public interest.  The Pennsylvania legislature has already decided, as a matter of policy, that transactions like the one involving Antonio and Paul here should be voidable.  *See* 12 *Pa.C.S.* § 5104(a)(outlining voidable transactions as ones completed for the purpose of evading creditors).  Therefore, this Court issuing an injunction will only be reinforcing the public policy of Pennsylvania.

### D. NextGear's Right to a Monetary Judgment against Paul.

Besides all the above remedies, NextGear is further entitled to the entry of a monetary judgment against Paul.  Section 5108 of the PUVTA specifically provides that "[t]o the extent a transfer is avoidable…the creditor may recover judgment for the value of the asset transferred…against: **(i)** the first transferee of the asset." 12 *Pa.C.S.* § 5108(b)(1)(i).  The PUVTA further specifically provides that: "[i]f the judgment…is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer." 12 *Pa.C.S.* § 5108(c).  The primary method for a transferee to avoid the entry of a monetary judgment is for that transferee to show that he "took [the subject property] in good faith and for a reasonably equivalent value," i.e., he qualifies as a good-faith transferee.  12 *Pa.C.S.* §

5108(a); 12 *Pa.C.S.* § 5108(b)(1)(A)(identifying as being immune from judgment "a good faith transferee that took for value").

In this case, NextGear is indisputably entitled to the entry of a monetary judgment against Paul. On September 28, 2016, the Property's appraised value was $150,000.00. (*Ex. E to Gaunce Dec.*, James Wilkins Retrospective Appraisal). Paul admits that he paid just one dollar for the Property. Moreover, Paul did not take the Property in good faith because he had already received $2,000,000.00 in other fraudulently-transferred funds from Antonio that should have been remitted to NextGear (**also the subject matter of the Judgment**) around the same time the Property was transferred to him. (*Exhibit F to Compl.*, Dep. Tr. of Paul Gutierrez at 71:2 – 24)(stating that Antonio gave him $2,000,000.00 to "hold"). NextGear is entitled to the entry of a monetary judgment against Paul.

## CONCLUSION

For the foregoing reasons, NextGear respectfully requests that the Court grant its motion, in full. NextGear is entitled to all the available remedies under the PUVTA.

        **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
        *Attorneys for Plaintiff, NextGear Capital, Inc.*

    By: /s/ Nicholas M. Gaunce
        Nicholas M. Gaunce
        PA Bar Id. No.: 206228
        2000 Lenox Drive
        Suite 203
        Lawrenceville, NJ 08648
        Tel: (609) 989-5058
        Fax: (609) 392-7956
        E-mail: ngaunce@eckertseamans.com

Dated: September 19, 2019