Lexis Advance®
Research

Document: MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Sho…

# MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P., 2017 U.S. Dist. LEXIS 16457

**Copy Citation**

United States District Court for the Middle District of Pennsylvania

February 6, 2017, Decided; February 6, 2017, Filed

Case No. 4:16-CV-2090

**Reporter**

2017 U.S. Dist. LEXIS 16457 * | 2017 WL 485958

MSCI 2006-IQ11 LOGAN BOULEVARD LIMITED PARTNERSHIP a Delaware limited partnership, Plaintiff, v. GREATER LEWISTOWN SHOPPING PLAZA, L.P., a Pennsylvania limited partnership, Defendant.

**Prior History:** MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P., 2017 U.S. Dist. LEXIS 14407 (M.D. Pa., Feb. 2, 2017)

## Core Terms

Receiver, Borrower, Rents, Mortgage, appointment, Leases, appointment of a receiver, mortgaged property, Mortgagor, terminate, receivership, Mortgagee, manage, Documents, license, foreclosure, notice, property manager, parties, obligations, duties, Advances, default, deems, collection of rents, event of default, pertaining, contracts, assigned, deposits

**Counsel:** [*1] For MSCI 2006-IQ11 Logan Boulevard Limited Partnership, a Delaware limited Partnership, Plaintiff: Raymond A. Quaglia ▼, LEAD ATTORNEY, Ballard Spahr LLP, Philadelphia, PA.

For Greater Lewistown Shopping Plaza, L.P., a Pennsylvania limited partnership, Defendant: Jason M. Yarbrough ▼, Robert E Dauer ▼, Meyer, Unkovic & Scott LLP ▼, Pittsburgh, PA.

**Judges:** Matthew W. Brann ▼, United States District Judge.

**Opinion by:** Matthew W. Brann

# Opinion

### MEMORANDUM OPINION

#### I. BACKGROUND

On October 17, 2016, Plaintiff, MSCI 2006-IQ11 Logan Boulevard Limited Partnership, a Delaware limited partnership, hereinafter "MSCI" or "lender" filed commercial mortgage foreclosure action against Defendant, Greater Lewistown Shopping Plaza, L.P., a Pennsylvania limited partnership, hereinafter "Lewistown Shopping Plaza" or "borrower." Plaintiff subsequently filed a Motion to Appoint a Receiver [1] on November 16, 2016 requesting the appointment of a receiver to operate and manage the mortgaged property of borrower as it has been in default on the $10,500,000 mortgage since March 2016.

On November 18, 2016, the Court granted the motion in part and denied it in part for two reasons. First, and most importantly, because the motion was, at that juncture, filed **[*2]** *ex parte*. The Court preferred that the Defendant be provided the opportunity to be heard, as receivership is an extreme pre-trial remedy. Second, Plaintiff's first motion only cited to clauses in the mortgage that permitted collection of rent and income; it did not cite to portions of the mortgage that also provided for a receiver to operate and manage the mortgaged property.

My consideration of the renewed receivership motion today is in a different vein. As of the date of this Order, Defendant has had an opportunity to respond and brief its opposition to the motion. Moreover, Plaintiff has further cited to portions of the mortgage that would also allow not only for the collection of rents, but also for the operation and management of the subject property by the receiver.

"No hearing is necessary where the facts support the appointment of a receiver," [2] and I find here that they do. Accordingly, and for the reasons that follow, the motion will be granted in full.

#### II. DISCUSSION

Lewistown Shopping Plaza does not dispute that it defaulted on the balance of its mortgage at maturity. Instead, it merely argues that "Defendant made diligent efforts to refinance the balance due and owing under **[*3]** the Loan Documents upon maturity, because of changes in the lending market, Defendant was unable to close on new financing prior to maturity." [3]

Rule 66 of the Federal Rules of Civil Procedure provides the authority for federal courts to appoint receivers. Both parties agree that the proper analysis is that employed by the late Honorable Joseph E. Irenas, writing for the District of New Jersey, as follows:

> In diversity suits, federal law governs the issue of whether a receiver should be appointed. *Maxwell v. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 402 (3d Cir.1942) ("What form of equitable relief a plaintiff is to be given by a federal court for infringement of his rights, we have held to be a matter to be determined by federal law, not state decisions.").
>
> Wells Fargo seeks an order appointing a receiver who will collect all rents and income, as well as operate and manage the property.
>
> When considering whether to appoint a receiver in the context of a mortgage foreclosure, the following factors guide the Court in its exercise of discretion: "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial **[*4]** status of the mortgagor; [and] the misuse of project funds by the mortgagor." *United States v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J.1991); *see generally Canada Life Assurance Co. v. Alfred R. LaPeter*, 563 F.3d 837, 845 (9th Cir.2009) ("the district court has broad discretion in appointing a receiver, ... it may consider a host of relevant factors, ... no one factor is dispositive.").
>
> When the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure, federal courts are particularly cautious in appointing a receiver, and therefore consider whether the evidence demonstrates "'something more'" than just "'the doubtful financial standing'" of the defendant and the "'inadequacy of the security.'" *Canada Life Assurance Co.*, 563 F.3d at 845 (internal citation omitted); *The Chase Manhattan Bank, N.A. v. Turabo Shopping Center, Inc.*, 683 F.2d 25, 26 (1st Cir.1982) (internal citation omitted).

The additional factors warranting appointment of a receiver to manage the property may include: "the danger of waste[;] delays in foreclosure," *Canada Life Assurance Co.*, 563 F.3d at 845 (internal citation and quotation omitted); the defendant's "fraudulent conduct"; "imminent danger that property [will] be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties **[*5]** opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *Turabo Shopping Center, Inc.*, 683 F.2d at 26-27 (internal citation and quotation omitted); *accord Consolidated Rail Corp. v. Fore River Railway Co.*, 861 F.2d 322, 326 (1st Cir.1988).

In considering the relevant factors, the Court concludes that Wells Fargo is entitled to the relief it seeks.

First, Article 11.02(d) of the Loan Agreement specifically provides that after an "Event of Default", Wells Fargo may apply for the appointment of a receiver to manage and operate the property, and that CCC Atlantic "consents, to the extent permitted by applicable law, to the appointment of a receiver." (Compl. Ex. A).

Additionally, the Assignment of Lease and Rents, executed along with the Loan Agreement (Compl. Ex. E, Assignment of Leases and Rents), gives Wells Fargo the right to all rents upon an Event of Default. In the Assignment of Leases and Rents, CCC Atlantic "irrevocably, absolutely and unconditionally" assigned to Capmark (Wells Fargo's predecessor in interest) "all of [its] right, title and interest in and to" all leases and rents from the property, which right the lender then "licensed" back to CCC Atlantic so long as no Event of Default occurred. (*Id.*, Assignment of Leases and **[*6]** Rents, §§ 1.02, 1.04) But that license was expressly "revocable." (*Id.* § 1.02) The Assignment provides that upon an Event of Default, the license "terminate[s] automatically, and Lender shall be entitled to receive and collect the Rents as they become due and payable and exercise all of [CCC Atlantic's] rights ... under the Leases with respect to the Rents." (Id. § 1.04)

The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist. Thus, this case is qualitatively different from cases relied upon by CCC Atlantic which are stockholder suits seeking appointment of a receiver to manage a corporation. *See, e.g., Roach v. Margulies*, 42 N.J.Super. 243, 126 A.2d 45 (App.Div.1956).

This Court agrees that traditionally at equity appointment of a receiver to manage a corporation is a "drastic action [which should be] avoided where possible ... if the necessary relief can be accomplished by some less onerous expedient." *Roach*, 42 N.J.Super. at 245, 126 A.2d 45 (quoted at p. 13 of CCC Atlantic's opposition brief). But that general statement of the law simply does not apply to a case like this where the parties have agreed ex ante that, in the event of a default, **[*7]** the lender has the right to all rent payments and to the appointment of a receiver. Under such circumstances, appointment of a receiver is not such a drastic remedy. 4

In the case at bar, the first, and primary, consideration is the text of the mortgage contract itself. It is well settled that "when the language of a contract is unambiguous, we must interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent." 5 The mortgage, which was purchased by Plaintiff, clearly permits receivership. It states, in relevant part:

2. Leases and Rents (a) [] Mortgagor hereby grants and assigns to Mortgagee the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation f such license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

\*\*\*\*

10. Remedies.

(a) Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against **[*8]** Mortgagor and in and to the Mortgaged Property, by Mortgagee itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without imparting or otherwise affecting the other rights and remedies of Mortgagee:

   i. declare the entire Debt to be immediately due and payable;

   ii. institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Mortgage, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

   iii. with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, instate proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

   iv. sell for cash or upon credit the Mortgaged Property and all estate, claim, demand, right title and interest of the Mortgagor therein and rights of **[*9]** redemption thereof,

pursuant to the power of sale, to the extent permitted by law, or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required by law;

v. institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein or in any other Loan Document;

vi. recover judgment on the Note either before, during or after any proceeding for the enforcement of this Mortgage;

vii. apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor or of any Person liable for the payment of the Debt;

viii. enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and employees therefrom, and Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Mortgaged Property and conduct the **[*10]** business threat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and € apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorney's fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, and its counsel, agents and employees;

ix. require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Mortgaged Property occupied by mortgagor, **[*11]** and require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver, and, in default thereof, evict Mortgagor by summary proceedings or otherwise; or

x. pursue such other rights and remedies as may be available at law or in equity or under the UCC< including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivable or rights to payments of Mortgagor relating to the Mortgaged Property. [6]

It is evident from the cited text that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property, in accordance with the proposed Order submitted by MSCI. The "terms of a mortgage agreement are binding on the parties." [7] "Great as are the equity powers of the court, it is yet to be suggested that included in these powers is the power to nullify or impair a legal contract solemnly and intelligently entered into between competent parties." [8] "The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and **[*12]** no such contractual provisions exist." [9]

Another factor that favors appointment of a receiver here is Plaintiff's likelihood of success on the merits. MSCI is likely to succeed in the underlying foreclosure action, as Defendant did not dispute that it is in default, as noted previously.

Finally, "the financial position of the debtor" [10] is a relevant factor and has been implicitly admitted by Defendant in its brief. It wrote: "Defendant made diligent efforts to refinance the balance due and owing under the Loan Documents upon maturity, because of changes in the lending market, Defendant was unable to close on new financing prior to maturity." [11] Defendant has acknowledged that it is currently unable to pay the balance that matured approximately ten months ago.

Although Lewistown Shopping Plaza opposes the appointment, its arguments are unpersuasive. In other cases, courts have declined to appoint a receiver where receivership was not contemplated in the Loan Agreement itself; [12] where assets other than the mortgaged property were available for the lender to seize; [13] where genuine issues of material fact exist regarding the alleged default; [14] and where the borrower had been making some payments under **[*13]** the loan. [15] None of these arguments have been advanced here.

The Court holds that both the mortgage itself, and equity, support the grant of Plaintiff's motion for the appointment of a receiver.

**III. Conclusion**

"Because a receiver "unquestionably interfere[s]" with an individual's right to otherwise control his or her property, a district court should appoint a receiver only "in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff." **16** As discussed above, I find that appointment of a receiver in this matter is appropriate. In sum, the Defendant previously agreed by contract to the appointment of a receiver, the Defendant has admitted default on the mortgage, and the Defendant has admitted it has been unable to obtain financing to attempt to cure its default. Plaintiff's Renewed Motion to Appoint a Receiver will be granted. ECF No. 11.

A separate Order appointing the receiver will issue.

BY THE COURT:

/s/ Matthew W. Brann

Matthew W. Brann

United States District Judge

### ORDER FOR APPOINTMENT OF [*14] RECEIVER

AND NOW, this 6th day of February, 2017, upon consideration of the renewed motion for appointment of receiver of plaintiff, MSCI IQ11 Logan Boulevard Limited Partnership, a Delaware limited partnership ("Plaintiff"), the Revised Affidavit of Aaron P. Guillotte and Plaintiff's supporting memorandum, it is ORDERED that Plaintiff's motion be and hereby is GRANTED as follows:

### 1. APPOINTMENT OF THE RECEIVER

(a) Metro Commercial is hereby appointed for the benefit and protection of the rights and interests of Plaintiff as the receiver (the "Receiver") for all real and personal, tangible and intangible property (including, without limitation, all structures, leases, fixtures and moveable personal property) owned by Borrower and located at 306 South Logan Boulevard, Lewistown, Pennsylvania 17044, including but not limited to all of the "Mortgaged Property" as defined in the Open-End Mortgage, Assignment of Leases and Rents and Security Agreement effective as of March 28, 2006 (the "Mortgage"), from Borrower to IXIS Real Estate Capital Inc., duly recorded and ultimately assigned to Plaintiff (the "Property").

(b) Appointment of the Receiver is expressly authorized by Sections 2(a) and 10(a)(vii) of the Mortgage **[*15]** and is otherwise warranted by the exigencies of the circumstances.

(c) The Receiver's qualifications and fee schedule for this engagement are attached hereto as Exhibit A, All payments to the Receiver shall be added to the total indebtedness owed by Borrower to Plaintiff.

(d) The Receiver shall serve without bond. 2.

### 2. TERM OF THE RECEIVER

(a) The Receiver shall serve as the receiver for the Property for a period which shall commence on the date of this Order and shall continue, notwithstanding the entry of judgment in favor of Plaintiff (whether by consent or otherwise), subject to the terms of Section 2(b) below, until the earliest to occur of: (i) the termination of such appointment by a subsequent Order of Court or by the delivery by Plaintiff of a Termination Notice as hereinafter defined and provided; (ii) the sale of the Property to a third party; (iii) Plaintiff's (or its nominee's, designee's or assignee's) acquisition of fee simple title to the Property through the delivery to Plaintiff (or its nominee, designee or assignee) of a sheriff's deed to the Property or by deed in lieu of foreclosure; or (iv) full payment of all of sums due and owing under the Loan Documents (as defined in the **[*16]** Mortgage).

(b) Notwithstanding the terms of Section 2(a) above, at Plaintiff's request following the occurrence of the events described in clauses (ii) or (iii) of Section 2(a) above, the Receiver shall continue the receivership for such reasonable period of time as may be necessary to wind up the receivership and transfer possession and control of the Property to the new owner thereof. In connection therewith, the Receiver shall deliver to Plaintiff and/or the new owner of the Property all documents pertaining to the Property in the Receiver's possession, including without limitation all books and records (including invoices), permits, plans, leases, licenses and contracts, and perform such other duties as may be reasonably necessary to cause an orderly transition of possession, control, and management of the Property to the new ownership. Within 30 days after the termination of the receivership, the Receiver shall render a full accounting to Plaintiff and shall promptly provide a copy of such accounting to Borrower. In such event, the receivership established hereby shall automatically terminate upon written notice from the Receiver to the Plaintiff and this Court indicating that the Receiver has completed **[*17]** its duties under this Section 2(b).

(c) The receivership authorized and created hereby may be terminated at any time by Plaintiff by filing with the Court and serving upon the Receiver and Borrower a Notice to Terminate Appointment of the Receiver (a "Termination Notice").

### 3. POWERS AND DUTIES OF THE RECEIVER

The Receiver shall have all necessary powers to operate and manage the Property, all in accordance with the terms hereof, including, without limitation, the following powers:

(a) To enter upon and take immediate possession of the Property and the rents, income, revenues, proceeds and profits derived therefrom (collectively, the "Rents") and all personally owned by Borrower that relates in any manner to the management or operation of the Property, including without limitation all books, records, bank accounts, reserve accounts, cash on hand, keys, and combinations for locks or other access information in the possession of or reasonably available to the Borrower or its property manager, to open all mail and other correspondence received in connection with the Property whether addressed to Borrower or its property manager or otherwise, and to access and use all office equipment used by Borrower **[*18]** or its property manager at the Property, including all computer equipment, software programs and passwords;

(b) To take all actions necessary to preserve, maintain, operate and manage the Property;

(c) To employ such counsel and, with the consent of Plaintiff, such accountants or other professionals, contractors and support personnel and other persons as may be necessary in order to carry out its duties as the Receiver and to preserve, maintain and operate the Property, and to compensate such persons at competitive rates, without further Order of this Court, at their respective hourly rates, plus reimbursement of all reasonable and necessary out-of-pocket expenses;

(d) To commence, prosecute or defend such actions at law or in equity (in its own name or in the name of Borrower) that the Receiver deems necessary to fulfill its duties hereunder or to protect or preserve the Property;

(e) To continue in effect, modify or terminate (if and to the extent terminable without penalty or premium unless such termination penalty or premium shall be paid by the Receiver) any or all agreements, contracts, understandings or commitments entered into by Borrower with respect to the Property, to the extent **[*19]** permitted by applicable law, and to make such additional agreements and contracts as may be reasonably necessary for the operation and preservation of the Property;

(f) To operate, manage, market and lease the Property, or to retain a reputable and experienced management company, broker and/or leasing agent to operate, manage, market and lease the Property, without further order of this Court, but with the consent of Plaintiff, at competitive rates plus reimbursement of its reasonable and necessary out-of-pocket expenses;

(g) To pay all insurance premiums and taxes and assessments levied against the Property during the receivership, and to purchase merchandise, construction and other materials, supplies and services as the Receiver deems necessary and advisable to assist the Receiver in performing its duties hereunder and to pay therefor the ordinary and usual rates and prices;

(h) To open and utilize any new bank accounts as the Receiver deems necessary or desirable in connection with its obligations hereunder, and in connection therewith, the Receiver is authorized and empowered to use the Borrower's tax identification numbers;

(i) To make, enter into, enforce, terminate, modify or accept **[*20]** a surrender of any of the Leases (as defined in the Mortgage); to obtain and evict occupants (subject to applicable laws and regulations); to bring or defend any suits in connection with the Leases or Rents in its own name or in the name of Borrower; to compromise any Rents or other payments, income or proceeds that may become due; and to sue for or otherwise collect and receive all Rents, including those past due and unpaid;

(j) To present for payment any checks, money orders or other forms of payment made payable to Borrower or its property manager which constitute Rents, endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein;

(k) With the consent of Plaintiff, to make any alterations, renovations, repairs, improvements or replacements to the Property that the Receiver deems necessary or desirable for the successful operation of the Property;

(l) To keep the Property insured (whether by the existing insurance coverages or new coverages), each of which insurance policy shall name the Receiver and Plaintiff as additional insureds thereunder and shall comply, at a minimum, with the terms of the Mortgage and the other Loan Documents **[*21]** (as defined in the Mortgage);

(m) In connection with discharging the Receiver's obligations hereunder, to use for any such purpose any funds of Borrower, the Rents, Additional Advances as hereinafter defined and provided and the Escrows as hereinafter defined and provided;

(n) To obtain copies of any and all plans, specifications and drawings pertaining or relating to any part or all of the Property and to obtain such plans, specifications and drawings from Borrower, from architects and contractors retained or formerly retained by Borrower, or from the city, municipality, county or state in which such Property is

situated and/or any agency, commission, board or department thereof if the Receiver deems it necessary or advisable in its discretion to do so;

(o) At Plaintiff's request, to distribute to Plaintiff (on a schedule determined by Plaintiff but no less frequently than once per calendar month) all or any portion (as determined by Plaintiff) of the Rents and any cash remaining after the Receiver's payment of the costs and expenses incurred in connection with the operation, protection, preservation, management, marketing for sale, repair, improvement, replacement and maintenance of **[\*22]** the Property and performance of Receiver's obligations under this Order; 1

(p) To apply, obtain and pay any reasonable fees for any lawful license, permit or other governmental approval relating to the Property or the operation thereof; to confirm the existence of and, to the extent permitted by law, exercise the privileges of any existing license, permit or approval relating to the Property or the operation thereof; and to do all things necessary to protect and maintain such licenses, permits and approvals;

(q) To notify all local, state and federal governmental agencies, all vendors and suppliers, and any and all others who provide goods or services to the Property of its appointment as the Receiver. No utility may terminate service to the Property as a result of non-payment of pre-receivership obligations without prior order of this Court. No insurance company may cancel its existing current-paid policy as a result of the appointment of the Receiver, without prior order of this Court.

(r) To take any and all steps necessary to receive, collect and review all mail or other parcels addressed to Borrower or its property manager, including, but not limited to, mail or other parcels addressed **[\*23]** to any post office boxes held in the name of Borrower or its property manager, and the Receiver is authorized to instruct the U.S. Postmaster and any other mail or parcel carrier or service to re-route, hold, and/or release said mail or other parcels to the Receiver. Mail and other parcels addressed to Borrower and reviewed by the Receiver in the performance of its duties will be forwarded to Borrower by the Receiver after its review;

(s) With the consent of Plaintiff, to delegate or assign any and all rights and powers of the Receiver set forth herein, in the reasonable discretion of the Receiver;

(t) To apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties; and

(u) To keep a true and accurate account of any and all receipts and expenditures and, within 60 days of appointment, to file with the Court a report setting forth the Property, the interests in and claims against it, its income-producing capacity and recommendations as to the best method of realizing its value for the benefit of those entitled.

Neither the Receiver nor any person or entity employed by the Receiver (collectively, the "Receiver Parties") **[\*24]** shall be liable to Borrower or to any third party for any act or omission which he, she, it or they have undertaken in good faith; provided, however, nothing contained herein shall release or limit the liability of the Receiver Parties arising from the gross negligence or willful misconduct of the Receiver Parties.

### 4. TURNOVER BY BORROWER

Borrower and its officers, directors, general partners, agents, property managers, architects, contractors, subcontractors and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, shall, upon request and to the extent in their respective possession or control:

(a) Turn over to the Receiver the possession of the Property, including all service contracts, all keys to all locks on the Property, and the records, books of account, ledgers and all business records for the Property (including, without limitation, construction contracts and subcontracts, the plans, specifications and drawings relating to or pertaining to any part or all of the Property), wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating **[\*25]** thereto as well as all banking records, statements and canceled checks);

(b) Turn over to the Receiver all documents which constitute or pertain to all licenses, permits or governmental approvals relating to the Property;

(c) Turn over to the Receiver all documents which constitute or pertain to insurance policies (whether currently in effect or lapsed) relating to the Property and immediately name the Receiver as an additional insured on all effective insurance policies;

(d) Turn over to the Receiver all contracts, leases and subleases, royalty agreements, licenses, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to any interest in the Property, and all documents pertaining to past, present or future construction of any type with respect to all or any part of the Property;

(e) Turn over to the Receiver all documents of any kind pertaining to the environmental condition of (including without limitation any and all toxic chemicals or hazardous material, if any, ever brought, used and/or remaining upon) the Property, including, without limitation, all reports, audits, assessments, surveys, inspections, checklists, proposals, orders, **[\*26]** citations, fines, warnings and notices;

(f) Turn over to the Receiver, or, at the election of the Receiver, pay into an account designated by Receiver and in which Plaintiff shall have a security interest (the "Rent Account"), all Rents received by Borrower or its property manager, if any (including, without limitation, all security deposits, advances, prepaid rents, storage fees, and parking fees) wherever and in whatsoever mode maintained, and cooperate with the Receiver to cause all future Rents to be deposited directly by the payors thereof into the Rent Account. Any Rents received by Borrower or its property manager after the date of this Order shall be immediately turned over to the Receiver, and the Receiver shall have the right to notify tenants and other persons now or hereafter in possession of all or any portion of the Property to pay all Rents directly to the Receiver. Any security or other deposits which occupants have paid to Borrower or its agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be and remain obligations of the Borrower. Notwithstanding the foregoing, the Receiver shall exercise commercially reasonable discretion **[*27]** in determining whether to refund a security deposit to an occupant; and the Receiver shall pay any such funds from security deposits turned over from Borrower first, and then from cash flow generated from rents, issues, profits, and income from the Property. Any other security or other deposits which the tenants or other third parties have paid or may pay to the Receiver, if otherwise refundable under the terms of their leases or agreements with the Receiver, shall be expenses of the Property and refunded by the Receiver in accordance with the leases or agreements; and

(g) Cooperate and use their best efforts to ensure a smooth transition of the management and operation of the Property to the Receiver.

**5. NON-INTERFERENCE BY BORROWER**

Borrower and its officers, directors, general partners, agents, property managers, architects, contractors, subcontractors and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, are enjoined from:

(a) Interfering with the Receiver, directly or indirectly, in the management and operation of the Property or in the collection of Rents;

(b) Extending, dispersing, transferring, assigning, selling, **[*28]** conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Property (including the Rents thereof) without the prior written consent of the Receiver;

(c) Doing any act which will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents thereof) or the interest of Plaintiff in the Property or the Rents;

(d) Undertaking any efforts to cancel, terminate or modify the coverage provided by any existing insurance policies relating to the Property before their respective expiration dates; or

(e) Transferring, selling, assigning, revoking, returning, terminating or canceling, or taking or failing to take any action that would compromise, without the consent of the Receiver, any permit, approval, license, privilege, or right necessary for the operation of business at or use and occupancy of the Property.

**6. ADDITIONAL ADVANCES BY PLAINTIFF**

In accordance with the Loan Documents and applicable law, Plaintiff is authorized, but not directed, to make advances under the Mortgage to protect the Property and Plaintiff's interest therein (collectively, "Additional Advances"). Notwithstanding **[*29]** the foregoing, nothing herein shall obligate Plaintiff to make Additional Advances. Additional Advances, if any, shall: (a) be deemed part of the Obligations; and (b) be secured by the Property in accordance with the terms of the Mortgage and the other Loan Documents, with the same priority as the existing Obligations. As an alternative to making Additional Advances, Plaintiff is hereby authorized, but not obligated, to release to the Receiver funds deposited with Lender by or on behalf of Borrower for escrows or reserves or otherwise (collectively, "Escrows"), for purposes of protecting the Property and Plaintiff's interest therein. In no event shall the Escrows be deemed a part of the Property or the receivership estate.

**7. BANKRUPTCY OF BORROWER**

If Borrower files a bankruptcy case during the receivership, upon Plaintiff's knowledge thereof, Plaintiff shall give notice of the bankruptcy case to the Court and to the Receiver. If the Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Property (or any part thereof) that is the subject of this Order, the Receiver shall have the following duties:

(a) The Receiver shall immediately **[*30]** contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for: (i) relief from the automatic stay; and (ii) relief from the Receiver's obligation to turn over the Property (11 U.S.C. § 543). If Plaintiff disclaims in writing any intention to make such a motion or fails

to file such motion within ten court days following its receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Property (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

(b) If Plaintiff intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Property, the Receiver may remain in possession and preserve the Property pending the ruling on those motions unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) The Receiver's authority to preserve the Property shall be limited as follows: (i) the Receiver may continue to collect Rents and other income; (ii) the Receiver may make only those disbursements necessary to preserve and protect the Property; (iii) the Receiver shall **[*31]** not execute any new leases or other long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) the Receiver shall do nothing that would effect a material change in the circumstances of the Property.

(c) The Receiver may petition the Court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

## 8. DISCLAIMER OF AGENCY

The Receiver is acting as an officer of the Court and not as an agent of any party to this matter, and nothing contained herein shall be deemed to have conferred upon Plaintiff the status of mortgagee-in-possession.

BY THE COURT:

/s/ Matthew W. Brann

MATTHEW W. BRANN, U.S.D.J.

**Footnotes**

[1] ECF No. 5.

[2] United States v. Berk & Berk, 767 F. Supp. 593, 597 (D.N.J. 1991).

[3] ECF No. 14 at 4.

[4] Wells Fargo Bank, N.A. v. CCC Atl., LLC, 905 F. Supp. 2d 604, 610-16 (D.N.J. 2012).

[5] Seven Springs Farm, Inc. v. Croker, 2000 PA Super 72, 748 A.2d 740, 744 (Pa. Super. Ct. 2000), aff'd, 569 Pa. 202, 801 A.2d 1212 (2002) (internal citations omitted).

[6] ECF No. 11-5 at 6-9.



[7] *Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 437 Pa. Super. 544, 650 A.2d 887, 891 (Pa. Super. Ct. 1994).

[8] *Id.*

[9] *Wells Fargo Bank, N.A.*, 905 F. Supp. 2d at 615.

[10] *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 825 (W.D. Pa. 2013).

[11] ECF No. 14 at 4.

[12] *U.S. Bank Nat. Ass'n v. Lighthouse Whitehall Commons, LLC*, No. 11-CV-05054, 2012 U.S. Dist. LEXIS 140805, 2012 WL 4473232, at *13 (E.D. Pa. Sept. 28, 2012) (discussing a prior opinion denying appointment of a receiver).

[13] *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 816 (W.D. Pa. 2013).

[14] *Wells Fargo Bank, N.A. v. Premier Hotels Grp.*, LLC, No. 3:14-CV-56, 2015 U.S. Dist. LEXIS 10483, 2015 WL 404549, at *9 (M.D. Pa. Jan. 29, 2015) (Mariani, J.).

[15] *Comerica Bank v. State Petroleum Distributors, Inc.*, No. 3:08-CV-678, 2008 U.S. Dist. LEXIS 124038, 2008 WL 2550553, at *5 (M.D. Pa. June 2, 2008) (Kosik, J.).

[16] *Manufacturers & Traders Trust Co.*, 999 F. Supp. 2d at 816.

---

[1] Such Rents may be applied in the same order, priority and proportions as Plaintiff is entitled to apply cash collateral upon an event of default under the Mortgage and/or the other Loan Documents.

**Content Type:** Cases

**Terms:** 2017 US Dist LEXIS 16457

**Narrow By:** -None-

**Date and Time:** Sep 19, 2019   01:34:02 p.m. EDT





About LexisNexis®  Privacy Policy  Terms & Conditions  Sign Out  Copyright © 2019 LexisNexis. All rights reserved.