Lexis Advance®
Research

Document: Comerica Bank v. State Petroleum Distribs.,, 2008 U.S. Dist. LEXIS …

## Comerica Bank v. State Petroleum Distribs.,, 2008 U.S. Dist. LEXIS 124038

**Copy Citation**

United States District Court for the Middle District of Pennsylvania

June 2, 2008, Decided; June 2, 2008, Filed

Case No. 3:08-CV-678

**Reporter**

**2008 U.S. Dist. LEXIS 124038 \***

COMERICA BANK, Plaintiff, v. STATE PETROLEUM DISTRIBUTORS, INC.; PETROLEUM SERVICES, LLC; BB&O MANAGEMENT, INC.; DAWSON U., LLC; ROBERT LAMBERT; and JOSEPH OCCHIPINTI, Defendants.

**Subsequent History:** Motion dismissed by, As moot Comerica Bank v. State Petroleum Distribs., Inc., 2008 U.S. Dist. LEXIS 45215 (M.D. Pa., June 9, 2008)

## Core Terms

receiver, appoint, maturity date, default, appointment of a receiver, accounts receivable, security agreement, Petroleum, preliminary injunction, collateral, formula, Distributors, entities, financial information, event of default, irreparable harm, federal law, eligible, merger

**Counsel: [\*1]** For Comerica Bank, a Texas Banking Association, Successor In Intrest by Merger to Comerica Bank, a Michigan Banking Corporation, Plaintiff: Christine E. Ficks, Dennis J. Levasseur, LEAD ATTORNEYS, Bodman LLP, Detroit, MI; Robert C. Nowalis, LEAD ATTORNEY, Kingston, PA; Gerald E. Burns, Buchanan, Ingersoll & Rooney PC, Philadelphia, PA; J. Timothy Hinton, Haggerty, McDonnell & O'Brien, Scranton, PA.

For State Petroleum Distributors, Inc., a Delaware Corporation, SPD, Inc., is the Successor by Merger of State Petroleum Distributors, LLC, a Pennsylvania Limited Liability Company, Petroleum Services, LLC, ("PetServ") a Pennsylvania Limited Liability Company, BB & O Management, Inc., ("BB&O") a Pennsylvania Corporation, Robert Lambert, Joseph Occhipinti, Defendants: Anthony P. Tabasso, LEAD ATTORNEY, Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA; Jerry J. Weinberger, LEAD ATTORNEY, Nogi, Appleton, Weinberger & Wren, P.C., Scranton,

PA; Keith R. Lorenze, LEAD ATTORNEY, Saul Ewing LLP, Harrisburg, PA.

For Dawson U., LLC, a Nevada Limited Liability Company, Defendant: Anthony P. Tabasso, LEAD ATTORNEY, Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA; Jerry J. Weinberger, LEAD ATTORNEY, [*2] Nogi, Appleton, Weinberger & Wren, P.C., Scranton, PA; Keith R. Lorenze, LEAD ATTORNEY, Saul Ewing LLP, Harrisburg, PA; Allan M. Lerner, Law Offices of Allan M. Lerner, P.A., Fort Lauderdale, FL.

**Judges:** Edwin M. Kosik, United States District Judge.

**Opinion by:** Edwin M. Kosik

## Opinion

### MEMORANDUM

Before us is Plaintiff Comerica Bank's Motion for Appointment of Receiver and for a Preliminary Injunction. This matter concerns a loan on which Defendant State Petroleum Distributors, Inc., has allegedly defaulted. For the reasons that follow, we will deny both of Comerica Bank's requests.

### FACTS

Comerica Bank ("Comerica" or the "Bank") entered into a secured loan with State Petroleum Distributors, LLC, a petroleum distributor who sells fuel to trucking companies and convenience stores, on January 11, 2006 for $4,000,000. A Master Revolving Note (the "Note") governed the terms of the loan. Pursuant to the Note, the borrower had to pay accrued interest on the first day of each month until the maturity date, when all outstanding debt was due. The Note was set to mature on January 1, 2007, but pursuant to various amendments to the Note, the maturity date was ultimately extended to February 1, 2008. [1] On June 21, 2006, Comerica [*3] increased the amount of the loan to $5,500,000, with an amendment to the Note. (A second loan was extended to State Petroleum Distributors, LLC for $550,000, also on January 11, 2006, but does not appear to be at issue in this case.)

By way of background, State Petroleum Distributors, LLC, reorganized as a Delaware corporation, to become defendant State Petroleum Distributors, Inc. ("SPD"), and amended on February 23, 2007, with the consent of Comerica, the loan agreement to reflect the new entity.

A security agreement dated January 11, 2006, provided to Comerica, as security for the loan, an interest in various assets of SPD, including its accounts receivable. The security agreement provides that in the event of a default, Comerica [*4] may "[p]ersonally or by agents, attorneys, or appointment of a receiver, enter any premises where Collateral may there be located, and take possession of all or any of it."

A security agreement dated January 11, 2006, provided to Comerica, as security for the SPD loan, an interest in various assets of Petroleum Services, LLC.

In addition to the security agreements, defendants Petroleum Services, LLC; BB&O Management, Inc.; Dawson U., LLC; Robert Lambert (an individual); and Joseph Occhipinti (an individual) (collectively, the "Guarantors") guaranteed both loans.

An advance formula agreement governed the credit that Comerica could extend to SPD based on its account receivables. According to the advance formula agreement, SPD's indebtedness could never exceed 80% of its eligible accounts receivable, which were defined in the agreement. Under the advance formula agreement, accounts receivable from subsidiary or related entities were not eligible. [2] According to SPD, the revenue received from its mini-marts (a related entity) were considered eligible accounts receivable under the advance formula agreement by Comerica, despite the language of the advance formula agreement that bars the inclusion [*5] of accounts receivable from related or subsidiary entities.

In January, 2007, Comerica conducted a field examination (audit) of SPD. Comerica notified SPD that its revenue from the mini-marts would not count toward the 80% indebtedness value. Because those accounts receivable were excluded from the calculation of the debt-to-accounts receivable ratio, SPD's indebtedness exceeded 80% of the eligible accounts. Comerica notified SPD that SPD was in technical default of the loan. As a response to the default, Comerica and SPD executed Amendment No. 3 to the promissory note. The Amendment required SPD to

acknowledge that a default had occurred, and required SPD to pay an additional $50,000 every Monday, to be applied to the outstanding principal.

The loan matured on February 1, 2008, and Comerica did not extend by amendment the maturity date of the loan, as it had previously.

No other action was taken regarding the status of the loan by Comerica until March 20, 2008, **[*6]** when Comerica officially notified SPD of its default regarding the advance formula: "Without limitation, Borrower is in default because the amount outstanding under the Master Revolving Note as of March 6, 2008 exceeds the advisory Advance Formula and Borrower has not paid sums sufficient to reduce the loan by the amount of the excess. Other defaults may exist." Comerica made demand on the Note to SPD and the Guarantors. 3

SPD has discussed merging with two public companies. SPD states that if consummated, the funds from a merger would pay the balance of the loan in full. One of the public companies confirmed its desire to merge by letter, and indicated that a merger could be under agreement within thirty days from the removal of any impediments to the merger. The public company cited this action, **[*7]** specifically the potential for a receiver to be appointed, as the impediment to the merger.

### Discussion

#### I. Preliminary Injunction

A preliminary injunction is an extraordinary remedy. See NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). To grant a preliminary injunction, we must consider the following four factors and be convinced that they favor the grant of relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. Shire U.S. Inc. v. Barr Labs., Inc., 329 F.3d 348, 352 (3d Cir. 2003). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." NutraSweet Co., 176 F.3d at 153 (citing Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir.1990)).

Comerica argues that it will succeed on the merits of the case. A preliminary review of the facts reveals that SPD probably defaulted on the Note. SPD has argued that it is not in default, however these arguments **[*8]** extend beyond the four corners of the Note, and we will abstain from deciding now whether to look beyond the four corners of the Note. Comerica has met its burden as to its likelihood of succeeding on the merits.

Comerica must next convince us that it will suffer irreparable harm. Comerica was wise to secure its note with collateral of SPD—chiefly its accounts receivables. The benefit of secured debt is that it has priority over unsecured creditors; the secured creditor has an item of value attached to ensure that the debt is paid. Comerica argues that the collateral may decrease in value, which could jeopardize Comerica's ability to be repaid. We do not think that a preliminary injunction is appropriate for this case because the potential damages are monetary. Here, if we do not preliminarily enjoin SPD, an historic building will not be razed, a trade secret will not be divulged, and the habitat of an endangered species will not be destroyed. Monetary damages could not repair the harm that would occur in those instances, but for equitable relief; the harm would be irreparable. Damages here are clear and definable, and Comerica will not suffer <u>irreparable</u> harm.

Because Comerica cannot **[*9]** meet its burden as to irreparable harm, we will deny Comerica's request for a preliminary injunction.

#### II. Appointment of Receiver

Because our jurisdiction is based on diversity, we must consider whether the decision to appoint a receiver is governed by state or federal law. The parties disagree as to whether Pennsylvania or federal law applies. We apply the substantive law of the forum state, here Pennsylvania, but apply federal law as to procedure. See Erie v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Generally, if a Federal Rule of Civil Procedure governs the subject, then the Federal Rule controls. See Hanna v. Plumer, 380 U.S. 460, 470-71, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965). Federal Rule of Civil Procedure 66 defines the role of receivership in federal court: "These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Whether to appoint a receiver will not determine the outcome of this case.

Wright and Miller advises us that "whether a federal court should appoint a receiver in a diversity action **[*10]** appears to be a question properly determined on the basis of federal law." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2983, p. 33 (2d ed. 1997). Federal courts seem to agree, see, e.g., Nat'l Part'ship Inv. Corp. v. Nat'l Hous. Dev. Corp., 153 F.3d 1289, 1291 (11th Cir. 1998), although the Third Circuit has not decided this issue post-Hanna v. Plumer. 4 Luckily for us, each party has stated in its brief that the appropriate standard—regardless of whether it comes from Pennsylvania or federal law—is that the decision

rests with the sound discretion of the court. See Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 824 (3d Cir. 1959) (cited by the defendants); Northampton Nat'l Bank of Easton v. Piscanio, 379 A.2d 870, 873, 475 Pa. 57 (Pa. 1977) (cited by Comerica). Neither party has cited a material difference that might arise if we apply either federal or Pennsylvania law.

Comerica first argues that the **[*11]** security agreement compels the appointment of a receiver. The security agreement provides that upon an event of default, Comerica may "[p]ersonally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may be located . . . " etc. According to Comerica, this provision evidences SPD's consent to a receiver. We disagree.

An example of language in a security agreement that provides consent to appoint a receiver can be found in Metropolitan Life Insurance Co. v. Liberty Center Venture, 437 Pa. Super. 544, 650 A.2d 887 (Pa. Super. 1994). There, the mortgage provided that:

> If an Event of Default shall have occurred and be continuing, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled, without notice and without regard to the adequacy of any security for the repayment of the indebtedness evidenced by the Note and/or secured by this mortgage or the solvency of any party bound for its payment, to the appointment of a receiver(s) to take possession of and to operate the Property (or any portion thereof) and to collect the Rents and Profits . . . .

Id. at 891 (finding that the terms of the mortgage expressly provide for the appointment of a receiver **[*12]** in the event of a default); see also Fortress Credit Corp. v. Alarm One, Inc., 511 F. Supp. 2d 367, 369 (S.D.N.Y. 2007) (noting language of security agreement that provides for the appointment of a receiver).

Unlike the language in the instant case, the language in Liberty Center evidences that the parties agreed to appoint a receiver in the event of a default. The language in the security agreement here only contemplates that a receiver may be appointed, and that if a receiver is appointed, then the receiver has the right to enter the premises where the collateral is located. The security agreement is not unclear or ambiguous; it does not provide for consent to appoint a receiver.

In the alternative, Comerica argues that the facts of the case support the appointment of a receiver. We now consider that argument.

A receivership is an extraordinary remedy to be exercised in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff. See Miller v. Fisco, Inc., 376 F. Supp. 468, 470 (E.D. Pa. 1974). The decision whether to appoint a **receiver** is within the discretion of **[*13]** the court, and the court must consider the circumstances of each case. See id.

In deciding whether to **appoint** a **receiver**, courts have considered the following **factors**: (1) the probability of the plaintiff's success in the action; (2) the possibility of irreparable injury to the plaintiff's interests in the property; (3) the inadequacy of the security to satisfy the debt; (4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim; (5) the financial position of the debtor; (6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (7) the inadequacy of available legal remedies; (8) the lack of a less drastic equitable remedy; and (9) the likelihood that appointing a receiver will do more harm than good. See Aviation Supply Co. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316-17 (8th Cir. 1993); Brill & Harrington Inv. v. Vernon Sav. & Loan Ass'n, 787 F. Supp. 250, 253-54 (D.D.C. 1992).

The following facts weigh in favor of appointing a receiver: (1) Defendant SPD has defaulted on its Note with Comerica by failing to repay the loan in full by the maturity date and by being out of formula by $1,921,627.03 **[*14]** (amount provided in Comerica's brief); (2) Comerica has requested certain financial information from SPD, which SPD has failed to provide substantially; and (3) the value of Comerica's security interest is based on intangible accounts receivable.

The following facts weigh against appointing a receiver: (1) SPD has provided some financial information to Comerica; **5** (2) between February 1, 2007, and February 1, 2008, SPD paid off its second loan to Comerica and reduced its principal in this loan from $5,500,000 to $4,100,000; (3) according to the defendants' brief, SPD is current on its loan payments; **6** (4) a proposed merger, which could satisfy the debts owed to Comerica, would be impeded by appointing a receiver; (5) and appointing a receiver could affect SPD's ability to function as an entity, and thus affect profits which could be used to pay the debt owed to Comerica.

We lack certain facts that could help us make our decision. For example, other than the above-referenced facts, we have no information regarding the capitalization of SPD, the liabilities that SPD may owe to other entities, the value of the collateral, specifically the value of the accounts receivable, or other general financial health information. Additionally, SPD states that it is current on its loan payments, and neither Comerica nor SPD has provided us with details regarding what, if any, payments have been made.

The scales of equity weigh against appointing a receiver. Although we think that a receiver could be appropriate in this case, Comerica has failed to present us with facts sufficient to warrant extraordinary relief. Other than the defaults, Comerica's best argument is that SPD may be dissipating collateral because it has failed to respond fully to Comerica's requests for financial information. Such an inference is too tenuous to justify our appointing a receiver.

From the facts presented to us, SPD's financial health is not yet dire. In the past year, SPD has satisfied one of its loans **[*16]** with Comerica, and has reduced its principal obligation from $5,500,000 to $4,100,000. SPD appears to also be making its interest payments under the loan. Although SPD may be in financial trouble because of its use of

the mini-mart accounts, SPD appears to be earnest about its desire to repay the loan to Comerica and is investigating practical ways to repay it. SPD may have failed to respond fully to Comerica's request for financial information, however to our knowledge, this failure was not in response to a discovery request. Finally, Comerica does not allege that SPD is operating to frustrate Comerica's claim, such as committing fraud or dissipating the collateral. We will decline to appoint a receiver, with the caveat that one may be appointed in the future if the circumstances of this case so demand it.

### ORDER

AND NOW, this 2nd day of June, 2008, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for a Preliminary Injunction is DENIED;

2. Plaintiff's Motion for the Appointment of a Receiver is DENIED;

/s/ Edwin M. Kosik

United States District Judge

---

**Footnotes**

1. Amendment No. 2 to the Note extended the maturity date to February 15, 2007. Amendment No. 3 extended the maturity date to June 15, 2007. Amendment No. 4 extended the maturity date to August 15, 2007. Amendment No. 5 extended the maturity date to October 1, 2007. Amendment No. 6 extended the maturity date to December 1, 2007. Amendment No. 7 extended the maturity date to January 1, 2008. The final amendment, No. 8, extended the maturity date to February 1, 2008.

2. "'Eligible Account' shall mean an Account (hereafter defined) arising in the ordinary course of Debtor's business which meets each of the following requirements:

    . . .

    (h) it is not owing by a subsidiary or affiliate of Debtor."

3. In Comerica's brief, Comerica states that they have accelerated the debt, and demanded payment in full (plus accruing interest). Because the maturity date of the loan was February 1, 2008, it seems that payment in full was already due. Acceleration of the debt occurs only when the borrower defaulted prior to the maturity date of the loan. Regardless, Comerica has made demand of payment in full.

4. In 1969, two years after the U.S. Supreme Court's decision in Hanna, the Third Circuit applied federal law to determine whether to appoint a receiver without further discussion on the issue. See Tanzer v. Huffines, 408 F.2d 42, 42 (3d Cir. 1969).

5. Comerica states that it requested certain financial information from SPD, and that State Petroleum failed to provide a substantial amount of the information requested. We infer from this statement that SPD did provide some information requested.

> [6] We take SPD's assertion that it is current on its loan payments to mean **[*15]** that it has made its regularly scheduled interest payments despite the apparent default.

**Content Type:** Cases

**Terms:** factor! w/s appoint! w/s receiver!

**Narrow By:** Sources: PA, Related Federal; Cases

**Date and Time:** Aug 26, 2019   05:17:44 p.m. EDT

  

About LexisNexis®  Privacy Policy  Terms & Conditions  Sign Out

Copyright © 2019 LexisNexis. All rights reserved.

Print