**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NEXTGEAR CAPITAL, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | CASE NO.: 3:18-cv-1617 |
| | : | |
| v. | : | |
| | : | |
| ANTONIO L. GUTIERREZ; PAUL GUTIERREZ, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY BRIEF OF PLAINTIFF, NEXTGEAR CAPITAL, INC. IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.**

**I.    PRELIMINARY STATEMENT**

After the defendants failed to respond to requests for admissions that were served 156 days ago resolving the material facts relevant to the present motion before this Court, the defendant, Paul Gutierrez ("Paul"), opposes the summary judgment motion filed by the plaintiff, NextGear Capital, Inc. ("NextGear"), suddenly claiming that he did provide value for the property he received from his brother, Defendant, Antonio Gutierrez ("Antonio"), for the price of $1.00 on the eve of NextGear filing a separate collection action in New Jersey.   Paul claims, without substantiation, that his acquisition of real estate located at 5334 Delia Terrace, East Stroudsburg, PA (the "Property") on September 28, 2016 was part of a three-party agreement between Antonio, Paul, and Antonio's wife, Edith Gutierrez ("Edith"), to dispose of property involved in Antonio and Edith's ongoing divorce action.   In making this argument, Paul relies exclusively upon two bare statements in his declaration that, as of September of 2016, this agreement between Antonio, Paul, and Edith was finalized and Antonio, Paul, and Edith intended for Paul to receive the Property in exchange for relinquishing an interest he purportedly had in a parcel of real estate

located overseas.  When one actually reviews the documents Paul has provided to support his self-serving assertions though, one sees that these documents contain no mention of the Property or the purported exchange that Paul now asserts existed and the transaction that is the basis of Paul's new defense was not even finalized until 293 days after Paul was transferred the Property from Antonio. NextGear is entitled to summary judgment.

## II.   SUPPLEMENTAL STATEMENT OF FACTS AND PROCEDURAL HISTORY

Even though Paul opposes NextGear's summary judgment motion, he nor Antonio ever responded to NextGear's requests for admissions that were served 156 days ago.  (*Ex. G to Gaunce Dec.*, June 12, 2019 Requests for Admissions).[1]  Within these requests, NextGear demanded that Antonio and Paul admit that the only consideration paid for Antonio's transfer of the Property to Paul was a single dollar on the eve of when NextGear commenced its multi-million dollar collection action against Antonio.  (*Id.* at p. 9, 20).  In his opposition, Paul fails to explain why the facts which he has been deemed to admit do not warrant the entry of summary judgment.

### A.   Paul's Current Opposition.

On substance, Paul opposes NextGear's motion based upon the following two sentences contained in his declaration:

> 6. [i]n order for me not to be involved in the divorce litigation [a separate case involving Antonio and his wife, Edith] and relinquish my interest in the Bermuda Property [a property that was the subject of Antonio and Edith's divorce action], I signed over my interest in the Bermuda Property in exchange for the property that is the subject of this litigation[.]
>
> 7. [a]s of September 2016, the Pennsylvania Property would be transferred to me and the Pennsylvania Property did not become a part of the divorce litigation. (*Declaration of Paul Gutierrez* ("*P. Gutierrez Dec.*") at ¶¶ 6 - 7).

---

[1]   "Gaunce Dec." refers to the declaration of counsel submitted with NextGear's motion.

Paul provides no documents confirming that he signed over any interest in the "Bermuda Property" on September 28, 2016.  Indeed, Paul's documentation shows that he only signed a co-listing agreement as a co-owner of a property in Bermuda on December 29, 2016, he signed a sale agreement as to this property on April 25, 2017, and there was a real estate closing as to this property that purportedly occurred on July 17, 2017.  (*P. Gutierrez Dec.* at ¶¶ 8 – 10); (*Exhibits C – E to P. Gutierrez Dec.*).  None of these documents even mention the Property, nor connect the Property to the later transaction involving the property in Bermuda.

**B.      Additional Facts Revealed Since NextGear Filed its Motion.**

Also, since filing its summary judgment motion, NextGear has confirmed, through third-party discovery, the following facts.  Prior to April 8, 2016 (**the date Antonio acquired the Property**), DiTech Financial, LLC ("DiTech") held a first mortgage lien on the Property.  (*Exhibit J to the Supplemental Declaration of Nicholas M. Gaunce, Esq.* ("Gaunce Supp. Dec."), March 29, 2016 DiTech Letter).[2]   In relation to this lien, DiTech's predecessor-in-interest, Green Tree Servicing, LLC ("Green Tree"), commenced a foreclosure action against the then record owners of the Property, Carlos E. Andagana (individually, "C. Andagana"), and Jeanneth C. Gonzalez (individually, "J. Gonzalez"), on June 10, 2015.  (*Exhibit K to Gaunce Supp. Dec.*, Mortgage Foreclosure Complaint).  In its complaint in mortgage foreclosure, Green Tree alleged that it was owed $152,527.26.  (*Id.* at p. 4).

C. Andagana and J. Gonzalez are Paul's in-laws.[3]  (*Ex. L to Gaunce Supp. Dec.*, Consumer Explanation Letter at p. 7, Item No. 012).  Paul confirmed this fact when he purchased his current home in New Jersey by representing to his lender, Home Point Financial, on June 12, 2015 (**two

---

[2]      "Gaunce Supp. Dec." refers to the declaration of counsel submitted with this reply brief.

[3]      Paul's wife is Karina Gutierrez ("Karina").

**days after DiTech's predecessor filed a foreclosure complaint**), in an explanation letter that the Property belonged to his "in laws." (*Id.*).  In that same document, Karina's (Paul's wife) maiden name is listed as "ANDAGANA."  (*Id.* at p. 9).  Also, Karina, when she acquired an automobile from LHI in July of 2014, listed the Property as her address.  (*Ex. M. to Gaunce Supp. Dec.*, Retail Installment Sale Contract).

### C.    Antonio's Acquisition of the Property.

In an apparent effort to stave off the completion of the pending foreclosure action, C. Andagana and J. Gonzalez proposed to DiTech that a short sale of the Property occur for the stated sale price of $76,000.00.  (*Ex. N to Gaunce Supp. Dec.*, Standard Agreement for the Sale of Real Estate); (*Ex. O to Gaunce Supp. Dec.*, February 9, 2016 DiTech Letter).  The purchaser for this proposed short sale was Antonio.  (*Ex. N to Gaunce Supp. Dec.*, Sale Agreement at p. 1).  On April 7, 2016 (the day before Antonio acquired the Property by deed), Antonio, C. Andagana and J. Gonzalez signed a short sale affidavit.  (*Ex. P to Gaunce Supp. Dec.*, Short Sale Affidavit).  In signing this affidavit, Antonio, C. Andagana and J. Gonzalez all represented to DiTech that "[t]he sale of the Property is an 'arm's length' transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise."  (*Id.* at ¶ (a).  As stated above, C. Andagana and J. Gonzalez are the in-laws of Antonio's brother, Paul, and Paul had a business relationship with Antonio's car dealership, The Luxury Haus, Inc. ("LHI").  (*Ex. L to Gaunce Supp. Dec.*, Consumer Explanation Letter at p. 7, Item No. 012)(stating "in laws" under a listing for the Property); (*Defendants' Objections and Responses to Plaintiff's Statement of Undisputed Material Facts* at ¶ 3)(stating that "Paul was a vice-president of [LHI]").

On April 8, 2016, Antonio acquired the Property through the previously-proposed short sale. (*Ex. M to Compl.*, April 8, 2016 Deed).[4]  In full satisfaction of its claims, DiTech received a single wire transfer in the amount of $73,605.69.  (*Ex. Q to Gaunce Supp. Dec.*, Outgoing Wire Transfer Transaction Form)(listing $73,605.69 next to the heading "AMOUNT"); (*Ex. R to Gaunce Supp. Dec.*, Mortgage Satisfaction.).  On April 8, 2016, the total debt owed to DiTech by C. Andagana and J. Gonzalez was $166,561.96.  (*Ex. J to Gaunce Supp. Dec.*, March 29, 2016 Letter).  By completing the proposed short sale, DiTech accepted $92,956.27 less than it was owed. (*Id.*).  Antonio was able to acquire the Property by writing a single check from LHI's business account as opposed to procuring a purchase-money mortgage.  (*Ex. G to Gaunce Dec.*, NextGear's Request for Admissions directed to Antonio at Nos. 16 & 17).[5]

When Antonio then transferred the Property to Paul 174 days later, Paul was the record owner of a parcel of real estate belonging to his in-laws free and clear of a mortgage. Antonio has not provided a declaration in opposition to NextGear's motion.

## STATEMENT OF THE QUESTION INVOLVED

1.     Does Paul's opposition present a genuine dispute of material fact that would warrant a denial of summary judgment?

**Suggested Answer:   NO.**

---

[4]     This citation references the document filed by NextGear, on August 16, 2018, to commence this action.

[5]     This citation refers to the exhibits attached to the declaration of counsel provided with NextGear's moving papers.

III.   **LEGAL ARGUMENT**

    A.   **Paul has already admitted that the transfer of the Property was done with the actual intent to defraud creditors.**

As a threshold matter, Paul cannot legitimately oppose NextGear's motion because he has already admitted the material facts that warrant the entry of summary judgment.  Through summary adjudication, a trial court may dispose of those claims that do not present a "genuine dispute as to any material fact."  *Fed.R.Civ.P.* 56(a).  Under this standard, "[m]atters deemed admitted due to a party's failure to respond to requests for admissions are 'conclusively established[.]'"  *Sec'y United States Dep't of Labor v. Kwasny*, 853 *F.3d* 87, 91 (3rd Cir. 2017). Accordingly, "[a]n admission is…an 'unassailable statement of fact' and is binding on the non-responsive party[.]"  *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 *F.2d* 1028, 1035 – 1037 (3rd Cir. 1988). "'[D]eemed admissions' under Fed. R. Civ. P. 36(a) are sufficient to support orders of summary judgment."  *Anchorage Assoc v. Virgin Islands Bd. of Tax Review*, 922 *F.2d* 168, 176 n.7 (3rd Cir. 1990).

Through his failure to respond to NextGear's request for admissions, Paul has already admitted that a confluence of several factors are present which would provide "conclusive evidence of an actual intent to defraud."  *See United States v. Patras*, 544 *Fed. Appx.* 137, 144 (3rd Cir. 2013)(stating that "'the confluence of several [badges of fraud] in one transaction generally provides conclusive evidence of an actual intent to defraud'").    First, Paul admits that he is Antonio's brother and was an officer of LHI.  Thus, Paul is an insider as to Antonio.  *See* 12 *Pa.C.S.* § 5104(b)(1)(identifying as a badge of fraud that the suspect "transfer…was to an insider").  In addition, Paul admitted that he received the Property after only paying his brother $1.00 as to a transfer that occurred only two weeks before Antonio was sued on a multi-million dollar debt. *See* 12 *Pa.C.S.* § 5104(b)(4), (8), (10)(stating that being sued within a short time frame

6

of a transfer, the lack of value for a transfer, and incurring a large debt around the time of a transfer are all factors evidencing fraudulent intent).   Therefore, NextGear has conclusively shown that three more badges of fraud are present here.   Finally, and perhaps most interestingly, Paul has admitted that he failed to disclose the transfer of the Property during his deposition in NextGear's New Jersey action, which deposition occurred only 195 days after the deed for the Property was signed in favor of Paul.   Thus, Paul has admitted that he concealed the transfer of the Property from NextGear through inaccurate deposition testimony, another badge of fraud.   *See* 12 *Pa.C.S.* § 5104(b)(7)(stating that concealing a transfer is a badge of fraud).   In short, NextGear is entitled to the entry of summary judgment based upon Paul's admissions alone.

### B.   Paul's Opposition is Legally Insufficient Because it Only Presents Unverified, Conclusory Statements that a Factual Issue Exists.

Even if the Court were inclined to disregard what Paul already admitted, the Court will see that Paul's opposition does not create a genuine issue of material fact.   To avoid the entry of summary judgment, a non-moving party must offer specific facts contradicting those averred by the movant.   *Lujan v. Nat'l Wildlife Fed'n*, 497 *U.S.* 871, 888 (1990).   The non-moving party may not avoid summary judgment simply on the basis of conclusory statements that a factual issue exists.   *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 248 (1986).   As this Court has previously stated, a party's "self-serving affidavit, otherwise unsubstantiated, is insufficient evidence to…survive summary judgment."   *McKinley v. Lycoming*, Case No. 4:10-cv-00921, 2012 *U.S. Dist. LEXIS* 59957 at *1, *35 (M.D. Pa. Apr. 30, 2012).[6]

Here, Paul's opposition can be distilled into two self-serving paragraphs which state that for him "not to be involved in the divorce litigation [between Antonio and his wife]…[he] signed

---

[6]     Consistent with local rules, a copy of this unreported decision is provided with the Gaunce Supp. Dec.

over [his] interest in the Bermuda Property in exchange for the property that is the subject of this litigation," (*P. Gutierrez Dec.* at ¶ 6), and that "[a]s of September 2016, the…Property would be transferred to [Paul] and the…Property did not become part of the divorce litigation [between Antonio and his wife]." (*Id.* at ¶ 7).  Paul provides no documents evidencing that this exchange had been agreed upon by himself, Antonio, and Edith by September 28, 2016 and, furthermore, Paul does not provide any signed documents related to the Bermuda Property that were even effective until ninety-three days after he had already become the record owner of the Property.  For even the signed documents he does provide, there is no mention of the purported exchange Paul now asserts existed.  Therefore, Paul has only provided his self-serving statements that some agreement existed.  Paul's self-serving statements are not enough.

Making matters worse, Paul's current self-serving statements directly contradict a previous declaration that he submitted less than a year ago to the Court when he was seeking to dismiss NextGear's Complaint.  (*November 21, 2018 Declaration of Paul Gutierrez*, at ¶ 40, ECF No. 10).[7]  As to the Property's involvement in Antonio's divorce at that time (**a time when all the relevant transactions had already been completed**), Paul specifically represented to this Court that "the…Property was part of the divorce action along with other assets that were owned by Defendant Antonio L. Gutierrez and his wife, Edith Gutierrez." (*Id.*)  Now, 345 days later, when he is confronting NextGear's summary judgment motion, Paul states that the "Property did not become a part of the divorce litigation." (*October 31, 2019 Declaration of Paul Gutierrez* at ¶ 6, ECF No. 46).[8]  Therefore, in opposing NextGear's summary judgment motion, Paul has not only solely offered self-serving assertions, he has actually offered self-serving assertions that directly

---

[7]   This citation refers to the declaration filed by Paul on November 21, 2018.

[8]   This citation refers to the declaration filed by Paul on October 31, 2019.

contradict what he previously testified to before this Court when procuring a partial dismissal of

NextGear's complaint.  (*April 29, 2019 Order* at ¶ 1, ECF No. 32).  The contradictory nature of

Paul's self-serving assertions act as another reason to conclude that he has presented a defective

opposition.  *See Detz v. Greiner Indus.*, 346 *F.3d* 109, 117 (3rd Cir. 2003)(granting summary

judgment when a party has "clearly made a contradictory assertion after benefitting from a

previous sworn assertion").

### C.   On Substance, Paul's Opposition fails to set forth a genuine dispute of material fact.

Should the Court even reach the substance of Paul's opposition (Antonio received value

for the Property through my release of an interest in the Bermuda Property), the Court will see that

the substance of Paul's declaration fails to raise a genuine dispute of material fact because the

information in that declaration does not change the outcome of this case.   To show that a dispute

is material, a party opposing summary judgment must demonstrate the presence of "disputes over

facts that might affect the outcome of the suit under the governing law[.]"  *Anderson*, *supra*, 477

*U.S.* 242, 248 (1986).  To rebuff NextGear's motion, Paul focuses upon the same alleged property

exchange mentioned above.  Paul's argument is fatally flawed.

To determine whether someone received "reasonably equivalent value" for a suspect

transfer, the Third Circuit has stated that it must first be determined whether the debtor actually

received anything of value.  *Mellon Bank, N.A. v. Official Committee of Unsecured Creditors of

R.M.L., Inc. (In re R.M.L. Inc.)*, 92 *F.3d* 139, 148 (3rd Cir. 1996).  The Third Circuit has further

stated that "[t]he touchstone [of this inquiry] is whether the transaction conferred realizable

commercial value on the debtor[.]"  *Id.*  For purposes of this analysis, "the critical date is the date

of the transfer at issue[.]"  *Peltz v. Hatten*, 279 *B.R.* 710, 737 (D. Del. 2002).

Paul has failed to present any competent evidence, under a summary judgment standard, which would show that Antonio received anything of value on September 28, 2016 for the Property. Paul has presented no document which even mentions that an agreement existed between Antonio, Antonio's wife, and Paul in relation to the Property on September 28, 2016. Indeed, the first signed document that Paul presents to this Court is a listing agreement signed ninety-three days after Paul acquired the Property. Moreover, the signed documents that Paul provides make zero mention of the Property. Thus, Paul has presented this Court with no evidence that would allow it to conclude that there was some reciprocal agreement which existed on September 28, 2016 between Antonio, Antonio's wife, and Paul. In the absence of such evidence, Paul cannot be found to have even provided anything of value for the Property.

Additionally, from a legal standpoint under New Jersey law, Paul's current position is indefensible. As NextGear pointed out when it opposed the defendants' motions to dismiss, Edith filed for divorce on December 23, 2015. (*Brief in Opposition to Motion to Dismiss of Defendant, Antonio L. Gutierrez* at p. 22, ECF No. 29); (*Exhibit F to 1/4/19 Gaunce Declaration,* Final Restraining Order, ECF No. 30-6). Thus, under New Jersey law, December 23, 2015 is the last date on which Edith and Antonio could have acquired martial property for the purposes of their ongoing divorce action. *See Thieme v. Aucoin-Thieme*, 227 *N.J.* 269, 285 (2016)(defining a marital asset as one "which was earned, or otherwise acquired, during the period in which the parties acted in pursuit of the shared enterprise of a marriage"); *see also*, *Vander Weert v. Vander Weert*, 304 *N.J. Super.* 339, 348 (App. Div. 1997)(stating that the filing of a divorce complaint "normally defines the scope and extent of distributable martial assets"). Antonio did not acquire the Property until April 8, 2016, 174 days after Edith had filed for divorce, and did so only with LHI's business funds. Therefore, the Property, by operation of New Jersey law, could not be considered a martial

asset against which Edith could even barter as part of any purported reciprocal arrangement with Paul and Antonio.  In short, Paul's current argument presents a legal impossibility.

Finally, NextGear would like to point out that it has done much more than offer a "single, conclusory statement" about Antonio's insolvency.  (*10/31/19 Opp. Brief* at p. 8, ECF No. 47). NextGear has provided Antonio's own information subpoena responses which indicate that he has no assets to satisfy NextGear's substantial judgment.  (*Ex. Q to Compl.*, Information Subpoena Responses).  NextGear has carried its burden on Antonio's insolvency.

### D.    Antonio's Original Purchase of the Property was also Fraudulent.

In addition to the above, subsequent discovery procured by NextGear emphasizes why it is entitled to the equitable remedies it has requested.   In its original motion, NextGear requested two equitable remedies, an injunction and the appointment of a receiver.  In evaluating whether to appoint a receiver, and whether to award other equitable remedies, this Court will look at, among other factors, "the probability that fraudulent conduct has occurred."  *See Comerica Bank v. State Petroleum Distribs.*, Case No. 3:08-cv-678, 2008 *U.S. Dist. LEXIS* 124038 at *1, *13 (M.D. Pa. June 2, 2008).[9]

Here, Antonio and Paul, by failing to respond to NextGear's requests for admissions, have already admitted that they committed civil fraud by transferring the Property to Paul on the eve of the commencement of NextGear's substantial collection action in New Jersey.  In addition, NextGear's subsequent discovery shows that Antonio committed a second fraud when he acquired the Property.  As part of procuring the Property, Antonio executed an affidavit representing to DiTech that "[t]he sale of the Property is an 'arm's length' transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise."  (*Ex.

---

[9]    A copy of this unreported decision was provided with NextGear's initial motion.

*P to Gaunce Supp. Dec.*, Short Sale Affidavit at p. 1).  Yet, when one compares this representation to other currently available information, one sees that Antonio purchased the Property to eliminate, through a short payoff in a non-arm's length transaction, a mortgage held by a lender on the Property in order to assist his brother's in-laws, a form of bank fraud which violates federal law. *See* 18 *U.S.C.* § 1344(2)(defining bank fraud as obtaining "any…credits…by means of false…representations").  Specifically, as a result of Antonio's acquisition of the Property, another lender, DiTech, received $73,605.69 as to a loan on which it was owed $166,561.96.  At this point, having seen that the defendants have committed multiple forms of fraud, this Court should provide NextGear with all the equitable remedies it has requested so that, unlike what occurred with DiTech, NextGear can protect its interests here.

### E.      NextGear is entitled to a monetary judgment against Paul.

As a final argument, Paul raises the contention that NextGear is not entitled to the entry of a monetary judgment.  Paul asserts, without citation, that "…NextGear must elect its remedy." (*Opposition Brief* at p. 9, ECF No. 47).  Paul is wrong.

12 *Pa.C.S.* § 5107 provides various remedies that are available to creditors under the PUVTA.  12 *Pa.C.S.* § 5107(a)(1), (3).  These remedies include avoidance of the transfer, attachment of the asset, injunction against further disposition by a debtor or transferee, appointment of a receiver, and any other relief the circumstances might require.  12 *Pa.C.S.* § 5107(a).  12 *Pa.C.S.* § 5108 further provides that a creditor may obtain a judgment for the value of an asset transferred against the first transferee of that asset.  12 *Pa.C.S.* § 5108(b), (c).  The commentary to the PUVTA also provides that "[t]he remedies…in [the PUVTA]…are cumulative." 12 *Pa.C.S.* § 5107, Comment 6.

In *Brosky v. MJC Indus.*, No. 2013-03355, 2016 *Pa. Dist. & Cnty. Dec. LEXIS* 1127 at *1, *26 (Bucks C.C.P. Aug. 4, 2016), the court confronted a defendant's argument that Pennsylvania law did not permit the entry of a monetary judgment in a case that involved a voidable transfer. *Id.* at *26.  In rejecting this argument, the court succinctly held that:

> 12 Pa.C.S. § 5108(b) and (c) permit the recovery of a judgment for the value of an asset(s) transferred against the first transferee of the asset.  Thus, Appellant's contention that the UFTA does not permit recovery of money judgments is incorrect.  Furthermore, the UFTA under Section 5107(a)(3)(iii) provides the court with the discretion to award any relief that circumstances require.  [*Brosky*, *supra*, 2016 *Pa. Dist. & Cnty. Dec. LEXIS* 1127 at *26.][10]

At least one federal court within this Circuit has also confirmed "that the various remedies set forth [under the PUVTA] are cumulative."  *Shearer v. Titus (In re Titus)*, 566 *B.R.* 755, 764 (Bankr. W.D. Pa. 2017).

Paul's argument that NextGear cannot obtain a monetary judgment against him is without merit.  NextGear's right to a monetary judgment is expressly outlined in the PUVTA and supported by multiple cases interpreting voidable transfer law in Pennsylvania.  NextGear has shown that it is legally entitled to the entry of a monetary judgment against Paul, along with an award of other remedies.

---

[10]     Consistent with local rules, a copy of this unreported decision is provided with the Gaunce Supp. Dec.

## CONCLUSION

For the foregoing reasons, and those stated in its moving papers, NextGear respectfully requests that the Court grant its motion, in full.  NextGear is entitled to all the available remedies under the PUVTA.  Antonio and Paul have committed multiple fraudulent transactions in relation to the Property.  NextGear should be permitted to bring this fraudulent conduct to a definitive conclusion.

> **ECKERT SEAMANS CHERIN &
> MELLOTT, LLC**
> *Attorneys for Plaintiff, NextGear Capital, Inc.*
>
> By:  /s/ Nicholas M. Gaunce
> Nicholas M. Gaunce
> PA Bar Id. No.: 206228
> 2000 Lenox Drive
> Suite 203
> Lawrenceville, NJ  08648
> Tel: (609) 989-5058
> Fax: (609) 392-7956
> E-mail: ngaunce@eckertseamans.com

Dated:  November 14, 2019

## DECLARATION OF FILING AND SERVICE

On November 14, 2019, I filed the above reply brief, along with all accompanying papers, with the Court through its ECF system.  I further served, on the above date, a copy of all these documents upon counsel of record through the Court's ECF system.

Pursuant to 28 *U.S.C.* § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

> By:     /s/ Nicholas M. Gaunce
> Nicholas M. Gaunce

Dated:  November 14, 2019